UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

ALBERTO CEVALLOS,

        Plaintiff,

v.

CITY NATIONAL BANK OF FLORIDA
and SECURITY BANK, N.A.,

        Defendants.

99-1202
CIV-MIDDLEBROOKS

**EMERGENCY VERIFIED COMPLAINT
FOR INJUNCTIVE RELIEF**

MAGISTRATE
BANDSTRA

        Plaintiff, Alberto Cevallos ("Cevallos"), sues City National Bank of Florida ("City National"), and Security Bank, N.A. ("Security Bank"), and alleges as follows:

## THE PARTIES

    1.    Defendant, Security Bank, is named as a defendant only because the proposed public sale by City National of certain disputed securities, which Cevallos seeks by this complaint to enjoin, could lead to a change in control of Security Bank and may also violate the Stock Purchase Agreement between Cevallos and Security Bank described below and attached hereto as Exhibit "A."

    2.    Security Bank is a national banking association, organized under the laws of the United States, and is governed by the National Bank Act, 12 U.S.C. § 1 *et seq.*, and the regulations of the Office of the Comptroller of the Currency (the "OCC") promulgated thereunder.  Security Bank's principal place of business is in Miami-Dade County, Florida.

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE  MIAMI, FLORIDA 33131
305-579-0500  FAX 305-579-0717  www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  SÃO PAULO
FORT LAUDERDALE  WEST PALM BEACH  ORLANDO  TALLAHASSEE  BOCA RATON



3.      Plaintiff, Cevallos, is a citizen of the Republic of Ecuador.

4.      Upon information and belief, City National is a national banking association organized under the laws of the United States, and is also governed by the National Bank Act and the regulations of the OCC promulgated thereunder.   City National's principal place of business is in Miami-Dade County, Florida.

## JURISDICTION AND VENUE

5.      This is an action for injunctive relief pursuant to 15 U.S.C. § 77t(b), 12 C.F.R. Part 16 and Florida Statutes §§ 679.504 and 679.507.

6.      The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 77v(a).

7.      The Court has personal jurisdiction over Security Bank because Security Bank engages in and conducts extensive business activities in Florida.

8.      The Court has personal jurisdiction over City National because City National engages in and conducts extensive business activities in Florida.

9.      Venue in this district is proper pursuant to 15 U.S.C. § 77v(a) and 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

10.     All conditions precedent to the bringing of this action have occurred, have been waived or have otherwise been satisfied.

11.     Cevallos has retained the law firm of Greenberg Traurig, P.A. ("Greenberg") to advance his interests in this case.   Cevallos is required to pay

2

)                                    )

Greenberg Traurig reasonable attorney's fees for its services.  Cevallos has incurred attorney's fees and related costs regarding this matter.

12.    Cevallos seeks the recovery of all attorney's fees and related costs that he may incur in connection with this action pursuant to the attorney's fees provisions of the Note and Security Agreement described below and Florida Statutes § 57.105.

### BACKGROUND FACTS

13.    On November 28, 1997, Cevallos entered into an agreement with Mario Nelson Ortellado and the Marpi Bank Trust whereby Cevallos purchased, for   US$ 7 million, 51% of the issued and outstanding voting common stock of Security Bank.  That same day, Cevallos signed a Stock Purchase and Sale Agreement (the "Stock Purchase Agreement") with Security Bank pursuant to which the shares acquired from Ortellado and the Marpi Bank Trust were converted into 200,000 shares of non-voting, non-cumulative preferred shares of Security Bank ( the "Disputed Securities") pending certain events, of which the most important was OCC approval of Cevallos' acquiring control of Security Bank.

14.    On May 21, 1998, Cevallos borrowed US$ 3 million from City National, secured by the Disputed Securities.  The original loan documentation issued was replaced on November 19, 1998, by a Renewal and Modification of Promissory Note and Security Agreement (the "Note and Security Agreement"), which called for principal payments by Cevallos of:  (i) US$ 500,000 on January 11, 1999; (ii) of US$500,000 on February 11, 1999; and (iii) of US$ 2,000,000 on March 11, 1999.  Also added as

3

collateral under the Note and Security Agreement, as well as under Modification of Stock Pledge and Security Agreement of that same date, were three certificates of deposit (the "Lincoln Certificates of Deposit") from Lincoln Bank & Trust of Montserrat, in the aggregate amount of US$ 3,000,000, one of which in the amount of US$ 500,000 matured on January 18, 1999; another of which in the amount of US$ 500,000, matured on February 18, 1999; and the third of which, in the amount of US$ 2,000,000, matured on March 18, 1999.  A true and correct copy of the Note and Security Agreement is attached hereto as Exhibit "B."

15.    The Disputed Securities are convertible to voting shares of Security Bank upon the satisfaction of certain conditions precedent.  The Disputed Securities constitute a majority equity interest in Security Bank, and once converted, a majority voting interest as well.  The Disputed Securities are worth far less as non-voting stock than they would be worth once converted into voting securities.

16.    The principal payments due under the Note and Security Agreement came due and Cevallos, as a result of the recent well-publicized economic crises in the Republic of Ecuador, was unable to make such payments.  Similarly, the Lincoln Certificates of Deposit matured and were not paid.

17.    On or about  March 22, 1999, City National, through its counsel, issued a Notice of Public Sale indicating that City National intends to sell the Disputed Securities at a "public sale" to be conducted in Miami on April 26, 1999, at 1:00 p.m. (the "Public Sale").  A copy of the Notice of Public Sale is attached as Exhibit "C".

4

18.     As evidenced by the letter from its counsel, George Befeler to Richard L. Lapidus, counsel for City National, Security Bank and its minority shareholders oppose the conduct of the Public Sale sought by City National as violative of the Stock Purchase Agreement.  Attached hereto as Exhibit "D" is a copy of the Befeler letter.

19.     The "Public Sale" planned by City National does not qualify as a "public" sale under Fla. Stat. § 675.504 in that: (1) no attempt has been made to publicize the sale; (2) no auctioneer has been hired to conduct it; (3) the sale is not being conducted in a public place; and (4) the sale has no other hallmarks of being a "public" sale, as opposed to a "private" sale.  As a result, the "Public Sale" is really a "private" sale and, legally, the "Notice of Public Sale" attached is deficient.

20.     In addition, the Public Sale is prohibited by the Securities Exchange Act of 1933, as amended (the "SEC Act") (*i.e.,* 15 U.S.C. § 77t(b)), and OCC regulations governing sales of national bank securities. The proposed Public Sale constitutes a "public offering" of securities, which is permitted under federal law only where a series of enumerated prerequisites have been satisfied.

21.     However, no registration statement is in effect regarding the Disputed Securities.  A registration statement has also not been filed with either the Securities and Exchange Commission (the "SEC") or the OCC with respect to the Disputed Securities.  City National has no entitlement to a private offering exemption from the registration requirements of the SEC Act and 12 C.F.R. Part 16 of the OCC regulations.

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE MIAMI, FLORIDA 33131
305-579-0500  FAX 305-579-0717  www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  SÃO PAULO
FORT LAUDERDALE  WEST PALM BEACH  ORLANDO  TALLAHASSEE  BOCA RATON

The Public Sale also does not fall within the exempted transactions enumerated in Section 4 of the Securities Act of 1933.

22.     The proposed Public Sale also does not satisfy the requirements of Fla. Stat. § 679.504 requiring that any sale of collateral be conducted in a "commercially reasonable" manner.  Among other things, upon information and belief, City National has made no effort to publicize the Public Sale of the stock among qualified buyers in this country, nor to screen buyers to see if they have any chance of being approved by the OCC for majority control of Security Bank. Effectuation of the Public Sale contemplated by City National is also inconsistent with the public policies and legal mandates described below.

23.     Cevallos will suffer irreparable harm for which he has no adequate remedy at law in the event that the Public Sale is permitted to proceed as scheduled.

<u>**COUNT I**</u>

**(Injunctive Relief for Violations of §§ 5(a) and 5(c) of the Securities Act of 1933 15 U.S.C. §§ 77e(a) and 77e(c))**

24.     Plaintiff incorporates and realleges the allegations contained in paragraphs 1 through 23 of this complaint, as if fully set forth herein.

25.     This is a claim against City National to enjoin it from conducting the Public Sale in violation of the Securities Act of 1933, as amended.

26.     Cevallos seeks injunctive relief precluding City National from proceeding with the Public Sale of the Disputed Securities on the ground that the Public Sale is

6

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE MIAMI, FLORIDA 33131
305-579-0500 FAX 305-579-0717 www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  SÃO PAULO
FORT LAUDERDALE  WEST PALM BEACH  ORLANDO  TALLAHASSEE  BOCA RATON

prohibited by the Securities Exchange Act of 1933, as amended (the "SEC Act") (*i.e.,* 15 U.S.C. § 77t(b)), and OCC regulations governing sales of national bank *securities.*

27.    Upon information and belief, from March 22, 1998 and continuing through the date of the filing of this complaint, City National has been directly and indirectly making use of means and instruments of transportation and communication in interstate commerce, and of the mails, to sell and to offer to sell securities, namely, the Disputed Securities.

28.    City National has not, however, satisfied the prerequisites under federal law for the Public Sale.  The proposed Public Sale constitutes a "public offering" of securities, which is permitted under federal law only where a series of enumerated prerequisites have been satisfied.  Those requirements have not been satisfied by City National.  As such, the Public Sale is barred by both the SEC Act (*see* 15 U.S.C. §§ 77e(a) and 77e(c)) and OCC regulations governing sales of national bank *securities,* 12 C.F.R. Part 16.

29.    No registration statement is in effect regarding the Disputed Securities.  A registration statement has also not been filed with either the Securities and Exchange Commission (the "SEC") or the OCC with respect to the Disputed Securities.

30.    City National has no entitlement to a private offering exemption from the registration requirements of the SEC Act, as well as 12 C.F.R. Part 16 of the OCC regulations, which implements these provisions of the SEC Act for national banks.  The

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE  MIAMI, FLORIDA 33131
305-579-0500  FAX 305-579-0717  www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  SÃO PAULO
FORT LAUDERDALE  WEST PALM BEACH  ORLANDO  TALLAHASSEE  BOCA RATON

)                                              )

Public Sale also does not fall within the exempted transactions enumerated in Section 4 of the Securities Act of 1933.

WHEREFORE, Cevallos respectfully requests that this Court enter an order and judgment temporarily and permanently enjoining City National from proceeding with the Public Sale until such time as all pertinent federal statutes and regulations have been satisfied.  Cevallos also requests that he be awarded his costs, including attorney's fees, incurred regarding this matter, as well as such additional relief as the Court deems just and appropriate.

## COUNT II

### (Action for injunctive relief under Fla. Stat. §§ 679.504 and 679.507 to Preclude the Disposition of Disputed Securities through the Public Sale)

31.   Plaintiff incorporates and realleges the allegations contained in paragraphs 1 through 23 of this complaint, as fully set forth herein.

32.   This is an action against City National pursuant to Florida Statutes §§ 679.504 and 679.507.

33.   City National seeks to conduct the Public Sale on terms and conditions that are commercially unreasonable, in violation of Florida Statutes § 679.504.

34.   Among other things, the sale is not "commercially reasonable" in that City Ntaional has made no effort to publicize the proposed "Public Sale" among qualified buyers for the Disputed Securities, or to screen buyers to ensure that they would be approved for control by the OCC.  In addition, the violations of federal law that would be involved prevent the Public Sale from qualifying as "commercially reasonable."

8

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE  MIAMI, FLORIDA 33131
305-579-0500  FAX 305-579-0717  www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  SÃO PAULO
FORT LAUDERDALE  WEST PALM BEACH  ORLANDO  TALLAHASSEE  BOCA RATON

35.     Florida Statutes § 679.507 authorizes the Court to restrain City National from conducting the Public Sale in a manner that is not commercially reasonable.

WHEREFORE, Cevallos respectfully requests that the Court enter an order and judgment temporarily and permanently enjoining City National from proceeding with the Public Sale until such time as all legal prerequisites have been satisfied and the commercial reasonableness of any sale is secured.  Cevallos also requests that he be awarded his costs, including attorneys' fees, incurred regarding this matter, as well as such additional relief as the Court deems just and appropriate.

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE MIAMI, FLORIDA 33131
305-579-0500  FAX 305-579-0717  www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  SÃO PAULO
FORT LAUDERDALE  WEST PALM BEACH  ORLANDO  TALLAHASSEE  BOCA RATON

## **Verification**

The foregoing factual allegations are true and correct and based upon personal

knowledge.

ALBERTO CEVALLOS

STATE OF FLORIDA          )

                       ) ss

COUNTY OF DADE          )

The foregoing instrument was acknowledged before me this _28th_ day of April, 1999 by _Alberto Cevallos_ _____ as _____. He personally appeared before me, is personally known to me or produced _____ as identification, and did take an oath.

Notary: _Hortensia V Montel_

Print Name: _HORTENSIA V MONTEL_

Notary State of: _FLORIDA_

My Commission Expires: _March 25, 2003._

OFFICIAL NOTARY SEAL
HORTENSIA V MONTEL
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC814189
MY COMMISSION EXP. MAR. 25,2003

10

)                                              )

STATE OF FLORIDA        )
                        ) ss
COUNTY OF MIAMI-DADE)

     The foregoing instrument was acknowledged before me this \_\_\_\_ day of April,

1999   by   _____   as

_____. He personally appeared before me, is

personally        known        to        me        or        produced

_____ as identification, and did take an

oath.

                             Notary: _____

                             Print Name: _____

                             Notary State of: _____

                             My Commission Expires: _____

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE MIAMI, FLORIDA 33131
305-579-0500  FAX 305-579-0717  www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  SÃO PAULO
FORT LAUDERDALE  WEST PALM BEACH  ORLANDO  TALLAHASSEE  BOCA RATON

)                                                    )

Respectfully submitted,

GREENBERG TRAURIG, P.A
Attorneys for Alberto Cevallos
1221 Brickell Avenue
Miami, Florida  33131
Telephone:    (305) 579-0500
Facsimile:     (305) 579-0717

By:_____
         PEDRO J. MARTINEZ-FRAGA
            Florida Bar No. 752282
              BARBARA LAGOA
            Florida Bar No. 966990

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE MIAMI, FLORIDA 33131
305-579-0500  FAX 305-579-0717  www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  SÃO PAULO
FORT LAUDERDALE  WEST PALM BEACH  ORLANDO  TALLAHASSEE  BOCA RATON

)                                    )

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by hand delivery upon:  George Befeler, Esq., Lucio Mandler Croland, et al., 701 Brickell Avenue, Suite 2000, Miami, Florida  33131-2867 and Richard L. Lapidus, Esq., Robert P. Frankel & Associates, P.A. 25 West Flagler Street, Miami, Florida  33130 this 23rd day of April, 1999.

PEDRO J. MARTINEZ-FRAGA

MIAMI3/LAGOAB/162935/3hpz01!.DOC/4/23/99/28783.010100

13

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE MIAMI, FLORIDA 33131
305-579-0500  FAX 305-579-0717  www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  SÃO PAULO
FORT LAUDERDALE  WEST PALM BEACH  ORLANDO  TALLAHASSEE  BOCA RATON

## STOCK PURCHASE AND SALE AGREEMENT

THIS AGREEMENT is made and entered into as of this 28 day of November 1997, by and among SECURITY BANK, N.A., a national banking association (the "Bank"), FINANCIAL BANCORP, INC., a Florida corporation ("FBI"), and ALBERTO CEVALLOS, an individual residing in Ecuador ("Cevallos")(FBI and Cevallos shall hereinafter be collectively referred to as, the "Purchaser"). The Bank and the Purchaser are hereinafter collectively referred to as the "Parties".

## PREAMBLE

The Purchaser agrees to offer to purchase and the Bank agrees to assist the Purchaser in effectuating the purchase of all of the shares tendered pursuant to the provisions of paragraph 7 of this Agreement up to 49,00003.% (366,939 shares) of the issued and outstanding share of the capital stock of the Bank (the "Stock"), upon the terms and subject to the conditions set forth in this Agreement, from the shareholders of the Bank, other than the Marpi Bank Trust and/or Mario Nelson Ortellado (hereinafter collectively referred to as, "Ortellado"), who elect to sell their shares of capital stock of the Bank to the Purchaser. The shareholders of the Bank, other than Ortellado, shall be hereinafter collectively referred to as the "Shareholders". It is the intent of the Parties to this Agreement that this Agreement bind the Bank in assisting the Purchaser in offering to purchase the Stock from the Shareholders, but in no event shall this Agreement bind the Shareholders. The Purchaser intends to enter into a separate agreement with Ortellado (the "FBI/Ortellado Agreement") for the purchase and sale of the shares of capital stock of the Bank that are owned by Ortellado (the "Ortellado Shares").

NOW, THEREFORE, in consideration of the promises and the mutual representations, warranties, covenants and agreements hereinafter contained, the Parties agree as follows:

1.  **Sale of Stock.** Subject to the terms and conditions of this Agreement, the Purchaser will offer to purchase and the Bank will assist the Purchaser in effectuating the purchase of the Stock on the Closing Date (as hereinafter defined). Title in and to the Stock being purchased shall vest in Cevallos.

2.  **Purchase Price.** The purchase price for the Stock (the "Purchase Price") shall be equal to the greater of a multiple of 2.0 times the book value of the Stock as of the last business day of the month preceding the Closing Date, or $11.50 per share, which Purchase Price shall be due and payable at the Closing Date (as

hereinafter defined). For purposes hereof, the term "book value" shall be defined as the book value as determined in accordance with generally accepted accounting principles consistently applied. Notwithstanding the preceding sentence, the book value shall be increased by the total amount of dividends paid by the Bank in respect to the non-voting non-cumulative preferred stock owned by Cevallos and which was purchased by Cevallos from Ortellado through the Closing Date. Payment of the Purchase Price for the Stock shall be by cashier's check drawn on a Florida financial institution reasonably acceptable to the Bank or by wire transfer in United States Dollars against delivery of the certificates evidencing the Stock in the name of Cevallos.

3.  **Payment of the Purchase Price.** The Purchase Price shall be payable by the Purchaser as follows:

    (a) The sum of U.S.$100,000 (the "Earnest Money Deposit") shall be paid by the Purchaser to the law firm of Delgado, Befeler, Starkman & Magolnick, P.A. (the "Escrow Agent") within 5 days from the execution hereof. The Earnest Money Deposit shall become non-refundable at the expiration of the Examination Period, as such term is hereinafter defined, and shall be applied at Closing toward the Purchase Price. The Earnest Money Deposit shall be disbursed to the Bank at the conclusion of the Examination Period, unless the Agreement is terminated on or before such date. The Earnest Money Deposit shall be held by the Escrow Agent through the expiration of the Examination Period, or the earlier termination of this Agreement, pursuant to the Escrow Agreement attached hereto as Schedule 3(a), the terms and conditions of which shall prevail and take precedence over any description contained herein which might appear to the contrary. In the event that the Purchaser on or before the expiration of the Examination Period delivers to the Bank written notice that it is terminating the Agreement, the Escrow Agent shall promptly refund the entire Earnest Money Deposit to the Purchaser. The Purchaser shall, at Closing, be entitled to receive credit for interest on the Earnest Money Deposit as if the Earnest Money Deposit had been placed in an interest bearing account at the end of the Examination Period.

    (b) The balance of the Purchase Price shall be paid by the Purchaser to the selling Shareholders on the Closing Date.

4.  **Examination Period.**

    (a) The Purchaser shall have fifteen (15) days from the Effective Date to conduct, at the Purchaser's sole cost and expense, any reasonable due diligence review of the Bank (the "Examination Period"). For purposes of this Agreement, the

"Effective Date" shall be the date in which the last of the Parties executes this Agreement.

(b) The examinations under the Examination Period may include a review of the Bank's minute and stock books, financial books and records, loan files, deposit files, litigation, regulatory correspondence and, examination reports, tax returns, property and premises, leases and other contracts (including employment or consulting agreements and contingent obligations), financial statements of the Bank and all work papers of the accountants with respect thereto; provided, however, that Bank shall not be obligated to violate any accountant or attorney confidentiality privilege under applicable law. It is understood that the Bank shall cause the Bank's officers, accountants and attorneys to cooperate fully with such investigations, provide such information as Purchaser's representatives shall reasonably request, and respond fully to any reasonable inquiry by Purchaser's representatives in the course of the same. The Purchaser will maintain, and will cause its representatives to maintain before and after termination of the Agreement, strictly confidential all information obtained pursuant to such examinations, as hereafter more fully set forth.

(c) During the Examination Period, the Bank shall not sign or otherwise consent to any agreement regarding the transfer of unissued shares or transfer of control of the Bank except as set forth herein. Notwithstanding anything herein to the contrary, the Shareholders may continue to sell and trade their Bank Stock consistent with this Agreement provided that such selling and trading shall not constitute a change in control of the Bank and shall not conflict or adversely affect the Bank's or the Purchaser's ability to perform hereunder. The Bank will not negotiate the sale of any shares of the capital stock of the Bank with anyone prior to the expiration of the period of time that the Purchaser has under the terms of this Agreement to obtain all necessary regulatory approvals.

(d) Any and all inspections of books and records of the Bank shall be conducted at the Bank's business premises and no such books and records, nor any copies or reproductions thereof, shall be permitted to be removed from the Bank's premises by the Purchaser or its agents without the express prior consent of the Bank.

(e) Upon the expiration of the Examination Period, the Purchaser shall notify the Bank in writing whether the Purchaser shall offer to purchase the Stock as provided herein (the "Notice"). If the Purchaser fails to give the Bank the Notice within the prescribed period of time, this Agreement shall, except

3

as specifically provided in this subsection, immediately terminate without further obligation, liability or responsibility whatsoever on anyone's part. If the Purchaser shall give the Bank the Notice within the time allowed of its decision to continue with the purchase of the Stock, the transaction will proceed as provided herein.

(f) In the event that this Agreement is terminated by the Purchaser within the Examination Period, the Purchaser (and all agents of the Purchaser) shall no later than 5 days from the date of termination return all original documents and all copies thereof pertaining to the Bank to the Bank.

5. Regulatory Matters.

(a) The Parties acknowledge that, in order to maximize the possibility of the Purchaser obtaining all of the necessary governmental approvals to purchase the Stock, the Parties must mutually cooperate in securing all of the necessary information and data which may be available to them, respectively. Moreover, the Purchaser acknowledges that it must timely file all of its completed applications with the respective governmental agencies, must promptly respond to all requests for additional information and must diligently and consistently pursue their approval.

(b) No later than 45 days from the date that the Purchaser delivers to the Bank the Notice referred to in subparagraph 4(e), above, the Purchaser shall in good faith duly file all of the completed applications for all the governmental approvals, consents and authorizations which are necessary in connection with the acquisition of the Stock (hereinafter, the "Regulatory Approvals"). Thereafter, the Purchaser shall actively and diligently pursue all such applications until such time as all such Regulatory Approvals shall have been granted, or any such Regulatory Approval consent or authorization shall be denied, or it shall become apparent that the same will be denied. The Purchaser shall respond to any solicitation for additional information or documentation no later than the time period set forth in such request and, if no time period is set forth in such request, no later than 15 days from the time of receipt of such request (or no later than 30 days in the event that such request cannot be reasonably responded to within a shorter period of time and further provided that the Purchaser has exercised good faith and due diligence in gathering the information and/or documentation necessary to respond to such request), unless otherwise agreed in writing between the parties.

4

(c) The Purchaser shall diligently and timely pursue all regulatory applications filed in connection with the transactions contemplated hereby. The Purchaser shall have nine (9) months from the date of the Notice to obtain all of the Regulatory Approvals. If the Purchaser has not obtained the same within such time period for any reason other than the default of the Bank hereunder and further provided that the Bank shall be in compliance hereunder, then the provisions of paragraph 13 shall apply.

(d) The Purchaser shall at all times keep the Bank informed as to the status of the applications filed for the Regulatory Approvals and will furnish the Bank with copies of all applications, correspondence and replies (except as provided in subparagraph (e)) with and from the agencies regarding the Regulatory Approvals. Such copies shall be furnished to the Bank forthwith upon their receipt from the agencies by the Purchaser or upon their dispatch by the Purchaser to the agencies.

(e) The Purchaser shall provide the Bank within two (2) business days of the dispatch or its receipt of copies of any and all communications with the OCC and any other governmental agencies (whether to or from the Purchaser, any of its principals, Cevallos, or from the governmental agencies) including, but not limited to, copies of any applications, correspondence, responses to questions, documents, etc., letters, memoranda, forms, etc., received from such agencies. Notwithstanding anything to the contrary stated herein, this subparagraph shall not obligate Cevallos to deliver copies of his financial statements to the Bank. The Bank will maintain, and will cause its representatives to maintain before and after termination of this Agreement, strictly confidential all information obtained by the Bank pursuant to this subparagraph. The Bank shall return to the Purchaser all of the information set forth in this subparagraph in the event that this Agreement is terminated by the Purchaser on or before the expiration of the Examination Period.

6. Letter of Intent. The October 29, 1997 Letter of Intent, (the "Letter") is attached hereto as Schedule 6. Upon the execution of this Agreement by the Bank and the Purchaser, the Letter shall terminate and be of no further force and effect.

7. Procedure for Sale of Stock. Within 10 days from the expiration of the Examination Period, and provided that the Agreement has not been cancelled during or at the conclusion of the Examination Period, the Bank shall deliver to each of the Shareholders a written notice (the "Tender Notice") an offer (each, an "offer"), in the form attached hereto as Schedule 7. The Tender Notice shall set forth the purchase price for the Stock, the

5

identity of the Purchaser, the expiration date of the Offer, the method of acceptance of the Offer by the Shareholders, and all pertinent information regarding the Offer which the Bank deems appropriate and convenient and in the best interest of the Bank. The Tender Notice shall expire on the forti fifth (45th) day from the date of dispatch but in no event earlier than thirty (30) days from the date of receipt by the Shareholder (the "Initial Tender Period"). Any Shareholders which do not tender their Stock during the Initial Tender Period shall be entitled to tender their Stock for a period of 180 days commencing on the Closing Date and the Purchaser shall be obligated to purchase such Stock for cash within 30 days of each respective tender, at the same price as the Purchase Price, as such term is defined in paragraph 2, hereinabove. The Purchaser shall purchase on or before the Closing Date for the Purchase Price set forth in paragraph 2 all of the shares of capital stock of the Bank tendered by the Shareholders in accordance with the provisions of the Tender Notice. The Earnest Money Deposit shall be paid on the Closing Date by the Bank to the Shareholders who tendered during the Initial Tender Period their shares in direct proportion of the number of shares which they have tendered in light of the total number of shares tendered by the Shareholders. The Bank will keep the Purchaser reasonably informed as to the status of the Shareholders' decisions relating to the Offer, and will take all reasonable steps to facilitate the Offer.

8. Delivery of the Stock; Closing Date. On the Closing Date, the certificates evidencing the Stock tendered shall be issued and delivered to Cevallos and payment of the Purchase Price shall be made by the Purchaser to all of the Shareholders who have tendered during the Initial Tender Period their Stock. Consummation of the issuance, purchase of the Stock, and payment of the Purchase Price hereunder shall constitute the closing of the transaction contemplated hereby (herein, the "Closing"). The Closing shall occur within 90 days of the first to occur of the following events: (i) the successful completion of an initial public offering by FBI (being understood, however, that nothing contained herein shall make the performance of the Purchaser hereunder contingent or subject to the successful completion of an initial public offering by the Purchaser or FBI); or (ii) the receipt by agencies of all written approval from all necessary regulatory authorities; the Purchaser to consummate the transactions contemplated hereunder, but in neither event later than 9 months from the date of the Notice (the "Closing Date"). The Closing shall take place at the offices of Delgado, Befeler, Starkman & Magolnick, P.A., attorneys for the Bank, at 100 Southeast Second Street, 37th Floor, Miami, Florida 33131, or other place mutually agreed upon by the Parties. In the event that any applicable law, rule or regulation requires a waiting period

6

regarding the disbursement of the funds or the delivery of the certificates evidencing the Stock, the Escrow Agent will hold the funds representing the Purchase Price and the certificates evidencing the Stock in escrow until the expiration of such waiting period. In the event that the waiting period after the Closing exceeds 45 days, the Bank and the Purchaser shall in good faith discuss the resolution of the waiting period issue to their mutual satisfaction. In the event that the Bank and the Purchaser cannot resolve such issue to their satisfaction, a mediator shall be agreed upon and appointed by the Parties and the issue shall be promptly mediated to a solution which is consistent with the spirit of this Agreement. Notwithstanding all of the foregoing, in the event that the waiting period exceeds 90 days, the Closing shall be rescinded by the Parties and Shareholders, the Escrow Agent shall forthwith return the stock certificates evidencing the Stock tendered and the Purchase Price to the respective persons which delivered the same to the Escrow Agent, and the Purchaser shall thereupon be unable to complete this transaction whereupon the respective provisions of paragraph 13 shall apply. In the event that the Purchaser defaults under this Agreement or, does not offer to purchase the Stock for any reason at all, other than the default hereunder by the Bank and further provided that the Bank shall be in compliance hereunder, then the provisions of paragraph 13 shall apply. At the Closing of the purchase of the Stock tendered under the Initial Tender Notice, the Ortellado Shares shall be converted into voting common shares at the ratios provided in paragraph 24 of this Agreement.

9. Bank's Conditions Precedent to Closing. The obligations of the Bank hereunder are, at the option of the Bank, subject to the following conditions precedent:

(a) All the terms, covenants and conditions of this Agreement to be complied with or performed by the Purchaser on or before the Closing Date shall have been fully complied with or performed in all material respects.

(b) The representations and warranties made by the Purchaser herein shall be correct in all material respects on the date hereof and as of the Closing Date.

10. Purchaser's Conditions Precedent to Closing. The obligations of the Purchaser hereunder are, at the option of the Purchaser, subject to the following conditions precedent:

(a) All the terms, covenants and conditions of this Agreement to be complied with or performed by the Bank on or before the Closing Date shall have been fully complied with or performed

7

in all material respects.

(b) The representations and warranties made by the Bank herein shall be correct in all material respects on the date hereof and as of the Closing Date.

11. Bank's Representations and Warranties. In order to induce the Purchaser to enter into this transaction, the Bank makes the following representations, warranties and covenants intending that the Purchaser relies upon each of said representations, warranties and covenants are true and correct as of the date of this Agreement and will be true and correct as of the Closing Date:

(a) Except as otherwise provided in this Agreement, the Stock will constitute (and at the closing will constitute) up to 49.00003% of the authorized, issued and outstanding stock of the Bank. Other than the Stock and the Ortellado Shares and as provided in Schedule 11(a) attached hereto, there are (and at Closing there will not be) no outstanding securities, debentures, options (issued by the Bank), subscriptions or warrants of the Bank with respect to its securities. Except as disclosed in Schedule 11(a), no person has (or at closing will have) any option, call or right, to acquire from the Bank any stock, debentures or other securities. The Stock is not (and at closing will not be) registered under Section 12 of the Federal Securities and Exchange Act of 1934. This representation and warranty shall survive Closing for a period of 365 days.

(b) There are no voting trusts or shareholders' agreements among the shareholders of the Bank or with the Bank, and the Stock shall not, at Closing, be subject to any such voting trust or shareholders' agreement. This representation and warranty shall survive Closing for a period of 365 days.

(c) The Stock is fully paid and non-assessable. The Bank has 1,197,834 and after conversion of the Ortellado Shares will have 586,939 common shares outstanding. The Bank has, in addition, 200,000 shares of non-voting, non-cumulative preferred stock with a $4.00 par value, authorized, issued and outstanding. Such preferred shares have been issued to Cevallos by the Bank in exchange for the Ortellado Shares. This representation and warranty shall survive Closing for a period of 365 days.

(d) To the best of the Bank's knowledge, Cevallos will receive at Closing all legal and equitable title to the tendered Stock, free and clear of any liens, encumbrances, security interests, claims or rights of any other person. To the Bank's knowledge, the Bank's execution of this Agreement and the issuance

8

of Stock to the Purchaser at Closing will not breach or contravene any agreement or understanding to which the Bank is a party, or to which the Stock are subject, nor any decree, order or decision of any governmental body or tribunal, nor any applicable law or regulation.

(e) Except as set forth in Schedule 11(e), there is (and at Closing there will be) no litigation, proceeding, or governmental litigation pending against the Bank or, to the knowledge of the Bank, threatened against the Bank which, if adversely resolved or decided adversely to the Bank, could have a material adverse effect on the financial condition, the operations of the Bank or Cevallos' ability to take good title to the Stock. There are and at Closing there will be no judgments outstanding against the Bank. This representation and warranty shall survive Closing for a period of 365 days.

(f) There is and at Closing there will be no memorandum of understanding, supervisory agreement, consent agreement or decree, cease and desist order, or similar arrangement in effect between the Bank and any governmental authority and there is not and at Closing there will be no governmental action pending or threatened against the Bank. The Bank is not and at Closing will not be in material violation of any law (including, without limitation, currency reporting laws), regulation, order or decision of any governmental entity or tribunal.

(g) The financial condition and results of operations of the Bank are fairly presented by its financial statements dated as of December 31, 1995 and December 31, 1996, respectively, and the unaudited financial statements dated as of October 31, 1997, which to properly reflect the financial condition of the Bank in accordance with generally accepted accounting principles, consistently applied (attached hereto as Schedule 11(g)), and since such date there have been no (and at Closing there will not be any) material adverse change in the financial condition of the Bank. The December 31, 1995 and 1996 audited financial statements were prepared in accordance with generally accepted accounting principles. To the best of the knowledge of the Bank, there are no (and at Closing there will be no) material liabilities or commitments of the Bank, absolute or contingent, known or unknown, except to the extent disclosed in such financial statements or other documents disclosed to the Purchaser separately and specifically disclosed in writing to Purchaser) except in the Bank's normal course of business. Except as expressly disclosed in the financial statements attached hereto as Schedule 11(g), to the best of the knowledge of the Bank, there are no material liabilities or adverse obligations, contingent or otherwise,

affecting the Bank, its properties or its assets. Notwithstanding anything in this Agreement to the contrary, the representations set forth in this paragraph will survive the Closing except that the Purchaser shall not have any cause of action for any misrepresentation in this subparagraph unless such misrepresentation resulted in an actual uninsured economic loss to the Bank exceeding US$200,000.

(h) The Bank has (and at Closing will have) duly filed all federal, state and local tax returns or reports required to be filed through such date, and paid all taxes, interest and penalties due in respect thereof or of any assessment received by it. To the best of Bank's knowledge, such returns and reports reflect (and at Closing will reflect) accurately all liability for taxes of the Bank for the periods covered thereby, and no liability for any such taxes, interest or penalties therefrom have accrued, or prior to Closing shall accrue, thereon. This representation and warranty shall survive Closing for a period of 365 days.

(i) The Bank is a duly organized and licensed national banking association, validly existing and in good standing. A copy of the Bank's incorporation documents and bank charter are attached as Schedule 11(i). The Bank is a member of the Federal Reserve System. The Bank's deposits are insured by the Federal Deposit Insurance Corporation, and the Bank has all necessary occupational licenses and regulatory approvals to conduct its business and own its properties. This representation and warranty shall survive Closing for a period of 365 days.

(j) The property and assets of the Bank are insured against loss or damage of the kinds and in the amounts as noted in Schedule 11(j) hereto. Subject to actions of the insurer, the foregoing statements will be true and correct at all times through Closing. This representation and warranty shall survive Closing for a period of 365 days.

(k) The Bank is not (and at Closing will not be) a party to any collective bargaining agreement, or to any agreement with any affiliate of the Bank, including any shareholder, director or officer of the Bank, or any entity controlled by any such person (except loan and credit agreements entered into the ordinary course of business). Except as listed in Schedule 11(k), the officers and employees of the Bank are terminable at will without payment of a fine, termination payment or penalty. Except as noted in Schedule 11(k), all accrued and unpaid tax liabilities and wages, vacation, sick pay, withholding employee taxes (other than in the ordinary course of business, there are no employment or labor disputes, grievances, charges or proceedings involving the

employees or officers of the Bank. This representation and warranty shall survive Closing for a period of 365 days.

(1) The Bank has no bank operational premises other than the land and buildings owned or leased at the locations described in Schedule 11(11), attached hereto. Moreover, the Purchaser's Schedule 11(12) contains true and correct copies of all leases, subleases or other agreements relating to such real property, all of which are in full force and effect. To the best of the knowledge of the Bank, the Bank is not in default of any of its obligations thereunder, and has not received notice alleging any such default or seeking to terminate any such lease or agreement. To the best of the knowledge of the Bank, the improvements on such real property, and the Bank's use of the same, complies with all applicable zoning and other county, or municipal or other applicable ordinances or regulations. The Bank has not received any notice of noncompliance with any applicable zoning and other county, or municipal or other applicable ordinances or regulations.

(m) The Agreement and the execution, delivery and performance thereof by the Bank is each valid and binding on the Bank and its respective successors and assigns and are enforceable against them in accordance with the same terms and conditions set forth herein. This representation and warranty shall survive Closing for a period of 365 days.

(n) The Agreement is not subject to any agreement, rule, article, bylaw, law, regulation, litigation, governmental proceeding, order or understanding which would conflict with the provisions of this Agreement or the purposes hereof or of the transactions contemplated herein. There are no consents by any third parties needed for the Bank to execute and deliver this Agreement and/or to perform all obligations and responsibilities hereunder except for the Regulatory Approvals. This representation and warranty shall survive Closing for a period of 365 days.

(o) Until Closing, or if earlier, the termination of the Agreement in accordance with its terms, the Bank shall take all actions to be in compliance with this Agreement (unless such required action would violate any law, rule or regulation).

12. Representations, Warranties and Covenants of Purchaser.

In order to induce the Bank to enter into this transaction, the Purchaser makes the following representations, warranties and covenants intending that the Bank rely upon each of said representations, warranties and covenants are true and correct as of the date of this Agreement and will be true and correct as of the Closing Date:

11

Authorities, the Purchaser has full right, power and authority to execute, deliver and perform this Agreement, and any other instruments being executed by the Purchaser to purchase the Stock. The execution, delivery and performance of each of this Agreement, and any other instruments being executed by the Purchaser pursuant to this Agreement constitute, and shall constitute, the valid and legally binding obligations of the Purchaser and is enforceable against the Purchaser in accordance with its respective terms.

(b) The source of the funds to be utilized by the Purchaser to purchase the Stock is as set forth in Schedule 12(b). The funds are not borrowed specifically for the purchase of the Bank Stock and will be available at the Closing for the purposes of purchasing the Stock as set forth in this Agreement. The Purchaser hereby represents to the Bank that it has available funds with which to purchase the Stock as required hereunder.

(c) To the best of its knowledge, the Purchaser is not aware of any information which it reasonably believes could serve as the basis for regulatory disapproval of the Purchaser.

(d) The Purchaser hereby represents and warrants to the Bank that (i) other than as set forth in paragraph 25, it intends to acquire shares of the Stock solely for its own account and not with a view to, or for resale in connection with any distribution within the meaning of the Securities Act of 1933, as amended, or the Florida Investor Protection Act, as amended, (ii) should it elect not to terminate this Agreement as provided under the provisions governing the Examination Period, it will be only because it has received any and all information regarding the Bank which it requested in order to enable it to evaluate the merits and risks of an investment in the Stock and (iii) by reason of its principal's, Alberto Cevallos, education or substantial experience in business and financial matters or that of its financial or other advisor it is fully capable of evaluating the merits and risks of an investment in the Stock.

(e) Until Closing, or if earlier, the termination of the Agreement in accordance with its terms, the Purchaser shall take all actions to be in compliance with this Agreement (unless such required action would violate any law, rule or regulation).

(f) The Purchaser hereby represents and warrants to the Bank that it has performed any and all due diligence that it deems necessary and appropriate to purchase the Ortelado Shares and that the Bank has made available all of the books, records and information that it has requested in connection with its due diligence with respect to such purchase. The Purchaser hereby represents to the Bank that it is satisfied with the results of all

12

such inspections and reviews and that it is purchasing the Ortellado Shares with full knowledge of the financial condition of the Bank.

13. **Repurchase of Ortellado Shares by the Bank and/or Assignee.**

(a) In the event that the Purchaser has purchased the Ortellado Shares but does not purchase the Stock from the Shareholders in accordance with the terms herein within nine (9) months from the date of the Notice for any reason, other than the default of the Bank hereunder or the non-tender (or non-performance after tender) of the Stock by the Shareholders and further provided that the Bank shall be in compliance hereunder, then in such event, the Bank and/or its assignee (provided, however, that the assignee shall have been approved by the Office of the Comptroller of the Currency, if such approval is required, and further provided that the assignee shall have the financial capability to purchase the Stock, or the portion thereof purchasable under the portion of the Bank Option being assigned by the Bank to such assignees) shall have the absolute and unilateral right to repurchase the Ortellado Shares from the Purchaser on the terms and conditions set forth in this paragraph 13. In the event that this Agreement is deemed terminated under other provisions of this Agreement, the provisions of this paragraph 13 shall survive such termination so as to give viability and effect to the Bank Option, as such term is hereafter defined.

(b) Provided that paragraph 13(a) applies, the Bank and/or its assignees shall have the absolute and unilateral right to repurchase the Ortellado Shares from the Purchaser (the "Bank Option") at a price of 1.75 times book value, as of the last day of the month preceding the month in which the repurchase of the Ortellado Shares occurs (the "Option Price"). For purposes hereof, the term "book value" shall be defined as set forth in paragraph 2 hereinabove. The Bank Option shall be unconditional in all respects with the only requirement being that the Bank pay the Option Price to the Purchaser.

(c) Provided that paragraph 13(a) applies, the Bank or its assignees shall have the right to exercise the Bank Option commencing on the first day subsequent to the 90th day from the Effective Date (the "Option Commencement Date") and ending 9 months after the Option Commencement Date. The Bank and/or have the right to assign its rights to repurchase the Ortellado Shares to any persons that it deems appropriate without interference from the Purchaser or Cavallos.

(d) Provided that paragraph 13(a) applies, at the closing of the repurchase transaction, the Purchaser shall receive

13

cash in the form of a cashier's check drawn on a Florida financial institution reasonably acceptable to the Bank or a wire transfer in United States Dollars as payment of the purchase price for the Ortellado Shares.

(e) Provided that paragraph 13(e) applies, in the event that the Purchaser duly complies with all of the provisions of this Agreement, including the timely filing and diligent pursuit of all the requisite regulatory approvals, and further provided that the Purchaser does not receive all of the requisite regulatory approvals for the purchase of the Stock, and further provided that the Bank does not repurchase the Ortellado Shares in accordance with the provisions of this subparagraph 13, then the provisions of this subparagraph 13(f) shall apply. In such instance, after the expiration of the Bank Option, the Bank and the Purchaser shall use their best efforts to locate a purchaser for and sell all of the issued and outstanding shares of capital stock of the Bank at a price of no less than two times book value. Until such time as such purchaser is located and the shares of capital stock of the Bank are sold, the Ortellado Shares shall remain non-voting preferred stock.

14. **Purchaser's Representatives and Bank.**

(a) From the date that the Purchaser purchases the Ortellado Shares until the earlier of the Closing or the termination of this Agreement, the Purchaser shall be entitled to designate three individuals (reasonably acceptable to the Board of Directors of the Bank) prior to the next Board of Directors meeting after the Effective Date of this Agreement. The designated representatives shall only be observers and shall not be entitled to vote, to participate, or to engage in any discussions or to influence (in any manner) the decision of the Bank's Board of Directors.

(b) The Bank shall not, from and after the date of this Agreement and until the earlier of Closing or the termination of this Agreement, without Purchaser's prior written consent, (i) declare or pay, or obligate itself to declare or pay, any dividends, or effect stock splits, except to the extent necessary to comply with applicable law; (ii) amend, or obligate itself to amend, its Restated Articles of Association or Bylaws, except to the extent necessary to comply with this Agreement, the Articles of Association, as amended, applicable law and directives of any regulatory authority; (iii) issue or agree to issue any additional securities, shares, debentures, subscriptions or warrants, or grant any calls, options or rights to acquire any of the foregoing, except to the extent to comply with this Agreement, applicable law and directives of any regulatory agency.

15. **Bank's Covenants.** The Bank covenants and agrees to the following:

14

operate in the ordinary course of business and to use its efforts to preserve the ongoing business of the Bank to recover charged off loans in the same manner and under the same policies as it has in the past and to manage classified and non-accruing loans, and to maintain the goodwill of its customers and others having business relationships with it;

(b) At all times prior to closing, the Bank shall provide prior notice to the Purchaser of any of the following proposed activities:

i. Hiring of any employee at a salary in excess of U.S. $50,000;

ii. Any capital expenditure in excess of U.S. $150,000;

iii. The Bank's incurring of any loan or contingent liability in excess of U.S. $500,000 not previously disclosed to Purchaser in this Agreement, except for the incurring of a liability in the ordinary course of the Bank's business (e.g. transactions involving the investment in or borrowing of federal funds or other similar transactions);

iv. The Bank's execution of any lease.

(c) Until Closing, or if earlier, the termination of the Agreement in accordance with its terms, the Bank shall take all actions to be in compliance with this Agreement (unless such required action would violate any law, rule or regulation).

(d) At closing, the Bank shall have loan loss reserves as required by the rules and regulations of the Office of the Comptroller of the Currency.

16. Termination. This Agreement and the transactions contemplated hereby may be terminated prior to the Closing Date:

(a) By the mutual written consent of the Parties;

(b) By the Bank, in the event the Purchaser shall fail to pay into the Escrow Agent the Earnest Money Deposit by the date upon which such payment is to be made as provided herein;

(c) By the Purchaser in the event of a material default by the Bank of its representations and covenants under this Agreement, after notice and reasonable opportunity to cure, provided Purchaser is not in material default under this Agreement;

(d) By the Bank, in the event of a material default by the Purchaser of their representations and covenants under this

15

Agreement, after notice and reasonable opportunity to cure, provided the Bank is not in material default under this Agreement; or

(e) By the Purchaser, in the event that the Purchaser fails to elect to not offer to purchase the Stock under the provisions of subparagraph 4(e) at or prior to the conclusion of the Examination Period; or

(f) By the Bank in the event that the Purchaser fails to make the tender offer and/or does not stand ready to purchase the Stock as required in paragraph 7 hereinabove.

17. Consequences of Termination. In the event that this Agreement shall be terminated in accordance with its terms (these remedies shall be in addition to paragraph 20):

(a) Within ten (10) days after (i) the Agreement shall have been terminated by mutual consent of the Parties hereto pursuant to the provisions of subparagraph 16(a), or (ii) in the event that the Purchaser elects not to offer to purchase the Stock under the provisions of subparagraph 16(e), the Escrow Agent (or the Bank, as the case may be), upon written notification given by the Purchaser, shall return to Purchaser the Earnest Money Deposit held by the Escrow Agent (or the Bank, as the case may be) (which shall consist of all the deposit paid by Purchaser and without any interest), and thereupon, this Agreement and the Escrow Agreement shall be terminated and canceled in their entirety, and no further obligation shall exist among the Purchaser, Bank and the Escrow Agent.

(b) In the event the Agreement is terminated by the Bank pursuant to the provisions of subparagraph 16(b) hereinabove because of the failure to pay the Escrow Agent the Escrow Money Deposit by the date that the same is due, this Agreement shall immediately automatically terminate and the parties shall be relieved from any further liability hereunder.

(c) In the event the Agreement is terminated by the Purchaser pursuant to the provisions of subparagraph 16(c) hereinabove because of a material default by the Bank, the Purchaser's sole remedy shall either be to terminate this Agreement and receive the Earnest Money Deposit (together with any interest earned thereon) or, in the alternative, to seek specific performance to complete the transactions contemplated hereby (i.e., compel the Bank to perform the Purchaser's right to accept the Notice of Tender to form the Purchase of Stock to enable Purchaser to acquire such Stock, convert the preferred stock to common stock, provided that the Purchaser has faithfully complied with all of the conditions precedent under this Agreement for such conversion, etc.); provided, however, that in the event the Purchaser elects the remedy of terminating this Agreement and

16

receiving the Earnest Money Deposit, the Purchaser shall be deemed to have waived its right to seek the remedy of specific performance. To obtain the return of the Earnest Money Deposit, the Purchaser shall give written notification to Escrow Agent (or the Bank, as the case may be) (such written notification to consist of an affidavit of Purchaser to the effect that Purchaser has a right to terminate this Agreement pursuant to subparagraph 16(c) and that Purchaser is free of any material default under this Agreement) and, upon receipt of such written notification, Escrow Agent (or the Bank, as the case may be) shall return to Purchaser the Earnest Money Deposit held by Escrow Agent (or the Bank, as the case may be), and thereupon this Agreement and the Escrow Agreement shall be terminated and canceled in their entirety, and no further obligation shall exist among the Purchaser, the Bank and the Escrow Agent.

(d) Within ten (10) days after this Agreement shall have been terminated by the Bank pursuant to the provisions of subparagraph 16(d) hereof because of a material default by the Purchaser, the Escrow Agent (or the Bank, as the case may be), upon receipt of written notification given by Bank (such written notification to consist of an affidavit of the president of the Bank to the effect that the Bank has a right to terminate the Agreement pursuant to subparagraph 16(d) hereof and that the Bank is free of any material default) shall pay to the Bank the Earnest Money Deposit which theretofore were paid as liquidated damages, at which time this Agreement and the Escrow Agreement shall be terminated and canceled in their entirety, and no further obligation shall exist among the Purchaser, the Bank and the Escrow Agent.

(e) The provisions of paragraph 13 of this Agreement shall survive the termination provisions of this Agreement.

18. Indemnity on Representation and Warranties. In the event the Closing occurs, the Bank and the Purchaser agree to indemnify each other against any loss, damage, expense (including reasonable attorneys' fees, which shall include attorneys' fees on appeal), or other liabilities which either Party may suffer, directly or indirectly, by reason of the fraud or wilful misrepresentation of a material fact in this Agreement by the other party. Absent fraud or wilful misrepresentation, the rights of the Parties under this paragraph and the representations and warranties made under this Agreement shall, unless survival is specifically provided for, not survive the Closing hereof and shall be deemed to merge into the closing documents.

19. Finders or brokers. The Parties agree to indemnify and hold each other free and harmless from any claim of any kind asserted against the other by any such broker or finder purporting to have acted for or on behalf of the other.

17

20. Costs and Attorneys' Fees. Each party to this Agreement shall be responsible for its own legal and other expenses in connection with the activities contemplated by this Agreement. In the event of any litigation to enforce the terms of this Agreement, the prevailing party shall be entitled to be reimbursed for all costs and reasonable attorneys' fees, including but not limited to, appellate review.

21. Publicity and confidentiality.

(a) Unless required by law or regulatory authority, none of the Parties shall issue any press release or otherwise publicize this Agreement or the transactions contemplated herein prior to the Closing Date without the approval of the Bank and the Purchaser, which approval shall not be unreasonably withheld. The approval of a specific press release or other form of publicity shall not constitute approval of subsequent press releases or publicity. Notwithstanding anything to the contrary, the Purchaser shall be entitled to publish any legal notice which may be required in connection with their application for Regulatory Approval and to discuss merger, acquisition and underwriting plans with bonafide candidates for such contemplated mergers, acquisitions and underwritings, respectively.

(b) "Confidential information," as the term is used herein, shall include all information, documentation, software and disclosures, written or oral, regardless of whether they qualify as a "trade secret" under applicable Federal or state law, which (i) pertains to the Bank's financial condition, business operations, business plans, markets, customers, opportunities or personnel, contractual relationships, policies and which (ii) is, as a matter of policy maintained for the private use of the Bank's agents for the sole benefit of the Bank, and is not disclosed to the public, and which (iii) is made available by the Bank to Purchaser or any of their representatives, auditors, agents or employees pursuant to this Agreement. The term shall also include the existence, nature, and purpose of any discussions conducted or to be conducted between the Bank and Purchaser relating to Purchaser's evaluation of the stock acquisition contemplated herein. The term "confidential information" shall not include information which is otherwise public or which may be readily obtained from another source which is not unauthorized.

(c) In consideration of the Bank's making available to the Purchaser and its agents Confidential Information, the Purchaser agrees,

i. to use Confidential Information only for the purpose of evaluating the merits of the stock acquisition contemplated herein;

ii. to limit dissemination of the Confidential Information to the Purchaser, their representatives, advisors,

18

agents or employees, and to Governmental Authorities;

iii.  to hold and cause its representatives, advisors, agents or employees to hold in strict confidence all Confidential Information; and

iv.  to return all Confidential Information, including all copies, abstracts, summaries and records thereof, to the Bank, promptly upon termination of this Agreement in the event there is no Closing.

22.  **Effective Date.** The Effective Date of this Agreement shall be the date on which the last of the Purchaser and the Bank executes this Agreement and the Bank Board of Directors has approved or ratified the Agreement and notice given to the Purchaser.

23.  **Post Closing Events.** The Purchaser and the Bank agree to those events subsequent to Closing:

(e)  The senior management of the Bank will be retained as agreed in writing by the senior management of the Bank and the Purchaser, which written agreement shall specifically and expressly acknowledge and ratify any and all employment agreements, retirement packages, life insurance annuities and other benefits of the senior management of the Bank, except to the extent herein specifically set forth. The employment agreement of Manuel Fernandez, President and Chief Executive Officer of the Bank (the "Executive"), shall be amended to (i) provide that the compensation, including bonuses, of the Executive shall be negotiated to reflect compensation of similarly presidents and chief executive officers in the top 10% level of compensation of the peer group of the Bank, (ii) add two one-year extensions to the term of the present agreement, at the option of the Executive, (iii) provide an additional option to purchase 20,000 shares of the Bank's capital stock at a price equal to 1.4 times book value which may be exercised at any time during the term of his employment agreement. In addition, the insurance annuities of the executive officers of the Bank currently in place shall be adopted and ratified in all respects.

24.  **Coordination with Agreement Between Purchaser and Ortallado.** It is understood that the Purchaser is entering into or has entered into an agreement to purchase the Ortallado Shares from Ortallado (the "Ortallado Transaction"). As part of the Ortallado Transaction, the Purchaser has agreed, and the Bank has consented to, the conversion of the Ortallado Shares from voting common stock to non-voting non-cumulative preferred stock having a par value of $4.00. The Purchaser and the Bank hereby agree to the conversion of the Ortallado Shares from voting common stock to non-voting non-cumulative preferred stock having a par value of $4.00, voting non-cumulative preferred stock having a par value of the Ortallado concurrently with or prior to the closing of the Ortallado

19

Transaction. The Purchaser agrees that the Ortallado Shares may not be reconverted by the Purchaser or at the behest of the Purchaser, (or its successors and assigns) into voting common shares until such time as the Purchaser receives all necessary regulatory approvals and purchases all of the Stock duly tendered during the Initial Tender Period by the Shareholders hereunder. Upon reconversion, as provided in this paragraph 24, each share of preferred stock of Cavallos shall be converted into 3.054475 shares of common stock, which constitute 50.99997% of the authorized, issued and outstanding shares of the Bank's common stock, on a non-diluted basis.

25.  **Merger of Banks and Public Offering.** The Purchaser is intending to effectuate a merger of two or more banks together with the Bank and to fund such activity in conjunction with an initial public offering. The Bank shall provide the Purchaser with available information which is reasonably requested by the Purchaser and which will assist the Purchaser in effectuating the merger of two or more banks with the Bank (unless the release of such information is prohibited by law). Furthermore, the Bank will convey to the Stockholders information provided by the Purchaser regarding the Purchaser's offer to accept a combination of stock (50%) in the combined banks and cash (50%), as the Purchaser may reasonably offer. The Bank and the Purchaser understand that the terms and conditions of such a merger proposal are to be set by the Purchaser and the merging banks together with the underwriters involved in the transaction. Notwithstanding consent of the Shareholder, the obligation of the Bank to accept the payment of the Purchase Price of his/her stock in other than cash, as set forth in Paragraphs 2 and 3 of this Agreement unless the Shareholder so shall elect. Moreover, nothing contained in this Paragraph shall obligate the Bank to execute any documents or enter into any agreements regarding the transactions contemplated by the Purchaser in this paragraph 25, prior to the closing.

26.  **Assignment.** Purchaser or Bank may not assign any rights under this Agreement except as herein specifically set forth.

27.  **Notices.** All notices from the Purchaser to the Bank shall be in writing and delivered at the Bank's main office located at 1401 South State Road 7 North Lauderdale, Florida 33068 to the attention of Manuel Fernandez, President, facsimile number (305) 971-6071, with a copy thereof to George Befeler, Esq., Delgado, Befeler, Starkman & Magolnick, P.A., 100 Southeast 2nd Street, Suite 3700, Miami, Florida 33131, facsimile number (305) 379-4404, as the Attorney of record of North Lauderdale. Any notices to the Purchaser shall be in writing and delivered to Financial Bancor, Inc. c/o Suite 1800, 701 Brickell Avenue, Miami, Florida 33131, with a copy to James D. Whisenand, Esq., Whisenand and Turner, P.A., 701 Brickell Avenue, Suite 1800, Miami, Florida 33131, facsimile (305) 374-2919. Notices shall be effective on the date of facsimile or hand delivery, or effective seven (7) days to a U.S. address or twenty-

20

one (21) days to a non-U.S. address after mailing by certified return receipt, whichever is sooner.

28. **Board Approval.** The Agreement is final and binding and was approved by the Board of Directors of the Bank on November 25, 1997.

29. **Schedules.** Each party shall have five business days from the Effective Date to prepare and deliver the Schedules and Appendices provided for herein.

30. **Other Provisions.** This Agreement sets forth the Parties' entire understanding with respect to the subject matter hereof, and is governed by the laws of the state of Florida. The provisions of this Agreement are cumulative, and not exclusive of any other rights and obligations at law or in equity, or any dispute relating to this Agreement, the parties submit to the jurisdiction of the federal courts or state courts in Dade County, Florida. The Parties further agree that service of process in any such action may be served upon any of the Parties, in addition to any other manner permitted by law, by mailing either by registered or certified mail a copy of the summons and complaint to the attorney named as the attorney for such Party in the notices paragraph of this Agreement. Such service shall be effective ten (10) days after posting. Service of process on FBI and Cevallos may be effectuated and shall be deemed perfected by serving James D. White, Esq., Whiteman and Turner, P.A., 701 Brickell Avenue, Suite 1800, Miami, Florida 33131. If any part of this Agreement is held by a Court to be invalid, the remainder of the Agreement shall be valid and construed to effect the transactions of the parties. This Agreement may be signed in counterparts. Facsimile copies of this Agreement, signed and initialed counterpart, shall be considered for all purposes, including delivery, as originals. All of the recitations set forth in the above Preamble are true and correct and are incorporated herein by this reference. Time shall be of the essence with respect to all time deadlines set forth in this Agreement. This Agreement shall not be assignable by any party, except as specifically set forth herein.

31. **Alberto Cevallos.** As a material inducement to the Bank entering into this Agreement, Alberto Cevallos ("Cevallos"), the sole shareholder of the Purchaser, hereby represents and warrants to the Bank that: he personally possesses the financial capacity and wherewithal to purchase the stock. Further, Cevallos hereby agrees to unconditionally and irrevocably guarantee the performance of the Purchaser under this Agreement, including but not limited to the timely payment of the Purchase Price as set forth in paragraphs 2 and 3 of this Agreement. Cevallos agrees that he will, at all times prior to reconverting his preferred shares into common shares, be a passive investor in the Bank and will not seek to exert any influence, whether directly or indirectly, over the affairs of the Bank.

21

32. **Ortellado/Purchaser Agreement.** Concurrently with or prior to the Effective Date, the Purchaser is entering or has entered into an agreement with Ortellado for the purchase of the Ortellado Shares. The Purchaser shall purchase the Ortellado Shares as provided in the Ortellado Agreement. Immediately prior to or at the closing of the transaction contemplated in the Ortellado Agreement, the Ortellado Shares shall be converted to non-voting, non-cumulative preferred stock of the Bank. The Ortellado Shares shall be re-convertible into voting common stock of the Bank upon the closing of the transactions contemplated. The parties hereto acknowledge and agree that the Purchase Price to the Shareholders. Agreement is an independent agreement from this Agreement, that the Bank is not a party thereto, and that the Bank does not have any responsibility or obligations to the Purchaser with respect thereto or to the securities being acquired thereunder, whether under state or federal securities law, or otherwise. The Purchaser has performed its own independent investigations and examinations in reaching its decision to purchase the Ortellado Shares.

33. **Encumbrance of Ortellado Shares.** In order to be in a position to honor the Bank Option, except as specifically set forth in this paragraph 33, the Purchaser hereby agrees not to assign, transfer, hypothecate, encumber, mortgage, pledge or otherwise dispose of, in either whole or in part, the Ortellado Shares at any and all times while the Bank Option is outstanding. The Shareholders may and/or while the Bank has not been fully purchased from the Purchaser shall only while the Bank Option is outstanding, if: (i) the underlying indebtedness for which the Ortellado Shares are being pledged does not encumber the Ortellado Shares including principal, interest, late fees, attorneys' fees, costs, etc., $4,900,000; (ii) the Bank and/or its assignees shall have at all times subsequent to a default of the underlying indebtedness by the Purchaser and for a period of two months subsequent to such default, the unilateral option and right to purchase the indebtedness (including the promissory note, the pledge agreement and all other loan documents delivered by the Purchaser to the third party lender) but/or the Ortellado Shares for the amount of the indebtedness, but not to exceed a total of $4,900,000 from the third party lender; (iii) the Ortellado Shares shall not be reconvertible into voting common stock (or any other class of voting stock) at any time that the Ortellado shares are owned by a person other than Cevallos if the Ortellado shares are owned by a shall only be reconvertible (in which event, the Ortellado Shares in accordance with the provisions of this Agreement) and (iv) the third party lender agrees in advance in writing to abide by the terms and conditions set forth in this Agreement, and agrees to notify the Bank of a default within 10 days from the date of default.

22

agents or employees, and to Governmental Authorities;

iii. to hold and cause its representatives, advisors, agents or employees to hold in strict confidence all Confidential Information; and

iv. to return all Confidential Information, including all copies, abstracts, summaries and records thereof, to the Bank, promptly upon termination of this Agreement in the event there is no Closing.

22. Effective Date. The Effective Date of this Agreement shall be the date on which the last of the Purchaser and the Bank shall execute this Agreement and the Bank Board of Directors has approved or ratified the Agreement and notice given to the Purchaser.

23. Post Closing Events. The Purchaser and the Bank agree to those events subsequent to Closing:

(a) The senior management of the Bank will be retained as agreed in writing by the senior management of the Bank and the Purchaser, which written agreement shall specifically and expressly acknowledge and ratify any and all employment agreements, retirement packages, insurance annuities and other benefits of the senior management of the Bank, except to the extent herein specifically set forth. The employment agreement of Manuel Fernandez, President and Chief Executive Officer of the Bank (the "Executive"), shall be amended to (i) provide that the compensation, including bonuses, of the Executive shall be negotiated to reflect compensation of similarly presidents and chief executive officers in the top 10% of their peer group of the Bank, (ii) add two one-year extensions to the term of the present agreement, at the option of the Executive, (iii) provide an additional option to purchase 20,000 shares of the Bank's capital stock at a price equal to 1.4 times book value which may be exercised at any time during the term of his employment agreement. In addition, the insurance annuities of the executive officers of the Bank currently in place shall be adopted and ratified in all respects.

24. Coordination with Agreement Between Purchaser and Ortaliedo. It is understood that the Purchaser is entering into or has entered into an agreement to purchase the Ortaliedo Shares from Ortaliedo (the "Ortaliedo Transaction"). As part of the Ortaliedo Transaction, the Purchaser has agreed, and the Bank has consented to, the conversion of the Ortaliedo Shares from voting common stock to non-voting cumulative preferred stock having a par value of $4.00. The Ortaliedo non-cumulative preferred stock hereby agree to the conversion of the Ortaliedo shares the Bank having common stock to non-voting non-cumulative preferred stock having a par value of $4.00 concurrently with or prior to the closing of the Ortaliedo

19

Transaction. The Purchaser agrees that the Ortaliedo Shares may not be reconverted by the Purchaser or at the behest of the Purchaser, (or its successors and assigns) into voting common shares until such time as the Purchaser receives all necessary regulatory approvals and purchases all of the Stock duly tendered during the Initial Tender Period by the Shareholders hereunder. Upon reconversion, as provided in this paragraph 24, each share of preferred stock of Cavallos shall be converted into 3,054475 shares of common stock, which constitute 50.9999% of the authorized issued and outstanding shares of the Bank's common stock, on a non-diluted basis.

25. Merger of Banks and Public Offering. The Purchaser is intending to effectuate a merger of two or more banks together with the Bank and to fund such merger activities with an initial public offering. The Bank shall provide the Purchaser with available information which will assist the Purchaser in effectuating the merger of two or more banks with the Bank (unless the release of such information is prohibited by law). Furthermore, the Bank will convey to the Purchaser, the Stockholders information provided by the Purchaser regarding the Stockholder's offer to accept a combination of stock (50%) in the combined banks and cash (50%), as the Purchaser may reasonably offer. The Bank and the Purchaser understand that the terms and conditions of such merger proposals are to be set by the Purchaser and the merging banks together with the underwriters involved in the transaction. Nothing contained in this Paragraph shall obligate any Stockholder of the Bank to accept the payment of the Purchase Price of his/her stock in other than cash, as set forth in Paragraphs 2 and 3 of this Agreement unless the Shareholder so shall elect. Moreover, nothing contained in this Paragraph shall obligate the Bank to execute any documents or enter into any agreements regarding the transactions contemplated by the Purchaser in this paragraph 25, prior to the Closing.

26. Assignment. Purchaser or Bank may not assign any rights under this Agreement except as herein specifically set forth.

27. Notices. All notices from the Purchaser to the Bank shall be in writing and delivered at the Bank's office located at 1450 South State Road 7, North Lauderdale, Florida 33068, to the attention of Manuel Fernandez, President, facsimile number (305) 972-6071, with a copy thereof to George Befeler, Esq., Delgado, Befeler, Starkman & Magolnick, P.A., 100 Southeast 2nd Street, Suite 3700, Miami, Florida 33131, facsimile number (305) 379-4404, as the attorney of the Bank, and notices to the Purchaser shall be in writing and delivered to Financial Bancor, Inc. c/o Suite 1800, 701 Brickell Avenue, Miami, Florida 33131, with a copy to James D. Whisenand, Esq., Whisenand and Turner, P.A., 701 Brickell Avenue, Suite 1800, Miami, Florida 33131, facsimile (305) 374-2919. Notices shall be effective on the date of facsimile or hand delivery, or effective seven (7) days to a U.S. address or twenty-

20

onc (21) days to a non-U.S. address after mailing by certified return receipt, whichever is sooner.

28. Board Approval. The Agreement is final and binding and was approved by the Board of Directors of the Bank on November 25, 1997.

29. Schedules. Each party shall have five business days from the Effective Date to prepare and deliver the Schedules and Appendices provided for herein.

30. Other Provisions. This Agreement sets forth the Parties' entire understanding with respect to the subject matter hereof, and is governed by the laws of the State of Florida. The provisions of this Agreement are cumulative and not exclusive of any other rights and obligations at law or in equity. For any dispute relating to this Agreement, the parties submit to the jurisdiction of the federal or state courts in Dade County, Florida. The Parties further agree that service of process in any such action may be served upon any of the Parties, in addition to any other manner permitted by law, by mailing either by registered or certified mail a copy of the summons and complaint to the attorney named as the attorney for such party in the notices paragraph of this Agreement. Such service shall be effective ten (10) days after posting. Service of process on PBI shall be effectuated and shall be deemed perfected by serving Carl D. Whisenand, Esq., Whisenand and Turner, P.A., 701 Brickell Avenue, Suite 1800, Miami, Florida 33131. If any part of this Agreement is held by a Court to be invalid, the remainder of the Agreement shall be valid and construed to affect the transactions of the parties. This Agreement may be signed in counterparts, and initialed in counterpart, shall be considered for all purposes, including delivery, as originals. All of the recitations set forth in the above Preamble are true and correct and are incorporated herein by this reference. Time shall be of the essence with respect to all the deadlines set forth in this Agreement. This Agreement shall not be assignable by any party, except as specifically set forth herein.

31. Alberto Cevallos. As a material inducement to the Bank entering into this Agreement, Alberto Cevallos ("Cevallos"), the sole shareholder of the Purchaser, hereby represents and warrants who shall that he personally possesses the financial capacity and wherewithal to purchase the Stock. Further, Cevallos hereby unconditionally and irrevocably guarantee the performance of the Purchaser, including but not limited to the timely payment of the Purchase Price as set forth in paragraphs 2 and 3 of this Agreement. Cevallos agrees that he will, at all times prior to reconverting his preferred shares into common shares, be a passive investor in the Bank and will not seek to exert any influence, whether directly or indirectly, over the affairs of the Bank.

21

prior to the Effective Date, the Purchaser, concurrently with or entered into an agreement with Ortellado is entering or has Ortellado Shares. The Purchaser shall purchase the Ortellado Shares as provided in the Ortellado Agreement. Immediately prior to or at the closing of the transaction contemplated in the Ortellado Agreement, the non-voting Ortellado Shares shall be converted to non-voting non-cumulative Ortellado preferred stock of the Bank. The Ortellado shares shall be re-convertible into voting common stock of the Bank upon the closing of the transactions contemplated herein and the payment of the Purchase Price to the Shareholders. The parties hereto acknowledge and agree that the transactions contemplated Agreement is an independent agreement from this Agreement, that the Ortellado/PBI Bank is not a party thereto, and that the Bank does not have any responsibilities or obligations to the Purchaser with respect thereto or with respect to the securities being acquired thereunder, whether under state or federal securities laws, common law or otherwise. The Purchaser has performed its own independent investigations and examinations in reaching its decision to purchase the Ortellado Shares.

33. Encumbrance of Ortellado Shares. In order to be in a position to honor the Bank Option, except as specifically set forth in this paragraph 33, the Purchaser hereby agrees not to assign, transfer, hypothecate, encumber, pledge or otherwise dispose of in either whole or in part, the Ortellado Shares and all while the stock has not been fully purchased from the Shareholders while the the Bank Option is outstanding. The Purchaser shall only encumber the Ortellado Shares if: (i) the underlying indebtedness for which the Ortellado Shares are being pledged does not exceed at any time or from time to time, including principal, interest, attorneys' fees, costs, etc., $4,900,000; (ii) the Bank and/or its assignees shall have at all times subsequent to a default of the underlying indebtedness by the Purchaser and for a period of two months subsequent to such default, the unilateral option and right to purchase the indebtedness (including the promissory note, pledge agreement and all other loan documents delivered by the Purchaser to the third party lender) and/or the Ortellado Shares for the amount of the third party lender; (iii) the Ortellado Shares shall not be reconvertible into voting common stock (or any other class of voting stock) at any time that the Ortellado Shares are owned by a person other than Cevallos (in which event, the Ortellado Shares shall only be reconvertible in accordance with the provisions of this Agreement); and (iv) the third party lender agrees in advance in writing to abide by the terms and conditions set forth in this Agreement, and agrees to notify the Bank of a default within 10 days from the date of default.

22

)                                )

(BLANK)

IN WITNESS WHEREOF, the parties hereto set their hands and
seals on the day and year written above.

Signed, Sealed and Delivered
in the presence of:

BANK:

SECURITY BANK, N.A., a national
banking corporation

BY: _____
MANUEL FERNANDEZ, President
(Seal)

_____
Print Name: Jesus Wilson

_____
Print Name: Patricia M. Moreno/Cruz

PURCHASER:

FINANCIAL BANCOR, INC., a
Florida corporation

BY: _____
Alberto Cevallos, President
(Seal)

_____
Print Name: Jennifer Glinsky

_____
Print Name: Jennifer Glinsky

_____
Alberto Cevallos, Individually

_____
Print Name: Jesus Wilson

November 26, 1997

G:\CLIENT\SECURITY.BAN\SECURITY.AVI\CCLOSAL.MON

23

# FIRST ADDENDUM TO SALE AND PURCHASE AGREEMENT

THIS ADDENDUM dated this 26 day of December, 199?, is executed by and between SECURITY BANK, N.A., a national banking association (the "Bank"), FINANCIAL BANCOR, INC., a Florida corporation residing in Ecuador, TBI and ALBERTO CEVALLOS, an individual residing in Ecuador. TBI and Cevallos shall, hereinafter be collectively referred to as the "Purchasers". This is an Addendum to that certain Stock Purchase and Sale Agreement executed by and between the Bank and the Purchasers on November 28, 1997 (hereinafter said Agreement together with all rider and addenda thereto shall be collectively referred to as the "Agreement"). The parties hereby agree that the terms, covenants, and conditions of the Agreement shall be amended as follows:

1. In paragraph 7 of the Agreement, in the first and second lines, the language "within 10 days from the expiration of the Examination Period," is hereby stricken and substituted with the language "No later than January 10, 1998,".

2. At the end of paragraph 7 of the Agreement, the following language shall be added:

The Bank and the Purchasers shall work together in preparing an Information Statement in form and substance acceptable to the Bank and the Purchasers. The Information Statement shall accompany the Tender Notice to the Shareholders. The Information Statement shall contain such disclosures as may be deemed convenient and necessary by the Bank and the Purchasers to disclose the nature of the Tender Offer to the Shareholders and to assist them in making a decision in connection therewith.

3. An executed facsimile of this Addendum shall bear the same effect as an executed original thereof.

4. In the event of any inconsistencies between the Agreement and the terms of this Third Addendum, the terms of this Third Addendum shall control.

IN WITNESS WHEREOF, the parties hereto set their hands and seals on the day and year written above.

signed, sealed and delivered
in the presence of:

_____
Print Name: BEVERLY T. PRICE

_____
Print Name: EDUARDO BARRANCO

BANK:

SECURITY BANK, N.A., a national banking corporation

BY: _____ President
                              (Seal)

PURCHASERS:

FINANCIAL BANCOR, INC., a Florida corporation

BY: _____
Print Name:

_____
Print Name:

_____ President
Alberto Cevallos,                (Seal)

_____
Alberto Cevallos,/Individually

_____
Print Name:

)                                            )

**EXHIBIT B**

**FINANCIAL STATEMENTS OF THE BANK**

)                                        )

## SECURITY BANK N.A.
### STATEMENT OF CONDITION
### (CONSOLIDATED)
### COMPARATIVE
### SEPTEMBER 30, 1997
(dollars in thousands)

| ASSETS | 1997 | 1996 | INCREASE/ DECREASE | % INCREASE DECREASE | % OF TOTAL ASSETS |
|---|---|---|---|---|---|
| CASH AND DUE FROM BANKS | $ 3,768 | $ 2,755 | $ 1,013 | 36.77% | 5.65% |
| INVESTMENTS: | | | | | |
| U.S GOV'T AND AGENCIES, NET OF FASB | 2,544 | 5,015 | (2,471) | -49.27% | 3.82% |
| FEDERAL RESERVE AND FHLB STOCK | 884 | 390 | 494 | 126.67% | 1.33% |
| EQUITY SECURITIES | 50 | 50 | 0 | 0.00% | 0.08% |
| DUE FROM BANK - TIME - FH.B | 4,420 | 3,461 | 959 | 27.71% | 6.64% |
| FEDERAL FUNDS SOLD | 907 | 5,193 | (4,286) | -82.53% | 1.35% |
| TOTAL INVESTMENT SECURITIES | 8,805 | 14,109 | (5,304) | -37.59% | 13.22% |
| LOAN PORTFOLIO: | | | | | |
| ACCRUAL LOANS, net of unearned | 18,617 | 14,527 | 5,090 | 35.04% | 28.45% |
| REAL ESTATE (RVS SYSTEM) LOANS | 23,951 | 19,527 | 2,924 | 15.00% | 33.00% |
| INSTALLMENT LOANS | 392 | 383 | 9 | 0.59% | 0.59% |
| INT LINES OF CREDIT, NET OF PART | 8,683 | 6,342 | 2,201 | 34.49% | 12.90% |
| OVERDRAFTS | 37 | 21 | 21 | N/A | 0.12% |
| LOANS, net of unearned income | 50,930 | 40,687 | 10,243 | 25.18% | 76.40% |
| LESS: RESERVE FOR LOAN LOSSES | (347) | (358) | 11 | -3.07% | -0.52% |
| LOANS, NET | 50,583 | 40,329 | 10,254 | 25.43% | 75.97% |
| OTHER ASSETS: | | | | | |
| FIXED ASSETS | 1,111 | 841 | 270 | 32.10% | 1.67% |
| OTHER REAL ESTATE OWNED | 875 | 557 | 18 | 3.23% | 0.85% |
| INTEREST RECEIVABLE LOANS AND INV | 631 | 414 | 107 | 25.85% | 0.78% |
| INT'L CUST LIABILITY ON ACCEPTANCES | 631 | 414 | (281) | -45.04% | 0.23% |
| CASH VALUE LIFE INSURANCE | 410 | 399 | 11 | N/A | 0.62% |
| OTHER ASSETS | 659 | 1,085 | (426) | -39.26% | 0.99% |
| TOTAL OTHER ASSETS | 3,429 | 3,710 | (281) | -7.57% | 5.15% |
| TOTAL ASSETS | $ 66,585 | $ 60,903 | $ 5,682 | 9.33% | 100.00% |
| LIABILITIES AND CAPITAL | | | | | |
| DEPOSIT ACCOUNTS: | | | | | |
| NON-INTEREST BEARING DEPOSITS | $ 11,759 | $ 9,558 | $ 2,201 | 23.03% | 17.65% |
| INTEREST BEARING DEPOSITS: | | | | | |
| NOW AND MONEY MARKET ACCOUNTS | 8,453 | 7,036 | 1,417 | 20.14% | 12.70% |
| SAVINGS ACCOUNTS | 2,369 | 2,343 | 26 | 1.11% | 3.55% |
| CERTIFICATES OF DEPOSITS | 35,631 | 33,680 | 1,952 | 5.80% | 53.51% |
| TOTAL INTEREST BEARING DEPOSITS | 46,454 | 43,059 | 3,395 | 7.88% | 69.77% |
| OTHER BORROWED FUNDS | 0 | N/A | 0 | 0.00% | 0.00% |
| TOTAL DEPOSITS | 58,213 | 52,617 | 5,596 | 10.64% | 87.43% |
| INTEREST PAYABLE | 628 | 453 | 75 | 18.56% | 0.79% |
| INT'L BANK LIABILITY ON ACCEPTANCES | 153 | 414 | (261) | -63.04% | 0.23% |
| OTHER LIABILITIES | 173 | 219 | (46) | -21.00% | 0.26% |
| TOTAL LIABILITIES | 59,067 | 53,703 | 5,364 | 9.99% | 88.71% |
| CAPITAL: | | | | | |
| COMMON STOCK ($4.00, 1,187,834 ISSUED) | 4,791 | 4,791 | 0 | 0.00% | 7.20% |
| PREFERRED STOCK ($4.00, 0 Outstanding) | 0 | 0 | 0 | -0.00% | 0.00% |
| CAPITAL SURPLUS | 2,001 | 2,011 | (10) | -0.50% | 3.01% |
| PRIOR YEARS RETAINED EARNINGS | 646 | (12) | 658 | -5483.33% | 0.97% |
| CURRENT YEAR EARNINGS | 88 | 485 | (397) | -81.86% | 0.13% |
| MARKET VALUE ADJUSTMENT (FASB 115) | (10) | (79) | 67 | -49.33% | -0.01% |
| TOTAL CAPITAL | 7,516 | 7,200 | 316 | 4.42% | 11.29% |
| TOTAL LIABILITIES & CAPITAL | $ 66,585 | $ 60,903 | $ 5,682 | 9.33% | 100.00% |

## SECURITY BANK N.A.
### STATEMENT OF OPERATIONS
### (CONSOLIDATED)
### COMPARATIVE
### SEPTEMBER 30, 1997
(in dollars)

| | THIS MONTH 1997 | THIS MONTH 1996 | LAST MONTH 1997 | VARIANCE | THIS YTD 1997 | THIS MONTH YTD 1997 | LAST YTD 1997 | YEAR-TO-DATE 1997 | LAST MONTH YTD 1997 | Y.T.D. 1996 | VARIANCE Y.T.D. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| INTEREST AND FEE INCOME: | | | | | | | | | | | |
| LOANS AND FEE INCOME | $ 408,287 | 316,042 | 273,890 | 567,938 | 2,317,718 | 2,909,431 | 2,749,782 | 172,884 | 154,812 | 154,040 | 18,854 |
| INVESTMENTS | 41,381 | 45,946 | 40,584 | 206,308 | 511,780 | 470,388 | 305,400 | 4,566 | 19,316 | 2,293 | (1,972) |
| FEDERAL FUNDS SOLD | 2,257 | 27,260 | 1,817 | (198,822) | 25,692 | 23,335 | 184,114 | 141,215 | 1,214,010 | 1,058,971 | 212,156 |
| TOTAL INTEREST INCOME | 451,935 | 389,248 | 416,367 | 615,794 | 2,855,190 | 3,403,155 | 3,239,296 | 1,821,488 | 1,439,882 | 1,255,108 | 366,38 |
| INTEREST EXPENSE: | | | | | | | | | | | |
| NOW AND MONEY MARKET | 18,332 | 14,810 | 18,788 | 18,854 | 172,884 | 154,812 | | | | | |
| SAVINGS ACCOUNTS | 4,401 | 4,566 | 4,529 | (1,972) | 41,301 | 36,735 | 51,029 | 1,763,273 | 1,964,188 | 1,984,188 | 249,414 |
| CERTIFICATES OF DEPOSITS | 184,842 | 157,841 | 157,849 | (1,972) | 1,317,011 | 1,214,010 | | | | | |
| BORROWED FUNDS | 31 | 125 | (540) | 38,111 | 38,111 | 38,111 | | 3,000 | 8,000 | | (8,000) |
| TOTAL INTEREST EXPENSE | 181,606 | 160,711 | 178,456 | 366,38 | 1,821,488 | 1,439,882 | 1,255,108 | 1,960,273 | 1,975,198 | 255,414 | |
| NET INT. BEFORE PROVISION | 270,329 | 228,537 | 237,929 | 249,414 | 2,233,602 | 1,963,273 | 1,984,188 | | | | |
| PROVISION FOR LOAN LOSS | 0 | 3,000 | 0 | (8,000) | 3,000 | 3,000 | 8,000 | | | | |
| NET CREDIT MARGIN | 270,329 | 225,537 | 237,929 | 255,414 | 2,230,602 | 1,960,273 | 1,975,198 | | | | |
| OTHER INCOME: | | | | | | | | | | | |
| SERVICE CHG, DEPOSIT ACCT | 20,943 | 15,383 | 19,996 | 19,394 | 184,741 | 145,788 | 147,247 | | | | |
| MORTGAGE COMPANY FEES | 18,198 | 9,348 | 28,712 | 87,727 | 136,169 | 136,188 | 99,724 | | | | |
| SBA SERVICING FEES | 8,853 | 3,044 | 3,582 | (44,354) | 43,068 | 38,211 | 87,410 | | | | |
| INTERNATIONAL DEPT. FEES | 2,815 | 4,636 | 5,413 | 7,541 | 45,279 | 38,383 | 85,720 | | | | |
| NON SALE OF LOANS | 0 | 0 | 0 | 24,500 | 38,273 | 38,273 | 8,944 | | | | |
| O.R.E.O. INCOME AND GAIN | 21,683 | 3,375 | 21,083 | (20,312) | 30,112 | 9,019 | 50,431 | | | | |
| LIFE INSURANCE INCOME | 1,928 | 1,928 | 1,928 | 7,082 | 17,324 | 15,408 | 13,462 | | | | |
| MISCELLANEOUS INCOME | 5,260 | 5,632 | 2,398 | 1,652 | 47,970 | 5,206 | 5,808 | | | | |
| TOTAL OTHER INCOME | 77,270 | 43,344 | 81,652 | 67,600 | 544,434 | 467,084 | 476,934 | | | | |
| OTHER EXPENSE: | | | | | | | | | | | |
| SALARIES AND BENEFITS | 136,005 | 96,197 | 139,163 | 405,177 | 1,229,315 | 1,093,210 | 820,138 | | | | |
| MGT CO SALARIES & COMM | 18,013 | 8,237 | 8,913 | 91,418 | 152,743 | 182,643 | 87,920 | | | | |
| OCCUPANCY EXPENSE | 35,499 | 34,520 | 34,520 | 91,415 | 310,944 | 278,444 | 218,489 | | | | |
| FURNITURE AND EQUIPMENT | 16,423 | 11,360 | (2,962) | 16,467 | 122,873 | 108,550 | 108,286 | | | | |
| INSURANCE AND OTHER TAX | 7,526 | 5,098 | 6,900 | 19,346 | 86,928 | 67,391 | 45,148 | | | | |
| PROFESSIONAL FEES | 38,020 | 13,997 | 33,766 | 47,242 | 247,138 | 209,110 | 119,730 | | | | |
| ADVERTISEMENT | 1,951 | 3,206 | 1,892 | 16,040 | 28,476 | 27,445 | 49,756 | | | | |
| COMMUNICATIONS | 11,166 | 6,618 | 7,296 | 28,043 | 44,251 | 37,545 | 67,545 | | | | |
| STATIONERY AND PRINTING | 1,619 | 5,333 | 5,246 | 28,262 | 18,427 | 56,600 | 30,085 | | | | |
| O.R.E.O. EXPENSE | 4,732 | 5,622 | 4,733 | 14,862 | 23,216 | 19,865 | 14,894 | | | | |
| TOTAL OTHER EXPENSE | 294,151 | 209,407 | 278,664 | 740.26 | 2,588,614 | 2,294,663 | 1,840,553 | | | | |
| INCOME BEFORE TAXES | 53,548 | 59,474 | 40,897 | (417,247) | 186,222 | 132,674 | 603,469 | | | | |
| INCOME TAXES (CREDITS) | 18,625 | 14,000 | 14,875 | (49,000) | 69,000 | 80,375 | 118,000 | | | | |
| INCOME BEFORE SECURITY TR. | 34,923 | 45,474 | 26,022 | (368,247) | 117,222 | 52,299 | 485,469 | | | | |
| SECURITIES GAINS (LOSSES) | 0 | 0 | 0 | | 0 | 0 | 0 | | | | |
| TAX (CREDIT) EFFECT OF TRAN | 0 | 0 | 0 | (47,212) | (47,212) | (47,212) | (47,212) | | | | |
| NET INCOME | $ 34,923 | 45,474 | 25,897 | (397,059) | 88,410 | 53,487 | 485,469 | | | | |

Legal Title of Bank: SECURITY BANK NA
Address: 1818 SOUTH STATE ROAD SEVEN
City, State Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: ||||||||||

Call Date: 9/30/97   ST-BK: 12-0000   FFIEC 034
Page RI-1

## Consolidated Report of Income
## for the period January 1, 1997-September 30, 1997

All Reports of Income schedules are to be reported on a calendar year-to-date basis in thousands of dollars.

### Schedule RI--Income Statement

| Dollar Amounts in Thousands | RIAD | Bil Thou | |
|---|---|---|---|
| 1. Interest income | //////// | | |
| a. Interest and fee income on loans:(1),(2): | //////// | | |
| (1) In domestic offices: | //////// | | |
| The following three items are to be completed only by those banks with less than $25 million in total assets | 4010 | N/A | 1.a.(1) |
| The following four items are to be completed only by those banks with $25 million or more in total assets | //////// | | |
| (a) Loans secured by real estate | 4011 | 2,266 | 1.a.(1)(a) |
| (b) Loans to depository institutions | 4012 | 30 | 1.a.(1)(b) |
| (c) Loans to finance agricultural production and other loans to farmers | 4024 | 0 | 1.a.(1)(c) |
| (d) Commercial and industrial loans | 4012 | 1,414 | 1.a.(1)(d) |
| (e) Loans to individuals | 4011 | 0 | 1.a.(1)(e) |
| (f) All other loans | 4111 | 133 | 1.a.(1)(f) |
| b. Income from lease financing receivables | //////// | | |
| c. Interest income on balances due from depository institutions | //////// | | |
| d. Interest and dividend income on securities: | //////// | | |
| (1) U.S. Treasury securities and U.S. Government agency obligations | 4012 | 151 | 1.d.(1) |
| (2) Securities issued by states and political subdivisions in the U.S. | //////// | | |
| (a) Taxable securities | 4011 | 0 | 1.d.(2)(a) |
| (b) Tax-exempt securities | 4011 | 0 | 1.d.(2)(b) |
| (3) Equity securities (including investments in mutual funds) | 3404 | 181 | 1.d.(3) |
| e. Interest income from trading assets | 4011 | 0 | 1.e. |
| f. Interest income on federal funds sold and securities purchased under agreements to resell | 4020 | 30 | 1.f. |
| g. Total interest income (sum of items 1.a through 1.f) | 4107 | 3,832 | 1.g. |

(1) See instructions for loan classifications used in this schedule.
(2) The $25 million asset size test is generally based on the total assets reported on the June 30, 1996 Report of Condition.
(3) Includes interest income on time certificates of deposit not held for trading.
(4) Report interest income on "term federal funds sold" in Schedule RI, item 1.a, "Interest and fee income on loans."

---

Legal Title of Bank: SECURITY BANK NA
Address: 1818 SOUTH STATE ROAD SEVEN
City, State Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: ||||||||||

Call Date: 9/30/97   ST-BK: 12-0000   FFIEC 034
Page RI-2

### Schedule RI--Continued

| Dollar Amounts in Thousands | | Year-to-date | |
|---|---|---|---|
| | RIAD | Bil Thou | |
| 2. Interest expense: | //////// | | |
| a. Interest on deposits: | //////// | | |
| (1) Interest on deposits in domestic offices: | //////// | | |
| (a) Transaction accounts (NOW accounts, ATS accounts, and telephone and preauthorized transfer accounts) | 4508 | 79 | 2.a.(1) |
| (2) Nontransaction accounts: | //////// | | |
| (a) Money market deposit accounts (MMDAs) | 4509 | 101 | 2.a.(2)(a) |
| (b) Other savings deposits | 4511 | 41 | 2.a.(2)(b) |
| (c) Time deposits of $100,000 or more | 4517 | 161 | 2.a.(2)(c) |
| (d) Time deposits of less than $100,000 | 4518 | 1,331 | 2.a.(2)(d) |
| b. Expense of federal funds purchased and securities sold under agreements to repurchase | //////// | | 2.b. |
| c. Interest on demand notes issued to the U.S. Treasury, trading liabilities, and other borrowed money | //////// | | 2.c. |
| d. Not applicable | //////// | | |
| e. Interest on subordinated notes and debentures | 4188 | 35 | 2.e. |
| f. Total interest expense (sum of items 2.a through 2.e) | 4073 | 1,653 | 2.f. |
| 3. Net interest income (item 1.g minus 2.f) | 4074 | 2,179 | 3. |
| 4. Provisions: | //////// | | |
| a. Provision for loan and lease losses | 4230 | 430 | 4.a. |
| b. Provision for allocated transfer risk | 4243 | 0 | 4.b. |
| 5. Noninterest income: | //////// | | |
| a. Service charges on deposit accounts | 4080 | 167 | 5.a. |
| b. Other noninterest income | 4097 | 348 | 5.b. |
| c. Total noninterest income (sum of items 5.a and 5.b) | 4079 | 515 | 5.c. |
| d. Realized gains (losses) on held-to-maturity securities | 3521 | 0 | 5.d. |
| e. Realized gains (losses) on available-for-sale securities | 3196 | 0 | 5.e. |
| 6. Noninterest expense: | //////// | | |
| a. Salaries and employee benefits | 4135 | | 6.a. |
| b. Expenses of premises and fixed assets (net of rental income) | 4217 | 414 | 6.b. |
| c. Other noninterest expense | 4092 | 788 | 6.c. |
| d. Total noninterest expense (sum of items 6.a through 6.c) | 4093 | 1,822 | 6.d. |
| 7. Income (loss) before income taxes and extraordinary items and other adjustments (item 3 plus or minus items 4.a, 4.b, 5.c, 5.d, 5.e, and 7.d) | 4301 | | 7. |
| 8. Applicable income taxes (on item 7) | 4302 | | 8. |
| 9. Income (loss) before extraordinary items and other adjustments (item 7 minus 8) | 4300 | | 9. |
| 10. Extraordinary items and other adjustments, net of income taxes* | 4320 | | 10. |
| 11. Net income (loss) (sum of items 9 and 10) | 4340 | | 11. |

(1) Report the expense of "term federal funds purchased" in Schedule RI, item 2.c, "Interest on demand notes issued to the U.S. Treasury, trading liabilities, and other borrowed money."
*Describe on Schedule RI-E-Explanations.

Legal Title of Bank: SECURITY BANK NA
Address: 1330 SOUTH STATE ROAD SEVEN
City, State, Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |||||||||||

Call Date: 3/31/99  ST-BK: 11-0000  FFIEC 034
Page RI-3

Schedule RI--Continued

## Schedule RI-B--Charge-offs and Recoveries and Changes in Allowance for Loan and Lease Losses

### Part I. Charge-offs and Recoveries on Loan and Lease Losses

Schedule RI-A--Changes in Equity Capital

Legal Title of Bank: SECURITY BANK NA
Address: 3148 NORTH STATE ROAD SEVEN
City, State, Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: ||||||||||

Call Date: 3/30/99  ST-BK: 33-8668  FFIEC 031  Page 81:

## Schedule RI-B—Continued

3. Extraordinary items and other adjustments and applicable income tax effect
   (from Schedule RI-A, item 11) (itemize and describe all extraordinary items and other adjustments):
   a. (1) [TEXT 4101]
      (2) Applicable income tax effect | [RIAD 4101] |
   b. (1) [TEXT 4102]
      (2) Applicable income tax effect | [RIAD 4102] |
   c. (1) [TEXT 4103]
      (2) Applicable income tax effect

4. Equity capital adjustments (from amended Reports of Income (from Schedule RI-A, item 2)
   (itemize and describe all adjustments):
   a. | [TEXT 4103] |
   b. | [TEXT 4103] |

5. Cumulative effect of changes in accounting principles from prior years
   (from Schedule RI-A, item 9) (itemize and describe all changes in accounting principles):
   a. | [TEXT 4104] | Effect of change in GAAP from previous non-GAAP instructions
   b. | [TEXT 4104] |

6. Corrections of material accounting errors from prior years (from Schedule RI-A, item 10)
   (itemize and describe all corrections):
   a. | [TEXT 4106] |
   b. | [TEXT 4106] |

7. Other transactions with parent holding company (from Schedule RI-A, item 13)
   (itemize and describe all such transactions):
   a. | [TEXT 4106] |
   b. | [TEXT 4106] |

8. Adjustments to allowance for loan and lease losses (from Schedule RI-B, part II, item 9)
   (itemize and describe all adjustments):
   a. | [TEXT 4101] |
   b. | [TEXT 4101] |

9. Other explanations (the space below is provided for the bank to briefly describe, at its option,
   any other significant items affecting the Report of Income):
   No comment [ ] (RIAD 4769)
   Other explanations (please type or print clearly):
   [TEXT 4769]

---

Legal Title of Bank: SECURITY BANK NA
Address: 3148 NORTH STATE ROAD SEVEN
City, State, Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: ||||||||||

Call Date: 3/30/99  ST-BK: 33-8668  FFIEC 031  Page 81-5

## Schedule RI-B—Continued

## Part II. Changes in Allowance for Loan and Lease Losses

Part II is to be reported with the Amended Report of Income.

| | Dollar Amounts in Thousands | RIAD | Bil Mil Thou |
|---|---|---|---|
| 1. Balance originally reported in the December 31, 1998, Reports of Condition and Income | | 3123 | |
| 2. Recoveries (must equal part I, item 4, column A above) | | 4605 | |
| 3. LESS: Charge-offs (must equal part I, item 4, column B above) | | 4615 | |
| 4. Provision for loan and lease losses (must equal Schedule RI, item 4.a) | | 4230 | |
| 5. Adjustments (see instructions for this schedule) | | 4815 | |
| 6. Balance end of current period (sum of items 1 through 5) (must equal Schedule RC, item 4.b) | | 3123 | |

Describe on Schedule RI-E—Explanations.

## Schedule RI-E—Explanations

Schedule RI-E is to be completed each quarter on a calendar year-to-date basis.

Detail all adjustments in Schedule RI-A and RI-B, all extraordinary items and other adjustments in Schedule RI, and all significant items of other noninterest income and other noninterest expense in Schedule RI. (See instructions for details.)

| | Dollar Amounts in Thousands | RIAD | Bil Mil Thou |
|---|---|---|---|
| 1. All other noninterest income (from Schedule RI, item 5.b.(3)) | | 3123 | |
| Report amounts that exceed 10% of Schedule RI, item 5.b.(3): | | | |
| a. Net gains (losses) on other real estate owned | | 5415 | |
| b. Net gains (losses) on sales of loans | | 5416 | |
| c. Net gains (losses) on sales of premises and fixed assets | | 5417 | |
| itemize and describe the three largest other amounts that exceed 10% of Schedule RI, item 5.b.(3): | | | |
| d. | [TEXT 4161] | P.U.D.R. SERVICES INCOME | 4461 | |
| e. | [TEXT 4162] | LATE PAYMENTS INCOME | 4462 | |
| f. | [TEXT 4163] |
| 2. Other noninterest expense (from Schedule RI, item 7.d) | | 4093 | |
| a. Amortization expense of intangible assets | | 4531 | |
| Report amounts that exceed 10% of Schedule RI, item 7.d: | | | |
| b. Net (gains) losses on other real estate owned | | 5419 | |
| c. Net (gains) losses on sales of loans | | 5420 | |
| d. Net (gains) losses on sales of premises and fixed assets | | 5421 | |
| itemize and describe the three largest other amounts that exceed 10% of Schedule RI, item 7.d: | | | |
| e. | [TEXT 4161] | PROFESSIONAL FEES (LEGAL, ETC.) | 4461 | |
| f. | [TEXT 4162] | DATA PROCESSING AND RELATED | 4462 | |
| g. | [TEXT 4163] | TELEPHONE, POSTAGE AND STATIONERY | 4463 | |

# Consolidated Report of Condition for Insured Commercial and State-Chartered Savings Banks for September 30, 1997

All schedules are to be reported in thousands of dollars. Unless otherwise indicated, report the amount outstanding as of the last business day of the quarter.

## Schedule RC--Balance Sheet

C100 <-

| Dollar Amounts in Thousands | | | RCON | Mil Thou | |
|---|---|---|---|---|---|
| **ASSETS** | | | | | |
| 1. Cash and balances due from depository institutions: | | | | ////////////// | |
| a. Noninterest-bearing balances and currency and coin(1),(2) | | | 0081 | 3,768 | 1.a. |
| b. Interest-bearing balances(3) | | | 0071 | 4,428 | 1.b. |
| 2. Securities: | | | | ////////////// | |
| a. Held-to-maturity securities (from Schedule RC-B, column A) | | | 1754 | 0 | 2.a. |
| b. Available-for-sale securities (from Schedule RC-B, column D) | | | 1773 | 3,478 | 2.b. |
| 3. Federal funds sold(4) and securities purchased under agreements to resell | | | 1350 | 987 | 3. |
| 4. Loans and lease financing receivables: | | | | ////////////// | |
| a. Loans and leases, net of unearned income (from Schedule RC-C) | RCON 2122 | 50,930 | | ////////////// | 4.a. |
| b. LESS: Allowance for loan and lease losses | RCON 3123 | 347 | | ////////////// | 4.b. |
| c. LESS: Allocated transfer risk reserve | RCON 3128 | 0 | | ////////////// | 4.c. |
| d. Loans and leases, net of unearned income, allowance, and reserve (item 4.a minus 4.b and 4.c) | | | 2125 | 50,583 | 4.d. |
| 5. Trading assets | | | 3545 | 0 | 5. |
| 6. Premises and fixed assets (including capitalized leases) | | | 2145 | 1,111 | 6. |
| 7. Other real estate owned (from Schedule RC-M) | | | 2150 | 875 | 7. |
| 8. Investments in unconsolidated subsidiaries and associated companies (from Schedule RC-M) | | | 2130 | 0 | 8. |
| 9. Customers' liability to this bank on acceptances outstanding | | | 2155 | 153 | 9. |
| 10. Intangible assets (from Schedule RC-M) | | | 2143 | 65 | 10. |
| 11. Other assets (from Schedule RC-F) | | | 2160 | 1,325 | 11. |
| 12. a. Total assets (sum of items 1 through 11) | | | 2170 | 66,585 | 12.a. |
| b. Losses deferred pursuant to 12 U.S.C. 1823(j) | | | 0306 | 0 | 12.b. |
| c. Total assets and losses deferred pursuant to 12 U.S.C. 1823(j) (sum of items 12.a and 12.b) | | | 0307 | 66,585 | 12.c. |

(1) Includes cash items in process of collection and unposted debits.
(2) The amount reported in this item must be greater than or equal to the sum of Schedule RC-M, items 3.a and 3.b.
(3) Includes time certificates of deposit not held for trading.
(4) Report "term federal funds sold" in Schedule RC, item 4.a, "Loans and leases, net of unearned income," and in Schedule RC-C, part I.

## Schedule RC--Continued

| Dollar Amounts in Thousands | | | RCON | Mil Thou | |
|---|---|---|---|---|---|
| **LIABILITIES** | | | | ////////////// | |
| 13. Deposits: | | | | ////////////// | |
| a. In domestic offices (sum of totals of columns A and C from Schedule RC-E) | | | 2200 | 58,213 | 13.a. |
| (1) Noninterest-bearing(1) | RCON 6631 | 11,759 | | ////////////// | 13.a.(1) |
| (2) Interest-bearing | RCON 6636 | 46,454 | | ////////////// | 13.a.(2) |
| b. In foreign offices, Edge and Agreement subsidiaries, and IBFs | | | | ////////////// | |
| (1) Noninterest-bearing | | | | ////////////// | |
| (2) Interest-bearing | | | | ////////////// | |
| 14. Federal funds purchased(2) and securities sold under agreements to repurchase | | | 2800 | 0 | 14. |
| 15. a. Demand notes issued to the U.S. Treasury | | | 2840 | 0 | 15.a. |
| b. Trading liabilities | | | 3548 | 0 | 15.b. |
| 16. Other borrowed money (includes mortgage indebtedness and obligations under capitalized leases): | | | | ////////////// | |
| a. With a remaining maturity of one year or less | | | 2332 | 0 | 16.a. |
| b. With a remaining maturity of more than one year through three years | | | A547 | 0 | 16.b. |
| c. With a remaining maturity of more than three years | | | A548 | 0 | 16.c. |
| 17. Not applicable | | | | ////////////// | |
| 18. Bank's liability on acceptances executed and outstanding | | | 2920 | 293 | 18. |
| 19. Subordinated notes and debentures(3) | | | 3200 | 0 | 19. |
| 20. Other liabilities (from Schedule RC-G) | | | 2930 | 781 | 20. |
| 21. Total liabilities (sum of items 13 through 20) | | | 2948 | 59,067 | 21. |
| 22. Not applicable | | | | ////////////// | |
| **EQUITY CAPITAL** | | | | ////////////// | |
| 23. Perpetual preferred stock and related surplus | | | 3838 | 0 | 23. |
| 24. Common stock | | | 3230 | 4,791 | 24. |
| 25. Surplus (exclude all surplus related to preferred stock) | | | 3839 | 2,001 | 25. |
| 26. a. Undivided profits and capital reserves | | | 3632 | 734 | 26.a. |
| b. Net unrealized holding gains (losses) on available-for-sale securities | | | 8434 | (8) | 26.b. |
| 27. Cumulative foreign currency translation adjustments | | | | ////////////// | |
| 28. a. Total equity capital (sum of items 23 through 27) | | | 3210 | 7,518 | 28.a. |
| b. Losses deferred pursuant to 12 U.S.C. 1823(j) | | | 0306 | 0 | 28.b. |
| c. Total equity capital and losses deferred pursuant to 12 U.S.C. 1823(j) (sum of items 28.a and 28.b) | | | 3559 | 7,518 | 28.c. |
| 29. Total liabilities, equity capital, and losses deferred pursuant to 12 U.S.C. 1823(j) (sum of items 21 and 28.c) | | | 2257 | 66,585 | 29. |

Memorandum

To be reported only with the March Report of Condition.

1. Indicate in the box at the right the number of the statement below that best describes the most comprehensive level of auditing work performed for the bank by independent external auditors as of any date during 1996 ..... RCON 6724 | Number: N/A | M.1.

1 = Independent audit of the bank conducted in accordance with generally accepted auditing standards by a certified public accounting firm which submits a report on the bank
2 = Independent audit of the bank's parent holding company conducted in accordance with generally accepted auditing standards by a certified public accounting firm which submits a report on the consolidated holding company (but not on the bank separately)
3 = Directors' examination of the bank conducted in accordance with generally accepted auditing standards by a certified public accounting firm (may be required by state chartering authority)
4 = Directors' examination of the bank performed by other external auditors (may be required by state chartering authority)
5 = Review of the bank's financial statements by external auditors
6 = Compilation of the bank's financial statements by external auditors
7 = Other audit procedures (excluding tax preparation work)
8 = No external audit work

(1) Includes total demand deposits and noninterest-bearing time and savings deposits.
(2) Report "term federal funds purchased" in Schedule RC, item 16, "Other borrowed money."
(3) Includes limited-life preferred stock and related surplus.

Legal Title of Bank: SECURITY BANK NA
Address: 1450 SOUTH STATE ROAD SEVEN
City, State Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |2|3|1|5|4|

## Schedule RC-B--Securities

Exclude assets held for trading.

C110 <-

| Dollar Amounts in Thousands | Held-to-maturity (Column A) Amortized Cost RCON | Mil Thou | Held-to-maturity (Column B) Fair Value RCON | Mil Thou | Available-for-sale (Column C) Amortized Cost RCON | Mil Thou | Available-for-sale (Column D) Fair Value(1) RCON | Mil Thou | |
|---|---|---|---|---|---|---|---|---|---|
| 1. U.S. Treasury securities | 0211 | 0 | 0213 | 0 | 1286 | 0 | 1287 | 0 | 1. |
| 2. U.S. Government agency obligations (exclude mortgage-backed securities): | ////////////// | | ////////////// | | ////////////// | | ////////////// | | |
| a. Issued by U.S. Government agencies(2) | 1289 | 0 | 1290 | 0 | 1291 | 0 | 1293 | 0 | 2.a. |
| b. Issued by U.S. Government-sponsored agencies(3) | 1294 | 0 | 1295 | 0 | 1297 | 2,448 | 1298 | 2,435 | 2.b. |
| 3. Securities issued by states and political subdivisions in the U.S.: | ////////////// | | ////////////// | | ////////////// | | ////////////// | | |
| a. General obligations | 1676 | 0 | 1677 | 0 | 1678 | 0 | 1679 | 0 | 3.a. |
| b. Revenue obligations | 1681 | 0 | 1686 | 0 | 1690 | 0 | 1691 | 0 | 3.b. |
| c. Industrial development and similar obligations | 1694 | 0 | 1695 | 0 | 1696 | 0 | 1697 | 0 | 3.c. |
| 4. Mortgage-backed securities (MBS): | ////////////// | | ////////////// | | ////////////// | | ////////////// | | |
| a. Pass-through securities: | ////////////// | | ////////////// | | ////////////// | | ////////////// | | |
| (1) Guaranteed by GNMA | 1698 | 0 | 1699 | 0 | 1701 | 0 | 1702 | 0 | 4.a.(1) |
| (2) Issued by FNMA and FHLMC | 1703 | 0 | 1705 | 0 | 1706 | 109 | 1707 | 109 | 4.a.(2) |
| (3) Other pass-through securities | 1709 | 0 | 1710 | 0 | 1711 | 0 | 1713 | 0 | 4.a.(3) |
| b. Other mortgage-backed securities (include CMOs, REMICs, and stripped MBS): | ////////////// | | ////////////// | | ////////////// | | ////////////// | | |
| (1) Issued or guaranteed by FNMA, FHLMC, or GNMA | 1714 | 0 | 1715 | 0 | 1716 | 0 | 1717 | 0 | 4.b.(1) |
| (2) Collateralized by MBS issued or guaranteed by FNMA, FHLMC, or GNMA | 1718 | 0 | 1719 | 0 | 1731 | 0 | 1732 | 0 | 4.b.(2) |
| (3) All other mortgage-backed securities | 1733 | 0 | 1734 | 0 | 1735 | 0 | 1736 | 0 | 4.b.(3) |
| 5. Other debt securities | 1774 | 0 | 1775 | 0 | 1776 | 50 | 1777 | 50 | 5. |
| 6. Equity securities: | ////////////// | | ////////////// | | ////////////// | | ////////////// | | |
| a. Investments in mutual funds and other equity securities with readily determinable fair values | ////////////// | | ////////////// | | A510 | 0 | A511 | 0 | 6.a. |
| b. All other equity securities(1) (includes Federal Reserve stock) | ////////////// | | ////////////// | | 1752 | 886 | 1753 | 884 | 6.b. |
| 7. Total (sum of items 1 through 6) (total of column A must equal Schedule RC, item 2.a) (total of column D must equal Schedule RC, item 2.b) | 1754 | 0 | 1771 | 0 | 1772 | 3,493 | 1773 | 3,478 | 7. |

(1) Includes equity securities without readily determinable fair values at historical cost in item 6.b, column D.
(2) Includes Small Business Administration "Guaranteed Loan Pool Certificates," U.S. Maritime Administration obligations, and Export-Import Bank participation certificates.
(3) Includes obligations (other than mortgage-backed securities) issued by the Farm Credit System, the Federal Home Loan Bank System, the Federal Home Loan Mortgage Corporation, the Federal National Mortgage Association, the Financing Corporation, Resolution Funding Corporation, the Student Loan Marketing Association, and the Tennessee Valley Authority.

Legal Title of Bank: SECURITY BANK NA
Address: 1450 SOUTH STATE ROAD SEVEN
City, State Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |2|3|1|5|4|

## Schedule RC-B--Continued

Memoranda

C112 <-

| Dollar Amounts in Thousands | RCON | Mil Thou | |
|---|---|---|---|
| 1. Pledged securities(1) | 0416 | 2,435 | M.1. |
| 2. Maturity and repricing data for debt securities(1),(2) (excluding those in nonaccrual status): | ////////////// | | |
| a. Securities issued by the U.S. Treasury, U.S. Government agencies, and states and political subdivisions in the U.S.; other non-mortgage debt securities; and mortgage pass-through securities other than those backed by closed-end first lien 1-4 family residential mortgages with a remaining maturity or repricing frequency of:(3)(4) | ////////////// | | |
| (1) Three months or less | A549 | 248 | M.2.a.(1) |
| (2) Over three months through 12 months | A550 | 58 | M.2.a.(2) |
| (3) Over one year through three years | A551 | 987 | M.2.a.(3) |
| (4) Over three years through five years | A552 | 750 | M.2.a.(4) |
| (5) Over five years through 15 years | A553 | 450 | M.2.a.(5) |
| (6) Over 15 years | A554 | 0 | M.2.a.(6) |
| b. Mortgage pass-through securities backed by closed-end first lien 1-4 family residential mortgages with a remaining maturity or repricing frequency of:(3)(5) | ////////////// | | |
| (1) Three months or less | A555 | 0 | M.2.b.(1) |
| (2) Over three months through 12 months | A556 | 0 | M.2.b.(2) |
| (3) Over one year through three years | A557 | 0 | M.2.b.(3) |
| (4) Over three years through five years | A558 | 0 | M.2.b.(4) |
| (5) Over five years through 15 years | A559 | 109 | M.2.b.(5) |
| (6) Over 15 years | A560 | 0 | M.2.b.(6) |
| c. Other mortgage-backed securities (include CMOs, REMICs, and stripped MBS; exclude mortgage pass-through securities) with an expected average life of:(6) | ////////////// | | |
| (1) Three years or less | A561 | 0 | M.2.c.(1) |
| (2) Over three years | A562 | 0 | M.2.c.(2) |
| d. Fixed rate AND floating rate debt securities with a REMAINING MATURITY of one year or less (included in Memorandum items 2.a through 2.c above) | A248 | 288 | M.2.d. |
| 3.-6. Not applicable | ////////////// | | |
| 7. Amortized cost of held-to-maturity securities sold or transferred to available-for-sale or trading securities during the calendar year-to-date (report the amortized cost at date of sale or transfer) | 1778 | 0 | M.7. |
| 8. High-risk mortgage securities (included in the held-to-maturity and available-for-sale accounts in Schedule RC-B, item 4.b): | ////////////// | | |
| a. Amortized cost | 8780 | 0 | M.8.a. |
| b. Fair value | 8781 | 0 | M.8.b. |
| 9. Structured notes (included in the held-to-maturity and available-for-sale accounts in Schedule RC-B, items 2, 3, and 5): | ////////////// | | |
| a. Amortized cost | 8782 | 750 | M.9.a. |
| b. Fair value | 8783 | 735 | M.9.b. |

(1) Includes held-to-maturity securities at amortized cost and available-for-sale securities at fair value.
(2) Exclude equity securities, e.g., investments in mutual funds, Federal Reserve stock, common stock, and preferred stock.
(3) Report fixed rate debt securities by remaining maturity and floating rate debt securities by repricing frequency.
(4) Sum of Memorandum items 2.a.(1) through 2.a.(6) plus any nonaccrual debt securities in the categories of debt securities reported in Memorandum item 2.a that are included in Schedule RC-N, item 6, column C, must equal Schedule RC-B, sum of items 1, 2, 3, and 5, columns A and D, plus mortgage pass-through securities other than those backed by closed-end first lien 1-4 family residential mortgages included in Schedule RC-B, item 4.a, columns A and D.
(5) Sum of Memorandum items 2.b.(1) through 2.b.(6) plus any nonaccrual mortgage pass-through securities backed by closed-end first lien 1-4 family residential mortgages included in Schedule RC-N, item 6, column C, must equal Schedule RC-B, item 4.a, sum of columns A and D, less the amount of mortgage pass-through securities other than those backed by closed-end first lien 1-4 family residential mortgages included in Schedule RC-B, item 4.a, columns A and D.
(6) Sum of Memorandum items 2.c.(1) and 2.c.(2) plus any nonaccrual "Other mortgage-backed securities" included in Schedule RC-N, item 6, column C, must equal Schedule RC-B, item 4.b, sum of columns A and D.

Legal Title of Bank:  SECURITY BANK SA
Address:               1814 SOUTH STATE ROAD SEVEN
City, State  Zip:      NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |||||||||||

Schedule RC-C--Loans and Leases Financing Receivables

Part I. Loans and Leases

Do not deduct the allowance for loan and lease losses from amounts reported in this schedule.
Report total loans and leases, net of unearned income.  Exclude assets held for trading
and commercial paper.

Legal Title of Bank:  SECURITY BANK SA
Address:               1814 SOUTH STATE ROAD SEVEN
City, State  Zip:      NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |||||||||||

Schedule RC-C--Continued

Part I. Continued

Legal Title of Bank: SECURITY BANK NA
Address: 3149 SOUTH STATE ROAD SEVEN
City, State  Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: ||||||||||

Call Date: 3/30/99  ST-BR: 12-0800   FFIEC 034
                                      Page RC-8

Schedule RC-E--Continued

Memoranda (Continued)

Schedule RC-E--Deposit Liabilities

Legal Title of Bank: SECURITY BANK NA
Address: 1810 SOUTH STATE ROAD SEVEN
City, State  Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |||||||||

Call Date: 3/31/99   ST-BK: 11-0000   FFIEC 31
Page RC-10

## Schedule RC-K--Quarterly Averages(1)

| | Dollar Amounts in Thousands | RCON  Mil Thou | |
|---|---|---|---|
| ASSETS | | | |
| 1. Interest-bearing balances due from depository institutions | | 3381 | 1. |
| 2. U.S. Treasury securities, U.S. Government agency obligations, and other debt securities(1) (excluding securities issued by states and political subdivisions in the U.S.) | | 3649 | 2. |
| 3. Equity securities(1)(1) (includes investments in mutual funds and Federal Reserve stock) | | 3649 | 3. |
| 4. Federal funds sold and securities purchased under agreements to resell | | 3365 | 4. |
| 5. Loans: | | | |
| a. Total loans | | 3360 | 5.a. |
| b. Real estate loans | | 3385 | 5.b. |
| c. Installment loans | | 3386 | 5.c. |
| d. Credit cards and related plans | | 3387 | 5.d. |
| e. Commercial (time and demand) and all other loans | | 3388 | 5.e. |
| 6. Lease financing receivables (net of unearned income) | | 3386 | 6. |
| 7. Total assets(2) | | 3368 | 7. |
| LIABILITIES | | | |
| 8. Interest-bearing transaction accounts (NOW accounts, ATS accounts, and telephone and preauthorized transfer accounts) (exclude demand deposits) | | 3485 | 8. |
| 9. Nontransaction accounts: | | | |
| a. Money market deposit accounts (MMDAs) | | 3486 | 9.a. |
| b. Other savings deposits | | 3487 | 9.b. |
| c. Time deposits of $100,000 or more | | 3345 | 9.c. |
| d. Time deposits of less than $100,000 | | 3469 | 9.d. |
| 10. Federal funds purchased and securities sold under agreements to repurchase | | 3353 | 10. |

### Memorandum

| | Dollar Amounts in Thousands | RCON  Mil Thou | |
|---|---|---|---|
| 1. To be completed by banks with $100 million or more in total assets and with loans to finance agricultural production and other loans to farmers (Schedule RC-C, part I, item 3) exceeding five percent of total loans.(3) Agricultural loans included in items 5.b through 5.e above | | 3339 | M.1. |

(1) For all items, banks have the option of reporting either (1) an average of daily figures for the quarter or (2) an average of weekly figures (i.e., the Wednesday of each week of the quarter). In addition, averages of four month-end figures (the last day of the preceding quarter and of each month of the currently-reported quarter) are allowed for items 2, 3, 5.a through 5.e, 6, 7, and Memorandum item 1.
(1a) See instructions for loan classifications used in this schedule.
(2) The $25 million asset size test are generally based on the total assets and total loans reported on the June 30, 1991 Report of Condition.
(3) Quarterly averages for all debt securities should be based on amortized cost.
(4) Quarterly averages for all equity securities should be based on historical cost.
(5) The quarterly average for total assets should reflect all debt securities (not held for trading) at amortized cost, equity securities with readily determinable fair values at the lower of cost or fair value, and equity securities without readily determinable fair values at historical cost.

---

Legal Title of Bank: SECURITY BANK NA
Address: 1810 SOUTH STATE ROAD SEVEN
City, State  Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |||||||||

Call Date: 3/31/99   ST-BK: 11-0000   FFIEC 31
Page RC-9

## Schedule RC-F--Other Assets

| | Dollar Amounts in Thousands | RCON  Mil Thou | |
|---|---|---|---|
| 1. Income earned, not collected on loans(1) | | 3164 | 1. |
| 2. Net deferred tax assets(2) | | 3164 | 2. |
| 3. Interest-only strips receivable (not in the form of a security)(1) on: | | | |
| a. Mortgage loans | | 3519 | 3.a. |
| b. Other financial assets | | 3520 | 3.b. |
| 4. Other (itemize and describe amounts greater than $25,000 that exceed 25% of this item) | | 3656 | 4. |
| a. | TEXT 3161 | CASH VALUE LIFE INSURANCE | 3161 | 4.a. |
| b. | TEXT 3161 | PREPAID EXPENSES | 3161 | 4.b. |
| c. | TEXT 3161 | | 3161 | 4.c. |
| 5. Total (sum of items 1 through 4) (must equal Schedule RC, item 11) | | 2160 | 5. |

### Memorandum

| | Dollar Amounts in Thousands | RCON  Mil Thou | |
|---|---|---|---|
| 1. Deferred tax assets disallowed for regulatory capital purposes | | 5610 | M.1. |

## Schedule RC-G--Other Liabilities

| | Dollar Amounts in Thousands | RCON  Mil Thou | |
|---|---|---|---|
| 1. a. Interest accrued and unpaid on deposits(1) | | 3645 | 1.a. |
| b. Other expenses accrued and unpaid (includes accrued income taxes payable) | | 3646 | 1.b. |
| 2. Net deferred tax liabilities(2) | | 3049 | 2. |
| 3. Minority interest in consolidated subsidiaries | | 3000 | 3. |
| 4. Other (itemize and describe amounts greater than $25,000 that exceed 25% of this item) | | 2938 | 4. |
| a. | TEXT 3565 | DIVIDENDS TO PARTICIPANTS | 3565 | 4.a. |
| b. | TEXT 3551 | | 3551 | 4.b. |
| c. | TEXT 3551 | | 3551 | 4.c. |
| 5. Total (sum of items 1 through 4) (must equal Schedule RC, item 20) | | 2930 | 5. |

(1) Report income earned, not collected on securities (and on other assets) in item 4 of Schedule RC-F.
(2) See discussion of deferred income taxes in Glossary entry on "income taxes."
(3) Report interest-only strips receivable in the form of a security as available-for-sale securities in Schedule RC, item 2.b, or as trading assets in Schedule RC, item 5, as appropriate.
(4) For savings banks, include "dividends" accrued and unpaid on deposits.

17

18

gal Title of Bank: SECURITY BANK NA
dress: 1450 SOUTH STATE ROAD SEVEN
ty, State Zip: NORTH LAUDERDALE, FL 33068
IC Certificate No.: |2|3|1|5|6|

# chedule RC-L--Off-Balance Sheet Items

ease read carefully the instructions for the preparation of Schedule RC-L. Some of the amounts
ported in Schedule RC-L are regarded as volume indicators and not necessarily as measures of risk.

| Dollar Amounts in Thousands | | RCON | Mil Thou (C160) | |
|---|---|---|---|---|
| . Unused commitments: | | ////////////// | | |
| a. Revolving, open-end lines secured by 1-4 family residential properties, e.g., home equity lines | | 3814 | 0 | 1.a. |
| b. Credit card lines | | 3815 | 0 | 1.b. |
| c. Commercial real estate, construction, and land development: | | ////////////// | | |
| (1) Commitments to fund loans secured by real estate | | 3816 | 1,751 | 1.c.(1) |
| (2) Commitments to fund loans not secured by real estate | | 6550 | 100 | 1.c.(2) |
| d. Securities underwriting | | 3817 | 0 | 1.d. |
| e. Other unused commitments | | 3818 | 5,473 | 1.e. |
| . Financial standby letters of credit(1) | | 3819 | 70 | 2. |
| a. Amount of financial standby letters of credit conveyed to others | RCON 3820 0 | ////////////// | | 2.a. |
| . Performance standby letters of credit(1) | | 3821 | 0 | 3. |
| a. Amount of performance standby letters of credit conveyed to others | RCON 3822 0 | ////////////// | | 3.a. |
| . Commercial and similar letters of credit(1) | | 3411 | 433 | 4. |
| . Not applicable | | ////////////// | | |
| . Participations in acceptances (as described in the instructions) acquired by the reporting (nonaccepting) bank | | 3429 | 0 | 6. |
| . Securities borrowed | | 3432 | 0 | 7. |
| . Securities lent (including customers' securities lent where the customer is indemnified against loss by the reporting bank) | | 3433 | 0 | 8. |
| . Financial assets transferred with recourse that have been treated as sold for Call Report purposes: | | ////////////// | | |
| a. First lien 1-to-4 family residential mortgage loans: | | ////////////// | | |
| (1) Outstanding principal balance of mortgages transferred as of the report date | | A521 | 0 | 9.a.(1) |
| (2) Amount of recourse exposure on these mortgages as of the report date | | A522 | 0 | 9.a.(2) |
| b. Other financial assets (excluding small business obligations reported in item 9.c): | | ////////////// | | |
| (1) Outstanding principal balance of assets transferred as of the report date | | A523 | 0 | 9.b.(1) |
| (2) Amount of recourse exposure on these assets as of the report date | | A524 | 0 | 9.b.(2) |
| c. Small business obligations transferred with recourse under Section 208 of the Riegle Community Development and Regulatory Improvement Act of 1994: | | ////////////// | | |
| (1) Outstanding principal balance of small business obligations transferred as of the report date | | A249 | 0 | 9.c.(1) |
| (2) Amount of retained recourse on these obligations as of the report date | | A250 | 0 | 9.c.(2) |
| . Notional amount of credit derivatives: | | ////////////// | | |
| a. Credit derivatives on which the reporting bank is the guarantor | | A534 | 0 | 10.a. |
| b. Credit derivatives on which the reporting bank is the beneficiary | | A535 | 0 | 10.b. |
| . Spot foreign exchange contracts | | 8765 | 0 | 11. |
| . All other off-balance sheet liabilities (exclude off-balance sheet derivatives) (itemize and describe each component of this item over 25% of Schedule RC, item 28.a, "Total equity capital") | | 3430 | 0 | 12. |
| a. TEXT 3555 | RCON 3555 | ////////////// | | 12.a. |
| b. TEXT 3556 | RCON 3556 | ////////////// | | 12.b. |
| c. TEXT 3557 | RCON 3557 | ////////////// | | 12.c. |
| d. TEXT 3558 | RCON 3558 | ////////////// | | 12.d. |

) Do not report letters of credit as "contra" items in "Other assets" (Schedule RC-F) and "Other liabilities" (Schedule RC-G).

Legal Title of Bank: SECURITY BANK NA
Address: 1450 SOUTH STATE ROAD SEVEN
City, State Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |2|3|1|5|6|

## Schedule RC-L--Continued

| Dollar Amounts in Thousands | | RCON | Mil Thou | |
|---|---|---|---|---|
| 13. All other off-balance sheet assets (exclude off-balance sheet derivatives) (itemize and describe each component of this item over 25% of Schedule RC, item 28.a, "Total equity capital") | | 5591 | 0 | 13. |
| a. TEXT 5592 | RCON 5592 | ////////////// | | 13.a. |
| b. TEXT 5593 | RCON 5593 | ////////////// | | 13.b. |
| c. TEXT 5594 | RCON 5594 | ////////////// | | 13.c. |
| d. TEXT 5595 | RCON 5595 | ////////////// | | 13.d. |

C161

| Dollar Amounts in Thousands — Off-balance Sheet Derivatives Position Indicators | (Column A) Interest Rate Contracts RCON | Mil Thou | (Column B) Foreign Exchange Contracts RCON | Mil Thou | (Column C) Equity Derivative Contracts RCON | Mil Thou | (Column D) Commodity and Other Contracts RCON | Mil Thou | |
|---|---|---|---|---|---|---|---|---|---|
| 14. Gross amounts (e.g., notional amounts) (for each column, sum of items 14.a through 14.e must equal sum of items 15, 16.a, and 16.b): | ////////////// | | ////////////// | | ////////////// | | ////////////// | | |
| a. Futures contracts | 8693 | 0 | 8694 | 0 | 8695 | 0 | 8696 | 0 | 14.a |
| b. Forward contracts | 8697 | 0 | 8698 | 0 | 8699 | 0 | 8700 | 0 | 14.b. |
| c. Exchange-traded option contracts: | ////////////// | | ////////////// | | ////////////// | | ////////////// | | |
| (1) Written options | 8701 | 0 | 8702 | 0 | 8703 | 0 | 8704 | 0 | 14.c.(1) |
| (2) Purchased options | 8705 | 0 | 8706 | 0 | 8707 | 0 | 8708 | 0 | 14.c.(2) |
| d. Over-the-counter option contracts: | ////////////// | | ////////////// | | ////////////// | | ////////////// | | |
| (1) Written options | 8709 | 0 | 8710 | 0 | 8711 | 0 | 8712 | 0 | 14.d.(1) |
| (2) Purchased options | 8713 | 0 | 8714 | 0 | 8715 | 0 | 8716 | 0 | 14.d.(2) |
| e. Swaps | 3450 | 0 | 3826 | 0 | 8719 | 0 | 8720 | 0 | 14.e. |
| 15. Total gross notional amount of derivative contracts held for trading | A126 | 0 | A127 | 0 | 8723 | 0 | 8724 | 0 | 15. |
| 16 Total gross notional amount of derivative contracts held for purposes other than trading: | ////////////// | | ////////////// | | ////////////// | | ////////////// | | |
| a. Contracts marked to market | 8725 | 0 | 8726 | 0 | 8727 | 0 | 8728 | 0 | 16.a. |
| b. Contracts not marked to market | 8729 | 0 | 8730 | 0 | 8731 | 0 | 8732 | 0 | 16.b. |
| c. Interest rate swaps where the bank has agreed to pay a fixed rate | A589 | 0 | ////////////// | | ////////////// | | ////////////// | | 16.c. |

Memoranda

| Dollar Amounts in Thousands | RCON | Mil Thou | |
|---|---|---|---|
| 1.-2. Not applicable | ////////////// | | |
| 3. Unused commitments with an original maturity exceeding one year that are reported in Schedule RC-L, items 1.a through 1.e, above (report only the unused portions of commitments that are fee paid or otherwise legally binding) | 3833 | 1,837 | M.3. |

Legal Title of Bank: SECURITY BANK NA
Address: 1450 SOUTH STATE ROAD SEVEN
City, State Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |2|3|3|1|9|6|

Call Date: 9/30/97 ST-BK: 12-0000 FFIEC 034
Page RC-13

## Schedule RC-M--Memoranda

| Dollar Amounts in Thousands | RCON | Mil Thou | |
|---|---|---|---|
| Extensions of credit by the reporting bank to its executive officers, directors, principal shareholders, and their related interests as of the report date: | | | |
| a. Aggregate amount of all extensions of credit to all executive officers, directors, principal shareholders, and their related interests | 6164 | 71 | 1.a. |
| b. Number of executive officers, directors, and principal shareholders to whom the amount of all extensions of credit by the reporting bank (including extensions of credit to related interests) equals or exceeds the lesser of $500,000 or 5 percent of total capital as defined for this purpose in agency regulations ..... RCON 6165 Number 0 | | | 1.b. |
| Not applicable | | | |
| a. Noninterest-bearing balances due from commercial banks in the U.S. (included in Schedule RC, item 1.a) (exclude balances due from Federal Reserve Banks and cash items in process of collection) | 0050 | 117 | 3.a. |
| b. Currency and coin (included in Schedule RC, item 1.a) | 0080 | 786 | 3.b. |
| Outstanding principal balance of 1-4 family residential mortgage loans serviced for others (include both retained servicing and purchased servicing): | | | |
| a. Mortgages serviced under a GNMA contract | 5500 | 0 | 4.a. |
| b. Mortgages serviced under a FHLMC contract: | | | |
| (1) Serviced with recourse to servicer | 5501 | 0 | 4.b.(1) |
| (2) Serviced without recourse to servicer | 5502 | 0 | 4.b.(2) |
| c. Mortgages serviced under a FNMA contract: | | | |
| (1) Serviced under a regular option contract | 5503 | 0 | 4.c.(1) |
| (2) Serviced under a special option contract | 5504 | 0 | 4.c.(2) |
| d. Mortgages serviced under other servicing contracts | 5505 | 1,224 | 4.d. |
| Not applicable | | | |
| Intangible assets: | | | |
| a. Mortgage servicing assets | 3164 | 0 | 6.a. |
| (1) Estimated fair value of mortgage servicing assets ..... RCON A590 0 | | | 6.a.(1) |
| b. Other identifiable intangible assets: | | | |
| (1) Purchased credit card relationships | 5506 | 0 | 6.b.(1) |
| (2) All other identifiable intangible assets | 5507 | 65 | 6.b.(2) |
| c. Goodwill | 3163 | 0 | 6.c. |
| d. Total (sum of items 6.a, 6.b.(1), 6.b.(2), and 6.c) (must equal Schedule RC, item 10) | 2143 | 65 | 6.d. |
| e. Amount of intangible assets (included in item 6.b.(2) above) that have been grandfathered or are otherwise qualifying for regulatory capital purposes | 6442 | 0 | 6.e. |
| Mandatory convertible debt, net of common or perpetual preferred stock dedicated to redeem the debt | 3295 | 0 | 7. |
| a. Other real estate owned: | | | |
| (1) Direct and indirect investments in real estate ventures | 5372 | 0 | 8.a.(1) |
| (2) All other real estate owned: | | | |
| (a) Construction and land development | 5508 | 260 | 8.a.(2)(a) |
| (b) Farmland | 5509 | 0 | 8.a.(2)(b) |
| (c) 1-4 family residential properties | 5510 | 284 | 8.a.(2)(c) |
| (d) Multifamily (5 or more) residential properties | 5511 | 31 | 8.a.(2)(d) |
| (e) Nonfarm nonresidential properties | 5512 | 0 | 8.a.(2)(e) |
| (3) Total (sum of items 8.a.(1) and 8.a.(2)) (must equal Schedule RC, item 7) | 2150 | 575 | 8.a.(3) |
| b. Investments in unconsolidated subsidiaries and associated companies: | | | |
| (1) Direct and indirect investments in real estate ventures | 5374 | 0 | 8.b.(1) |
| (2) All other investments in unconsolidated subsidiaries and associated companies | 5375 | 0 | 8.b.(2) |
| (3) Total (sum of items 8.b.(1) and 8.b.(2)) (must equal Schedule RC, item 8) | 2130 | 0 | 8.b.(3) |

21

Legal Title of Bank: SECURITY BANK NA
Address: 1450 SOUTH STATE ROAD SEVEN
City, State Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |2|3|3|1|9|6|

Call Date: 9/30/97 ST-BK: 12-0000 FFIEC 034
Page RC-14

## Schedule RC-M--Continued

| Dollar Amounts in Thousands | RCON | Mil Thou | |
|---|---|---|---|
| 9. Noncumulative perpetual preferred stock and related surplus included in Schedule RC, item 23, "Perpetual preferred stock and related surplus" | 3778 | 0 | 9. |
| 10. Mutual fund and annuity sales during the quarter (include proprietary, private label, and third party products): | | | |
| a. Money market funds | 6441 | 0 | 10.a. |
| b. Equity securities funds | 8427 | 0 | 10.b. |
| c. Debt securities funds | 8428 | 0 | 10.c. |
| d. Other mutual funds | 8429 | 0 | 10.d. |
| e. Annuities | 8430 | 0 | 10.e. |
| f. Sales of proprietary mutual funds and annuities (included in items 10.a through 10.e above) | 8784 | 0 | 10.f. |
| 11. Net unamortized realized deferred gains (losses) on off-balance sheet derivative contracts included in assets and liabilities reported in Schedule RC | A525 | 0 | 11. |
| 12. Amount of assets netted against nondeposit liabilities on the balance sheet (Schedule RC) in accordance with generally accepted accounting principles(1) | A526 | 0 | 12. |

| Memorandum — Dollar Amounts in Thousands | RCON | Mil Thou | |
|---|---|---|---|
| 1. Reciprocal holdings of banking organizations' capital instruments (to be completed for the December report only) | 3836 | 0 | M.1. |

(1) Exclude netted on-balance sheet amounts associated with off-balance sheet derivative contracts, deferred tax assets netted against deferred tax liabilities, and assets netted in accounting for pensions.

22

Legal Title of Bank: SECURITY BANK NA
Address: 1100 SOUTH STATE ROAD SEVEN
City, State Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |||||||||

Call Date: 9/30/97   ST-BK: 11-0000   FFIEC 031
Page RC-16

## Schedule RC-O—Other Data for Deposit Insurance and FICO Assessments

Dollar Amounts in Thousands

1. Unposted debits (see instructions)
   a. Actual amount of all unposted debits ...
   OR
   b. Separate amount of unposted debits:
      (1) Actual amount of unposted debits to demand deposits ...
      (2) Actual amount of unposted debits to time and savings deposits(1) ...
2. Unposted credits (see instructions)
   a. Actual amount of all unposted credits ...
   OR
   b. Separate amount of unposted credits:
      (1) Actual amount of unposted credits to demand deposits ...
      (2) Actual amount of unposted credits to time and savings deposits(1) ...
3. Uninvested trust funds (cash) held in bank's own trust department (not included in total deposits) ...
4. Deposits of consolidated subsidiaries (not included in total deposits):
   a. Demand deposits of consolidated subsidiaries ...
   b. Time and savings deposits(1) of consolidated subsidiaries ...
   c. Interest accrued and unpaid on deposits of consolidated subsidiaries ...
5. Not applicable
6. Reserve balances actually passed through to the Federal Reserve by the reporting bank on behalf of its respondent depository institutions that are also reflected as deposit liabilities of the reporting bank ...
   a. Amount reflected in demand deposits (included in Schedule RC-E, item 4 or 5, column B) ...
   b. Amount reflected in time and savings deposits(1) (included in Schedule RC-E, item 4 or 5, column A or C, but not column B) ...
7. Unconditional promises and allotments on time and savings deposits(1),(2) ...
   a. Unamortized premiums ...
   b. Unamortized discounts ...
8. To be completed by banks with "Oakar deposits."
   a. Total deposits purchased or acquired from other FDIC-insured institutions during the quarter ...
      (1) Total deposits purchased or acquired from other FDIC-insured institutions during the quarter ...
      (2) Amount of purchased or acquired deposits reported in item 8.a.(1) above attributable to a secondary fund (i.e. BIF members report deposits attributable to SAIF; SAIF members report deposits attributable to BIF) ...
   b. Total deposits sold or transferred to other FDIC-insured institutions during the quarter ...
9. ...
10. Benefit-responsive "Depository Institution Investment Contracts" (included in total deposits) ...

(1) For FDIC insurance and FICO assessment purposes, "time and savings deposits" consists of nontransaction accounts and all transaction accounts other than demand deposits.
(2) Exclude core deposit intangibles.

---

pl Title of Bank: SECURITY BANK NA
1100 SOUTH STATE ROAD SEVEN
ty, State  Zip: NORTH LAUDERDALE, FL 33068
IC Certificate No.: |||||||||

Call Date: 9/30/97   ST-BK: 11-0000   FFIEC 031
Page RC-15

## Schedule RC-N—Past Due and Nonaccrual Loans, Leases, and Other Assets

e FFIEC regards the information reported in all of
memorandum items 1, in items 1 through 7, column A,
d in memorandum items 2 through 4, column A,
confidential.

| | (Column A) Past due 30 through 89 days and still accruing | (Column B) Past due 90 days or more and still accruing | (Column C) Nonaccrual |
|---|---|---|---|
| Real estate loans | | | |
| Installment loans | | | |
| Credit cards and related plans | | | |
| Commercial and all other loans | | | |
| Lease financing receivables | | | |
| Debt securities and other assets (exclude other real estate owned and other repossessed assets) | | | |

ments reported in items 1 through 6 above which include guaranteed and nonaccrual loans and leases that have already been included in the amounts reported in items 1 through 6.

| | (Column A) | (Column B) | (Column C) |
|---|---|---|---|
| Loans and leases reported in items 1 through 6 above which are guaranteed or insured by the U.S. Government | | | |
| (1) Guaranteed portion of loans and leases included in item 7 above | | | |

Memoranda:

Dollar Amounts in Thousands

1. Restructured loans and leases included in Schedule RC-N...
2. Loans to finance agricultural production and other loans to farmers included in Schedule RC-N, Part 1, Memorandum item 1) ...
3. To be completed by banks with loans with loans to finance agricultural production and other loans to farmers (included in Schedule RC-C, part 1, item 3) ...
4. Agricultural loans included in Schedule RC-N, item 1 ...
5. Loans to finance commercial real estate, construction, and land development activities (not secured by real estate) included in Schedule RC-N, items 2 through 4, above) ...
6. Real estate loans (sum of Memorandum items 4.a through 4.e equal Schedule RC-N, item 1, above)
   a. Construction and land development ...
   b. Secured by farmland ...
   c. Secured by 1-4 family residential properties
      (1) Revolving, open-end loans secured under lines of credit ...
      (2) All other loans secured by 1-4 family residential properties ...
   d. Secured by multifamily (5 or more) residential properties ...
   e. Secured by nonfarm nonresidential properties ...

(1) See instructions for loan classifications used in this schedule.

Legal Title of Bank: SECURITY BANK NA
Address: 1818 SOUTH STATE ROAD SEVEN
City, State   Zip:   NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |||||||||||
Schedule RC-R--Regulatory Capital

Call Date:  3/31/99  ST-BK: 11-8888  FFIEC 031
Page RC-18

This schedule must be completed by all banks as follows: Banks that reported total assets of $1 billion or more in Schedule RC, item 12, for June 30, 1998, must complete items 1 through 9 and Memoranda items 1 and 2. Banks with assets of less than $1 billion must complete items 1 through 3 below or Schedule RC-R in its entirety, depending on their response to item 1 below.

1. Test for determining the extent to which Schedule RC-R must be completed. To be completed only by banks with total assets of less than $1 billion. Indicate in the appropriate box at the right whether the bank has total capital greater than or equal to eight percent of adjusted total assets ...

2. Portion of qualifying limited-life capital instruments (original weighted average maturity of at least five years) that is includible in Tier 2 capital:

a. Subordinated debt and intermediate term preferred stock ...........
b. Other limited-life capital instruments .....................

3. Amounts used in calculating regulatory capital ratios (report amounts determined by the bank for its own internal regulatory capital analyses consistent with applicable capital standards):
a. Tier 1 capital ...........................................
b. Tier 2 capital ...........................................
c. Total risk-based capital .................................
d. Excess allowance for loan and lease losses (amount that exceeds 1.25% of gross risk-weighted assets) ...
e. Net risk-weighted assets (gross risk-weighted assets less excess allowance reported in item 3.d above and all other deductions) ...
f. "Average total assets" (quarterly average reported in Schedule RC-K, item 7, less all amounts deducted from Tier 1 capital)(3) ...

(Column A) Assets Recorded on the Balance Sheet (item1)
(Column B) Credit Equivalent Amount of Off-Balance Sheet (item1)

4. Assets and credit equivalent amounts of off-balance sheet items assigned to the Zero percent risk category:
a. Assets recorded on the balance sheet ...
b. Credit equivalent amount of off-balance sheet items ...

---

Legal Title of Bank: SECURITY BANK NA
Address: 1818 SOUTH STATE ROAD SEVEN
City, State  Zip:  NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |||||||||||
Schedule RC-O--Continued

Call Date:  3/31/99  ST-BK: 11-8888  FFIEC 031
Page RC-17

11. Adjustments to demand deposits reported in Schedule RC-O for certain reciprocal demand balances:
a. Amount by which demand deposits would be reduced if the reporting bank's reciprocal demand balances with the domestic offices of U.S. banks and savings associations and insured branches in Puerto Rico and U.S. territories and possessions that were reported on a gross basis in Schedule RC-O had been reported on a net basis ...
b. Amount by which demand deposits would be increased if the reporting bank's reciprocal demand balances with foreign banks and foreign offices of other U.S. banks (other than those reported in Puerto Rico and U.S. territories and possessions) that were reported on a net basis in Schedule RC-O had been reported on a gross basis ...
c. Amount by which demand deposits would be reduced if cash items in process of collection were included in the calculation of the reporting bank's net reciprocal demand balances with the domestic offices of U.S. banks and savings associations and insured branches in Puerto Rico and U.S. territories and possessions in Schedule RC-O ...

12. Amount of assets netted against nonrelated deposit liabilities on the balance sheet in accordance with generally accepted accounting principles (include amounts related to reciprocal demand balances):
a. Amount of assets netted against demand deposits ...
b. Amount of assets netted against time and savings deposits ...

Memoranda (to be completed each quarter except as noted)

1. Total deposits of the bank (sum of Memorandum items 1.a.(1) and 1.b.(2) must equal Schedule RC, item 13.a):
a. Deposit accounts of $100,000 or less:
(1) Amount of deposit accounts of $100,000 or less ...
(2) Number of deposit accounts of $100,000 or less (to be completed for the June report only) ...
b. Deposit accounts of more than $100,000:
(1) Amount of deposit accounts of more than $100,000 ...
(2) Number of deposit accounts of more than $100,000 ...

2. Estimated amount of uninsured deposits ...
a. An estimate of your bank's uninsured deposits can be determined by multiplying the number of deposit accounts of more than $100,000 reported in Memorandum item 1.b.(2) above by $100,000 and subtracting the result from the amount of deposit accounts of more than $100,000 reported in Memorandum item 1.b.(1) above.

Indicate in the appropriate box at the right whether your bank has a method or procedure for determining a better estimate of uninsured deposits than the estimate described above ...
b. If the box marked YES has been checked, report the estimate of uninsured deposits determined by using your bank's method or procedure ...
3. Has the reporting institution been consolidated with a parent bank or savings association in that parent bank's or parent savings association's Call Report or Thrift Financial Report for this report date? If so, report the legal title and FDIC Certificate Number of the parent bank or parent savings association:

Person to whom questions about the Reports of Condition and Income should be directed:

Call Date: 3/30/99   ST-BK: 13-0000 FFIEC 031   Page RC-19

## Schedule RC-R--Continued

(Column A) Assets Recorded on the Balance Sheet / (Column B) Credit Equiv-alent Amount / Dollar Amounts in Thousands

Assets and credit equivalent amounts of off-balance sheet items assigned to the 20 percent risk category:

a. Assets recorded on the balance sheet ...
b. Credit equivalent amount of off-balance sheet items assigned to the 20 percent risk category ...
...

Memoranda

Current credit exposure across all off-balance sheet derivative contracts covered by the risk-based capital standards ...

## Optional Narrative Statement Concerning the Amounts Reported in the Reports of Condition and Income

at close of business on September 30, 1997

Legal Title of Bank: SECURITY BANK NA
Address: 1108 SOUTH STATE ROAD SEVEN
City, State Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |_|_|_|_|_|_|

City: NORTH LAUDERDALE
State: Florida

The management of the reporting bank may, if it wishes, submit a brief narrative statement on the amounts reported in the Reports of Condition and Income. This optional statement will be made available to the public, along with the publicly available data in the Reports of Condition and Income. However, the information will not be reviewed by the FDIC...

BANK MANAGEMENT STATEMENT (please type or print clearly):

No comment. |X| (RCON 6779)

[TEXT 6980]

Signature of Executive Officer of Bank          Date of Signature



# CONTENTS

| | |
|---|---|
| INDEPENDENT AUDITOR'S REPORT | 1 |
| FINANCIAL STATEMENTS | |
| Consolidated statements of financial condition | 2 |
| Consolidated statements of income | 3 |
| Consolidated statements of stockholders' equity | 4 - 5 |
| Consolidated statements of cash flows | 6 |
| Notes to consolidated financial statements | 7 - 21 |

**SECURITY BANK, N.A. AND SUBSIDIARY**

**CONSOLIDATED FINANCIAL REPORT**

**DECEMBER 31, 1996**



# McGLADREY&PULLEN, LLP
### Certified Public Accountants and Consultants

## INDEPENDENT AUDITOR'S REPORT

To the Board of Directors
Security Bank, N.A.
North Lauderdale, Florida

We have audited the accompanying consolidated statements of financial condition of Security Bank, N.A. and subsidiary as of December 31, 1996 and 1995, and the related consolidated statements of income, stockholders' equity, and cash flows for the years then ended. These financial statements are the responsibility of the Bank's management. Our responsibility is to express an opinion on these financial statements based on our audit.

We conducted our audits in accordance with generally accepted auditing standards. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial condition of Security Bank, N.A. and subsidiary as of December 31, 1996 and 1995, and the results of their operations and their cash flows for the years then ended in conformity with generally accepted accounting principles.

*McGladrey & Pullen, LLP*

Fort Lauderdale, Florida
January 30, 1997

1

---

## SECURITY BANK, N.A. AND SUBSIDIARY

### CONSOLIDATED STATEMENTS OF FINANCIAL CONDITION
#### December 31, 1996 and 1995

| ASSETS | 1996 | 1995 |
|---|---|---|
| Cash and due from banks (Notes 2 and 16) | $ 2,824,020 | $ 2,088,499 |
| Interest-bearing deposits | 4,708,650 | 1,073,940 |
| Federal funds sold (Note 16) | 1,487,000 | 5,202,000 |
| Securities available for sale (Note 3) | 8,754,244 | 3,182,181 |
| Federal Reserve Bank and Federal Home Loan Bank stock, at cost | 389,700 | 382,800 |
| Loans, net (Notes 4, 5, 9, 12 and 16) | 41,720,908 | 35,860,552 |
| Loans held for sale | 185,365 | 731,270 |
| Due from customers on acceptances | 608,199 | 725,930 |
| Bank premises and equipment, net (Note 6) | 1,005,598 | 782,224 |
| Other real estate owned | 620,303 | 793,751 |
| Accrued interest receivable | 533,048 | 402,800 |
| Cash surrender value of life insurance (Note 13) | 403,560 | - |
| Other assets (Note 8) | 693,197 | 417,167 |
| Total assets | $ 64,933,792 | $ 51,243,114 |

| LIABILITIES AND STOCKHOLDERS' EQUITY | 1996 | 1995 |
|---|---|---|
| Liabilities: | | |
| Deposits (Notes 7 and 16): | | |
| Noninterest-bearing demand deposits | $ 9,883,852 | $ 6,788,596 |
| Interest-bearing deposits: | | |
| NOW accounts | 3,532,210 | 2,871,383 |
| Savings accounts | 2,393,190 | 2,374,943 |
| Money market accounts | 8,837,035 | 6,936,042 |
| Time deposits, $100,000 and over | 3,084,527 | 1,427,091 |
| Other time deposits | 28,416,554 | 23,399,204 |
| Total deposits | 56,147,368 | 43,791,259 |
| Acceptances outstanding | 608,199 | 325,930 |
| Other liabilities | 778,600 | 377,469 |
| Total liabilities | 57,534,167 | 44,494,658 |
| Commitments, contingencies and credit risk (Notes 14, 15 and 16) | | |
| Stockholders' equity (Notes 10, 11 and 17): | | |
| Common stock, par value 1996 $4 per share, 1995 $5 per share; authorized 1996 2,000,000 shares, 1995 1,444,988 shares; issued and outstanding 1,197,834 shares | 4,791,336 | 5,989,170 |
| Surplus | 2,000,618 | 812,870 |
| Accumulated earnings (deficit) | 645,619 | (12,288) |
| Unrealized loss on securities available-for-sale, net (Note 3) | (37,948) | (41,296) |
| Total stockholders' equity | 7,399,625 | 6,748,456 |
| Total liabilities and stockholders' equity | $ 64,933,792 | $ 51,243,114 |

See Notes to Consolidated Financial Statements.

2

SECURITY BANK, N.A. AND SUBSIDIARY

CONSOLIDATED STATEMENTS OF INCOME
Years Ended December 31, 1996 and 1995

| | 1996 | 1995 |
|---|---|---|
| Interest income | | |
| Loans and fees on loans | $ 3,724,254 | $ 3,240,307 |
| Investment securities | 327,009 | 252,220 |
| Federal funds sold | 221,013 | 157,586 |
| Interest-bearing deposits | 151,765 | 63,896 |
| | 4,424,041 | 3,714,009 |
| Interest expense | 1,729,907 | 1,346,907 |
| Net interest income | 2,694,134 | 2,367,102 |
| Provision for loan losses (Note 5) | 18,000 | - |
| Net interest income after provision for loan losses | 2,676,134 | 2,367,102 |
| Other income: | | |
| Service charges and fees on deposit accounts | 204,338 | 179,909 |
| Gain on sale of loans | 33,345 | 98,918 |
| Other real estate owned income | 81,718 | 37,198 |
| Other | 388,887 | 166,480 |
| | 708,288 | 482,575 |
| Other expenses: | | |
| Salaries and employee benefits | 1,270,097 | 1,046,566 |
| Occupancy and equipment | 420,569 | 380,737 |
| Other operating expenses (Note 18) | 849,349 | 833,337 |
| | 2,540,015 | 2,260,640 |
| Income before income taxes | 844,407 | 589,037 |
| Provision for income taxes (Note 8): | | |
| Current | 95,586 | 51,711 |
| Deferred | 90,914 | 309 |
| | 186,500 | 52,020 |
| Net income | $ 657,907 | $ 537,017 |

See Notes to Consolidated Financial Statements.

3

---

SECURITY BANK, N.A. AND SUBSIDIARY

CONSOLIDATED STATEMENTS OF STOCKHOLDERS' EQUITY
Years Ended December 31, 1996 and 1995

| | Preferred Stock | | Common Stock | |
|---|---|---|---|---|
| | Shares | Amount | Shares | Amount |
| Balance, December 31, 1994 | 200,000 | $ 1,000,000 | 644,988 | $ 3,224,940 |
| Net Income | - | - | - | - |
| Dividends paid ($0.01 per preferred share) | - | - | - | - |
| Issuance of common stock and conversion of preferred stock (Note 11) | (200,000) | (1,000,000) | 552,846 | 2,764,230 |
| Net change in unrealized loss on securities available for sale (Note 3) | - | - | - | - |
| Balance, December 31, 1995 | - | - | 1,197,834 | 5,989,170 |
| Net income | - | - | - | - |
| Conversion of par value of common stock from $5 to $4 per share | - | - | - | (1,197,834) |
| Cost of issuance | - | - | - | - |
| Net change in unrealized loss on securities available for sale (Note 3) | - | - | - | - |
| Balance, December 31, 1996 | - | $ - | 1,197,834 | $ 4,791,336 |

See Notes to Consolidated Financial Statements.

## SECURITY BANK, N.A. AND SUBSIDIARY

### CONSOLIDATED STATEMENTS OF CASH FLOWS
Years Ended December 31, 1996 and 1995

| | 1996 | 1995 |
|---|---:|---:|
| **Cash Flows From Operating Activities** | | |
| Net income | $ 657,907 | $ 537,017 |
| Adjustments to reconcile net income to net cash provided by operating activities: | | |
| Depreciation and amortization | 112,166 | 100,687 |
| Provision for loan losses | 18,000 | - |
| Loss on disposal of premises and equipment | 3,933 | - |
| (Gain) loss from sales of other real estate owned, net | (36,518) | 5,766 |
| Net originations and sales of loans held for sale | 545,905 | 996,970 |
| Amortization of loan premiums | 11,353 | 22,304 |
| (Accretion) and amortization of bond premiums and discounts, net | 9,169 | (8,585) |
| Net (income) on cash surrender value of life insurance | (8,560) | - |
| Deferred income taxes | 90,914 | - |
| Increase in: | | |
| Accrued interest receivable | (130,248) | (163,240) |
| Other assets | (368,996) | (116,117) |
| Increase in: | | |
| Other liabilities | 401,131 | 189,666 |
| Net cash provided by operating activities | 1,306,156 | 1,564,468 |
| **Cash Flows From Investing Activities** | | |
| Federal funds sold, net | 3,715,000 | (1,762,000) |
| Cash flows from securities (Note 19) | (5,575,832) | (335,374) |
| Loans originated and principal collected on loans, net | (3,016,811) | (6,504,570) |
| Purchase of Federal Reserve and Federal Home Loan bank stock | (6,900) | (226,400) |
| Purchases of loans | (3,875,799) | (1,813,846) |
| Purchases of premises and equipment | (339,473) | (250,472) |
| Purchase of cash surrender value of life insurance | (395,000) | - |
| Proceeds from sale of other real estate owned | 224,094 | 39,234 |
| Advances for investment in other real estate owned | (11,227) | (42,473) |
| Net cash used in investing activities | (9,281,948) | (10,895,901) |
| **Cash Flows From Financing Activities** | | |
| Net increase in deposits | 12,356,109 | 7,678,352 |
| Net proceeds (cost) from issuance of common stock and conversion of preferred stock | (10,086) | 1,589,296 |
| Cash dividends paid on preferred stock | - | (2,500) |
| Net cash provided by financing activities | 12,346,023 | 9,265,148 |
| Net increase (decrease) in cash and due from banks | 4,370,231 | (66,285) |
| Cash and due from banks: | | |
| Beginning | 3,162,439 | 3,228,724 |
| Ending | $ 7,532,670 | $ 3,162,439 |

See Notes to Consolidated Financial Statements (additional cash flow information - Note 19).

6

| Surplus | Accumulated Earnings (Deficit) | Unrealized Loss on Securities Available for Sale, Net | Total |
|---:|---:|---:|---:|
| $ 973,398 | $ (532,399) | $ (76,115) | $ 4,589,824 |
| | 537,017 | | 537,017 |
| | (2,500) | | (2,500) |
| (160,528) | (14,406) | | 1,589,296 |
| | | 34,819 | 34,819 |
| 812,870 | (13,248) | (41,296) | 6,744,456 |
| | 657,907 | | 657,907 |
| 1,197,834 | | | |
| (10,086) | | | (10,086) |
| | | 3,348 | 3,348 |
| $ 3,000,618 | $ 645,619 | $ (37,948) | $ 7,399,625 |

5

SECURITY BANK, N.A. AND SUBSIDIARY

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

### Note 1.   Summary of Significant Accounting Policies

**Description of business:**  Security Bank, N.A. (the "Bank"), provides a full range of banking services to individual and corporate customers through its locations throughout South Florida.  The Bank is subject to competition from other financial institutions and nonfinancial institutions providing financial products. Additionally, the Bank is subject to the regulations of certain regulatory agencies and undergoes periodic examination by those regulatory agencies.

The consolidated financial statements of Security Bank, N.A. and SecurityBanc Mortgage Company have been prepared in conformity with generally accepted accounting principles and conform to predominate practice within the banking industry.

**Basis of consolidation:**  The consolidated financial statements include the accounts of Security Bank, N.A. and its wholly-owned subsidiary, SecurityBanc Mortgage Company.  Significant intercompany accounts and transactions have been eliminated in consolidation.

**Basis of accounting:**  In preparing the consolidated financial statements, the Bank's management is required to make estimates and assumptions which significantly affect the amounts reported in the consolidated financial statements.  Significant estimates which are particularly susceptible to change in a short period of time include the determination of the allowance for loan losses and the fair value of securities.  Actual results could differ from those estimates.

**Presentation of cash flows:**  For purposes of reporting cash flows, cash and due from banks includes cash on hand and amounts due from banks (including cash items in process of clearing) and interest-bearing deposits.  Cash flows from loans to customers, deposits, and federal funds sold are reported net.

The Bank maintains amounts due from banks which at times may exceed federally-insured limits.  The Bank has not experienced any losses in such accounts.

**Investments in debt and marketable equity securities:**  Management determines the appropriate classification of securities at each individual security is acquired.  In addition, the appropriateness of such classification is reassessed at each balance sheet date.  The Bank's classification of debt and marketable equity securities and related accounting policies are as follows:

**Securities held-to-maturity:**  Securities classified as held-to-maturity are those debt securities the Bank has both the intent and ability to hold to maturity regardless of changes in market conditions, liquidity needs, or changes in general economic conditions.  These securities are carried at cost adjusted for amortization of premium and accretion of discount, computed by the interest method over their contractual lives.  The Bank has no securities held to maturity.

SECURITY BANK, N.A. AND SUBSIDIARY

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

### Note 1.   Summary of Significant Accounting Policies (Continued)

**Securities available for sale:**  Securities classified as available-for-sale are those debt securities that the Bank intends to hold for an indefinite period of time but not necessarily to maturity.  Any decision to sell a security classified as available-for-sale would be based on various factors, including significant movements in interest rates, changes in the maturity mix of the Bank's assets and liabilities, liquidity needs, regulatory capital considerations, and other similar factors.  Securities available for sale are carried at fair value. Unrealized gains or losses are reported as increases or decreases in stockholders' equity, net of the related deferred tax effect.  Realized gains or losses, determined on the basis of the cost of specific securities sold, are included in earnings.  The amortization of premiums and accretion of discounts, computed by the interest method over their contractual lives, are recognized in interest income.

**Loans and allowance for loan losses:**  Loans are stated at the amount of unpaid principal, reduced by unearned discounts and fees and an allowance for loan losses, and increased for premiums paid on loans purchased.  Loans held for sale are recorded at the lower of aggregate cost or market until they are sold.

The allowance for loan losses is maintained at a level considered adequate to provide for losses that can be reasonably anticipated.  The allowance is increased by provisions charged to operating expense and reduced by net charge-offs.  The Bank makes continuous credit reviews of specific problem loans, and other factors in determining the adequacy of the allowance balance.  While management uses the best information available to make its evaluation, future adjustments to the allowance may be necessary if there are significant changes in economic conditions.

Effective January 1, 1995, the Bank adopted Financial Accounting Standards Board Statement No. 114, *Accounting by Creditors for Impairment of a Loan*, which requires that impaired loans be measured at the present value of expected future cash flows discounted at the loan's effective interest rate, or as an expedient, at either the loan's observable market price or the fair value of the collateral if the loan is collateral dependent.  A loan is impaired when it is probable the creditor will be unable to collect all contractual principal and interest payments due in accordance with the terms of the loan agreement.

Interest on loans is recognized over the terms of the loans and is calculated using the simple-interest method on principal amounts outstanding.  For impaired loans, accrual of interest is generally stopped when a loan is greater than three months past due.  Interest on these loans is recognized only when actually paid by the borrower if collection of the principal is likely to occur.  Accrual of interest is generally resumed when the customer is current on all principal and interest payments.

Loan origination and commitment fees and certain direct loan origination costs are being deferred, and the net amount is being amortized as an adjustment of the related loan's yield.  The Bank is amortizing these amounts over the contractual lives of the loans adjusted for prepayments.  Commitment fees, which are based upon a percentage of a customer's unused line of credit and fees related to standby letters of credit, are recognized over the commitment periods.  Premiums paid are amortized over the average expected life of the loans adjusted for prepayments.

7

SECURITY BANK, N.A. AND SUBSIDIARY

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

Note 1.   Summary of Significant Accounting Policies (Continued)

Other real estate owned:  Real estate acquired through foreclosure or deed in lieu of foreclosure represents specific assets to which the Company has acquired legal title in satisfaction of indebtedness.  Such real estate is recorded at the property's fair value at the date of foreclosure (cost).  Initial valuation adjustments, if any, are charged against the allowance for loan losses.  Property is evaluated regularly to ensure the recorded amount is supported by its current fair value and valuation allowances to reduce the carrying amount to fair value less estimated cost to dispose are recorded as necessary.  Revenues and expenses related to holding and operating these properties are included in operations.

Bank premises and equipment:  Bank premises and equipment are stated at cost less accumulated depreciation.  Depreciation is computed using accelerated and straight-line methods over the following estimated useful lives:

|  | Years |
| --- | --- |
| Land improvements | 3 - 20 |
| Buildings | 40 |
| Leasehold improvements | 5 - 15 |
| Furniture and equipment | 3 - 10 |

Income taxes:  Deferred taxes are provided on an asset and liability method whereby deferred tax assets are recognized for deductible temporary differences, and operating loss or tax credit carryforwards and deferred tax liabilities are recognized for taxable temporary differences.  Temporary differences are the differences between the amounts of assets and liabilities recorded for income tax and financial reporting purposes.  Deferred tax assets are reduced by a valuation allowance when management determines that it is more likely than not that some portion or all of the deferred tax assets will not be realized.  Deferred tax assets and liabilities are adjusted for the effects of changes in tax laws and rates on the date of enactment.

Off-balance-sheet risk:  The Bank is a party to financial instruments with off-balance-sheet risk.  The Bank is continually assessing its risk for potential losses.

Emerging accounting standards:  The Financial Accounting Standards Board has issued Statement No. 125, Accounting for Transfers and Servicing of Financial Assets and Extinguishment of Liabilities, which becomes effective for certain transactions occurring after December 31, 1996 and for other transactions occurring after December 31, 1997.  The Statement does not permit earlier or retroactive application.  The Statement distinguishes transfers of financial assets that are sales from transfers that are secured borrowings.  A transfer of financial assets in which the transferor surrenders control over those assets is accounted for as a sale to the extent that consideration other than beneficial interests in the transferred assets is received in exchange.  The Statement also establishes standards on the initial recognition and measurement of servicing assets and other retained interests and servicing liabilities, and their subsequent measurement.

9

---

SECURITY BANK, N.A. AND SUBSIDIARY

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

Note 1.   Summary of Significant Accounting Policies (Continued)

The Statement requires that debtors reclassify financial assets pledged as collateral and that secured parties recognize those assets and their obligation to return them in certain circumstances in which the secured party has taken control of those assets.  In addition, the Statement requires that a liability be derecognized only if the debtor is relieved of its obligation through payment to the creditor or by being legally released from being the primary obligor under the liability either judicially or by the creditor.

Management does not believe the application of the Statement to transactions of the Bank that have been typical in the past will materially affect the Bank's financial position and results of operations.

Reclassifications:  Certain reclassifications have been made to the prior financial statements to conform with the current classifications.

Note 2.   Cash and Due From Banks

The Bank is required to maintain reserve balances in cash or on deposit with the Federal Reserve Bank, based on a percentage of deposits.  The reserve requirements were satisfied by the Bank's balance of cash on hand at December 31, 1996 and 1995.

Note 3.   Securities Available For Sale

The amortized cost and fair values of securities available for sale as of December 31, 1996, are summarized as follows:

|  | | 1996 | | |
| --- | --- | --- | --- | --- |
|  | Amortized Cost | Gross Unrealized Gains | Gross Unrealized Losses | Fair Values |
| State of Israel bonds | $ 50,000 | $ - | $ - | $ 50,000 |
| U. S. Government agencies | 8,168,678 | 12,648 | (75,705) | 8,105,621 |
| U. S. Government mortgage-backed securities | 596,772 | 2,573 | (722) | 598,623 |
|  | $ 8,815,450 | $ 15,221 | $ (76,427) | $ 8,754,244 |

10

SECURITY BANK, N.A. AND SUBSIDIARY

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

Note 3. Securities Available-For-Sale (Continued)

The amortized cost and fair values of securities available-for-sale as of December 31, 1995, are summarized as follows:

|  | | 1995 | | |
|---|---|---|---|---|
|  | Amortized Cost | Gross Unrealized Gains | Gross Unrealized Losses | Fair Values |
| State of Israel bonds | $ 50,000 | $ - | $ - | $ 50,000 |
| U.S. Government agencies | 2,479,286 | - | (61,830) | 2,417,456 |
| U.S. Government mortgage-backed securities | 719,191 | - | (4,466) | 714,725 |
|  | $ 3,248,477 | $ - | $ (66,296) | $ 3,182,181 |

The amortized cost and fair values of securities available-for-sale at December 31, 1996, by contractual maturity, are shown below. Mortgage-backed securities are excluded from the maturity categories because borrowers have the right to call or repay obligations with or without call or repayment penalties.

|  | Amortized Cost | Fair Values |
|---|---|---|
| Due after one year through five years | $ 5,951,139 | $ 5,878,933 |
| Due after five years through ten years | 1,792,539 | 1,805,188 |
| Due after ten years | 475,000 | 471,500 |
| U.S. Government mortgage-backed securities | 596,771 | 598,623 |
|  | $ 8,815,450 | $ 8,754,244 |

Investment securities with a carrying amount of approximately $4,122,000 and $1,942,000 at December 31, 1996 and 1995, respectively, were pledged as collateral on public deposits and for other purposes as required or permitted by law.

Changes in the unrealized loss on securities available for sale are as follows:

|  | Years Ended December 31, | |
|---|---|---|
|  | 1996 | 1995 |
| Balance, beginning | $ (41,296) | $ (76,115) |
| Unrealized gain during the year | 5,090 | 56,468 |
| Deferred taxes related to unrealized gain | (1,742) | (21,649) |
| Balance, ending | $ (37,948) | $ (41,296) |

SECURITY BANK, N.A. AND SUBSIDIARY

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

Note 4. Loans

The composition of the net loans is as follows:

|  | December 31, | |
|---|---|---|
|  | 1996 | 1995 |
| Commercial | $ 11,991,183 | $ 9,623,096 |
| Real estate | 27,521,450 | 25,328,637 |
| Consumer | 444,974 | 357,139 |
| Other | 3,114,546 | 940,893 |
|  | 43,072,152 | 36,248,765 |
| Allowance for loan losses | (351,244) | (388,213) |
| Net loans | $ 42,720,908 | $ 35,860,552 |

The Bank's recorded investment in impaired loans was $515,679 and $377,906 at December 31, 1996 and 1995, respectively. The specific SFAS No. 114 allowance associated with these loans was $24,607 and $33,137 at December 31, 1996 and 1995, respectively. The effect of nonaccrual loans was not significant to the results of operations.

Note 5. Allowance for Loan Losses

Changes in the allowance for loan losses are as follows:

|  | Years Ended December 31, | |
|---|---|---|
|  | 1996 | 1995 |
| Balance, beginning | $ 388,213 | $ 387,623 |
| Provision on loans | 18,000 | - |
| Loans charged off | (67,451) | (23,723) |
| Recoveries of amounts charged off | 12,482 | 26,313 |
| Balance, ending | $ 351,244 | $ 388,213 |

SECURITY BANK, N.A. AND SUBSIDIARY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

Note 6.   Bank Premises and Equipment

The major classes of bank premises and equipment and the total accumulated depreciation are as follows:

|  | December 31, | |
|---|---|---|
|  | 1996 | 1995 |
| Land and land improvements | $ 145,924 | $ 169,638 |
| Buildings | 416,433 | 412,447 |
| Leasehold improvements | 338,920 | 338,920 |
| Furniture and equipment | 773,558 | 813,507 |
| Construction in progress | 236,469 | - |
|  | 1,911,304 | 1,734,512 |
| Less accumulated depreciation and amortization | 905,706 | 952,288 |
|  | $ 1,005,598 | $ 782,224 |

Note 7.   Deposits

At December 31, 1996, the scheduled maturities of time deposits are as follows:

| Years Ending December 31, | Amount |
|---|---|
| 1997 | $ 30,875,822 |
| 1998 | 221,922 |
| 1999 | 191,600 |
| 2000 | 191,600 |
| 2001 | 20,137 |
|  | $ 31,501,081 |

SECURITY BANK, N.A. AND SUBSIDIARY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

Note 8.   Income Taxes

The cumulative tax effects of the primary temporary differences are shown in the following table. The resulting net deferred tax assets are included in other assets in the accompanying consolidated balance sheets:

|  | December 31, | |
|---|---|---|
|  | 1996 | 1995 |
| Deferred tax assets: | | |
| Unrealized loss on securities available-for-sale | $ 23,258 | $ 25,000 |
| Loan loss allowances | 46,000 | 39,412 |
| Loss carryforwards | 306,000 | 391,000 |
| Total deferred tax assets | 375,258 | 455,412 |
| Deferred tax liabilities: | | |
| Premises and equipment | (84,000) | (87,000) |
| Accrual to cash conversion for income tax purposes | (180,000) | (70,000) |
| Mortgage servicing rights | (25,000) | - |
| Other | (15,812) | (25,000) |
| Total deferred tax liabilities | (304,812) | (182,000) |
| Valuation allowance for deferred tax asset | - | (110,000) |
| Net deferred tax assets | $ 70,446 | $ 163,412 |

The provision for income tax differs from the amount of income tax determined by applying the U. S. federal income tax rate to pretax income as follows:

|  | 1996 | | 1995 | |
|---|---|---|---|---|
|  | Amount | Percent | Amount | Percent |
| Computed "expected" federal tax expense | $ 287,099 | 34.0% | $ 199,500 | 34.0% |
| Increase (decrease) in income taxes resulting from: | | | | |
| State income taxes, net of federal tax benefit | 30,652 | 3.6 | 21,000 | 3.6 |
| Changes in valuation allowance | (110,000) | (13.0) | (126,900) | (21.5) |
| Other | (21,251) | (2.5) | (41,980) | (7.2) |
| Provision for income taxes | $ 186,500 | 22.1% | $ 52,020 | 8.9% |

SECURITY BANK, N.A. AND SUBSIDIARY

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

### Note 8. Income Taxes (Continued)

During the years ended December 31, 1996 and 1995, the Bank reduced its valuation allowance by $110,000 and $126,900, respectively, as a result of utilization of operating loss carryforwards and timing differences. Realization of deferred tax assets is dependent upon sufficient future taxable income in future periods.

The Bank has available federal net operating loss carryforwards approximating the following at December 31, 1996:

| Expiring December 31, | Net Operating Losses |
|---|---|
| 2002 | $ 104,000 |
| 2003 | 364,000 |
| 2004 | 275,000 |
| 2005 | 60,000 |
| 2006 | 11,000 |
| 2007 | 1,000 |
| | $ 815,000 |

### Note 9.  Lines of Credit

The Bank has secured lines of credit with two banks totaling $4,700,000. Under the agreement, the Bank has to pledge residential first mortgage loans to secure any future advances. There were no borrowings under these agreements as of or for the years ended December 31, 1996 and 1995. In addition, the Bank has $4,600,000 available through unsecured federal funds lines with four other banks.

### Note 10.  Stock Options

Under the provisions of an employment agreement with an officer of the Bank, the Bank has agreed to grant options for the purchase of 20,000 shares of common stock to the officer. The exercise price is equal to 1.2 times the book value of the stock at the date of grant and the options are exercisable for three years from the date of grant or expire upon termination or resignation of the officer.

15

SECURITY BANK, N.A. AND SUBSIDIARY

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

### Note 11.  Stock Purchase and Sale Agreement

The Bank entered into a stock purchase and sale agreement with a third-party (purchaser) to acquire up to 51 percent of the Bank's common stock. In accordance with the initial agreement, the purchaser acquired 58,049 shares of previously issued common stock in 1993 and 200,000 shares of preferred stock from the Bank in 1994. The purchaser filed a notice of change of control with the appropriate regulatory agency to acquire control of the Bank. During 1995 the application was approved and the purchaser acquired an additional 352,846 shares of common stock from the Bank. Simultaneously, the Bank received regulatory approval to convert the preferred stock to common stock.

As part of the original signed agreement, the purchaser has represented that (1) the securities are being acquired for investment and not for distribution, (2) the securities will not be sold within two years after the date the securities are fully paid for, and (3) the Bank has no obligation to exchange the securities for smaller denominations during the investment period.

The purchaser has agreed that between the second and third year following September 26, 1995, (the closing date) the purchaser shall offer to acquire for cash the Bank's issued and outstanding common stock for 1.75 times stockholders' equity. In the event the purchaser does not offer to acquire the common stock during the time period and in the amount described, the remaining holders of common stock may offer to purchase the 610,895 shares acquired under the stock purchase and sale agreement, from the purchaser for 1.75 times stockholder's equity. If such offer is made within 30 days following September 26, 1998, the purchaser shall be obligated to sell such stock to the officers.

### Note 12.  Related-Party Transactions

Some of the directors of the Bank are also owners or executive officers in other business organizations. The Bank has made loans to these individuals and related companies, as well as to officers of the Bank which, in the opinion of management, are on the same terms as comparable transactions with others. Aggregate loans and commitments to these related parties totaled $132,560 and $97,713 at December 31, 1996 and 1995, respectively.

### Note 13.  Salary Continuation Agreements

During 1996 the Bank entered into salary continuation agreements with two of its officers. The agreements require the Bank to pay the officers additional benefits commencing at age 65, or upon a change of control of the Bank, as defined in the agreements. If an officer dies while in active service of the Bank, the benefits are payable to the officer's beneficiary. Reduced benefits are payable to the officers upon termination of employment prior to age 65 or because of disability. The present value of the estimated liability under the agreement is being accrued ratably over the remaining years of employment to the date the officers are first eligible for full benefits. Expenses accrued through December 31, 1996 is in the amount of $26,300 are included in other liabilities.

The Bank has acquired life insurance policies with an aggregate face value of $945,000 to fund the payment of benefits under the agreements discussed above.

16

SECURITY BANK, N.A. AND SUBSIDIARY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

Note 14. Leases

The Bank leases its branch facilities under noncancelable operating lease agreements. The Bank prepaid the entire amounts due for 1997 on four of the leases to take advantage of available discounts.

Future minimum rental payments required under noncancelable operating leases were as follows:

| Years Ending December 31, | Operating Leases |
|---|---|
| 1997 | $ 90,411 |
| 1998 | 214,264 |
| 1999 | 193,351 |
| 2000 | 164,090 |
| 2001 | 159,668 |
| Thereafter | 78,843 |
| | $ 900,627 |

Total rent expense recorded by the Bank for the years ended December 31, 1996 and 1995, was $151,828 and $125,711, respectively.

Note 15.  Financial Instruments With Off-Balance-Sheet Risk

The Bank is a party to financial instruments with off-balance-sheet risk in the normal course of business, to meet the financing needs of its customers and to reduce its own exposure to fluctuations in interest rates. These financial instruments include commitments to extend credit and standby letters of credit. These instruments involve, to varying degrees, elements of credit and interest rate risk in excess of the amounts recognized on the balance sheet.  The contractual amounts of those instruments reflect the extent of involvement the Bank has in particular classes of financial instruments.

The Bank's exposure to credit loss in the event of nonperformance by the counterparties to the financial instruments for commitments to extend credit and letters of credit is represented by the contractual amounts of those instruments.  The Bank uses the same credit policies in making commitments and conditional obligations as it does for on-balance-sheet instruments.

These commitments were as follows:

| | December 31, | |
|---|---|---|
| | 1996 | 1995 |
| Commitments to extend credit | $ 4,635,411 | $ 4,259,492 |
| Commercial letters of credit | 731,752 | 170,956 |
| Standby letters of credit | 549,859 | 14,000 |
| | $ 5,916,022 | $ 4,444,448 |

17

SECURITY BANK, N.A. AND SUBSIDIARY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

Note 15.  Financial Instruments With Off-Balance-Sheet Risk (Continued)

Commitments to extend credit:  Commitments to extend credit are commitments to lend to a customer as long as there is no violation of any condition established in the contract.  Commitments generally have fixed expiration dates or other termination clauses and may require payment of a fee.  Since many of the commitments are expected to expire without being drawn upon, the total commitment amounts do not necessarily represent future cash requirements.  The Bank evaluates each customer's creditworthiness on a case-by-case basis.  The amount of collateral obtained if deemed necessary by the Bank upon extension of credit is based on management's credit evaluation of the counterparty.  Collateral held varies, but may include accounts receivable, inventory, property, plant and equipment, and residential and commercial real estate.

Commercial letters of credit:  A commercial letter of credit are an instrument containing the commitment of the Bank that it will honor drawings under and in full compliance with the terms of the letter of credit. Letters of credit are usually drawn on the presentation of certain required documents, such as bills of lading.  Essentially letters of credit are used to facilitate the purchase of merchandise by the Bank's customers by substituting the credit standing of the Bank for that of the Bank's customer.  Commercial letter of credit contracts are generally for a short commitment period and are collateralized by merchandise.

Standby letters of credit:  Standby letters of credit are conditional commitments issued by the Bank to guarantee the performance of a customer to a third party.  These guarantees are primarily issued to support public and private borrowing arrangement, including commercial paper, construction bonding, and similar transactions.  The credit risk involved in issuing letters of credit is essentially the same as that involved in extending loans to customers.  The collateral varies but may include accounts receivable, inventory, property, plant and equipment, and residential and commercial real estate.

Note 16.  Concentrations of Risk

Most of the Bank's business activity is with customers located within its primary market area, which generally includes Southeast Florida.  Approximately 64 percent of the Bank's loan portfolio (see Note 4) is concentrated in loans related to real estate.  A substantial portion of its debtors' abilities to honor their contracts is dependent upon the local economy.  The economy of the Bank's primary market area is not heavily dependent on any individual economic sector.  At December 31, 1996, the Bank has no significant concentrations of credit risk with any individual counterparty to originate loans.

Concentration by institution:  The Bank has a substantial concentration of funds as of deposit December 31, 1996 and four banks as of December 31, 1995.  Such concentrations consisting of deposit accounts and federal funds sold totaled approximately $1,632,000 and $5,663,000, at December 31, 1996 and 1995, respectively.

Concentrations by depositor:  The Bank has nine depositors with approximately $22,024,000 in deposits as of December 31, 1996.  This concentration represents approximately 39 percent of the Bank's total deposits.  Eight of those depositors, with total deposits of approximately $16,500,000, are individuals or entities who are not residents of the United States.

18

SECURITY BANK, N.A. AND SUBSIDIARY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

Note 16.  Concentrations of Credit Risk (Continued)

The total outstanding commercial letters of credit, loans and discounted bankers acceptances to banks in foreign countries were as follows:

| | December 31, | |
| --- | --- | --- |
| | 1996 | 1995 |
| Argentina | $ 678,000 | $ 1,082,000 |
| Brazil | 5,949,000 | 4,000,000 |
| Colombia | - | 112,000 |
| Ecuador | 1,000,000 | 1,190,000 |
| El Salvador | 750,000 | - |
| Mexico | 121,000 | - |
| Peru | 2,350,000 | 947,000 |
| | $ 10,848,000 | $ 7,331,000 |

Note 17.  Restrictions on Retained Earnings and Regulatory Matters

The Bank is subject to certain restrictions on the amount of dividends that may be declared without prior regulatory approval. At December 31, 1996, approximately $650,000 of retained earnings were available for dividend declaration without regulatory approval.

The Bank is subject to various regulatory capital requirements administered by the federal banking agencies. Failure to meet minimum capital requirements can initiate certain mandatory - and possibly additional discretionary - actions by regulators that, if undertaken, could have a direct material effect on the Bank's financial statements. Under capital adequacy guidelines and the regulatory framework for prompt corrective action, the Bank must meet specific capital guidelines that involve quantitative measures of the Bank's assets, liabilities, and certain off-balance-sheet items as calculated under regulatory accounting practices. The Bank's capital amounts and classification are also subject to qualitative judgments by the regulators about components, risk weightings, and other factors.

Quantitative measures established by regulations to ensure capital adequacy require the Bank to maintain minimum amounts and ratios (set forth in the table below) of total and Tier I capital (as defined in the regulations) to risk-weighted assets (as defined), and of Tier I capital (as defined) to average assets (as defined). Management believes the Bank meets all capital adequacy requirements to which it is subject as of December 31, 1996.

As of December 31, 1996, the most recent notification from the Office of Comptroller of Currency categorized the Bank as well capitalized under the regulatory framework for prompt corrective action. To be categorized as well capitalized the Bank must maintain minimum total risk-based, Tier I risk-based, and Tier I leverage ratios as set forth in the table below. There are no conditions or events since that notification that management believes have changed the Bank's category.

19

---

SECURITY BANK, N.A. AND SUBSIDIARY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

Note 17.  Restrictions on Retained Earnings and Regulatory Matters  (Continued)

The Bank's actual capital amounts and ratios are also presented in the table.

| | Actual | | For Capital Adequacy Purposes | | To Be Well Capitalized Under Prompt Corrective Action Provisions | |
| --- | --- | --- | --- | --- | --- | --- |
| As of December 31, 1996: | | | | | | |
| Total Capital (to Risk-Weighted Assets) | $ 7,788,817 | 18.8% | $ 3,306,800 | 8.0% | $ 4,133,500 | 10.0% |
| Tier I Capital (to Risk-Weighted Assets) | $ 7,637,573 | 18.0% | $ 1,653,400 | 4.0% | $ 2,480,100 | 6.0% |
| Tier I Capital (to Average Assets) | $ 7,637,573 | 11.4% | $ 2,699,520 | 4.0% | $ 3,361,900 | 5.0% |
| As of December 31, 1995: | | | | | | |
| Total Capital (to Risk-Weighted Assets) | $ 7,177,965 | 22.1% | $ 2,602,160 | 8.0% | $ 3,252,700 | 10.0% |
| Tier I Capital (to Risk-Weighted Assets) | $ 6,789,752 | 20.9% | $ 1,301,080 | 4.0% | $ 1,951,620 | 6.0% |
| Tier I Capital (to Average Assets) | $ 6,789,752 | 13.2% | $ 2,065,240 | 4.0% | $ 2,581,550 | 5.0% |

Note 18.  Other Operating Expenses

A summary of other operating expenses is as follows:

| | Years Ended December 31, | |
| --- | --- | --- |
| | 1996 | 1995 |
| Data processing | $ 176,309 | $ 154,921 |
| Other real estate owned | 41,033 | 56,125 |
| Professional fees | 181,297 | 228,658 |
| Examinations and assessments | 26,935 | 60,969 |
| Telephone and postage | 87,893 | 87,134 |
| Insurance and taxes | 59,791 | 52,363 |
| Other | 276,091 | 193,167 |
| | $ 849,349 | $ 833,337 |

20

## SECURITY BANK, N.A. AND SUBSIDIARY

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

**Note 19. Additional Cash Flow Information**

| | Years Ended December 31, | |
| --- | --- | --- |
| | 1996 | 1995 |
| **Cash Flows From Securities** | | |
| Available-for-sale securities: | | |
| Maturities, calls and paydowns | $ 964,992 | $ 1,788,708 |
| Purchases | (6,540,824) | (2,124,082) |
| | $ (5,575,833) | $ (335,374) |
| **Supplemental Disclosures of Cash Flow Information** | | |
| Cash payments for: | | |
| Interest | $ 1,666,762 | $ 1,208,844 |
| Income taxes | 66,250 | 38,452 |
| **Supplemental Schedule of Noncash Investing and Financing Activities** | | |
| Loans made to facilitate the sale of other real estate owned | 249,624 | 37,199 |
| Other real estate acquired in settlement of loans | 252,535 | 71,772 |
| Conversion of preferred stock to common stock (Note 11) | 985,594 | |

21

---

Federal Financial Institutions Examination Council

## Consolidated Reports of Condition and Income for A Bank With Domestic Offices Only and Total Assets of Less Than $100 Million—FFIEC 034

**(911231)**

Report at the close of business December 31, 1996

This report is required by law; [12 U.S.C. §1817 and 12 U.S.C. §1817 (National bank)].

NOTE: The Reports of Condition and Income must be signed by an authorized officer and the Reports of Condition must be attested to by not less than two of the Report of Condition must be attested to by not less than two directors (trustees) for State nonmember banks and three directors for State member and National banks.

I, _____ Luis Dominich _____

of the named bank do hereby declare that these Reports of Condition and Income (including the supporting schedules) have been prepared in conformance with the instructions issued by the appropriate Federal regulatory authority and are true to the best of my knowledge and belief.

January 18, 1997

For Banks Submitting Hard Copy Report:

State Member Banks: Return the original and one copy to the appropriate Federal Reserve District.

State Nonmember Banks: Return the original only in the special address envelope provided. If express mail is used in lieu of the special return envelope, return the original only to the FDIC, c/o Quality Data Systems, 2127 Espey Court, Suite 204, Crofton, MD 21114.

This report form is to be filed by banks with domestic offices only. Banks with branches and consolidated subsidiaries in U.S. territories and possessions, Edge or Agreement subsidiaries, foreign branches, consolidated foreign subsidiaries, or International Banking Facilities must file the FFIEC 031.

The Reports of Condition and Income are to be prepared in accordance with Federal regulatory authority instructions. NOTE: These instructions may in some cases differ from generally accepted accounting principles.

We, the undersigned directors (trustees), attest to the correctness of this Report of Condition (including the supporting schedules) and declare that it has been examined by us and to the best of our knowledge and belief has been prepared in conformance with the instructions issued by the appropriate Federal authority and is true and correct.

National Banks: Return the original only in the special return address envelope provided. If express mail is used in lieu of the special return envelope, return the original only to the FDIC, c/o Quality Data Systems, 2127 Espey Court, Suite 204, Crofton, MD 21114.

FDIC Certificate Number ___2 2 1 ___

CALL NO. 195          3:     12-31-96
STREET 12-1255 GOODO STCERTI 12-2315
SECURITY NATIONAL ASSOCIATION
NORTH LAUDERDALE, FL 33068

Consolidated Reports of C...k...ition and Income for
A Bank With Domestic Offi...s Only and Total Assets Less Than $100 Million

**2**

**Table of Contents**

| | |
|---|---|
| Signature Page | Cover |
| Report of Income | |
| Schedule RI—Income Statemen... | RI-1, 2, 3 |
| Schedule RI-A—Changes in Eq... | RI-3 |
| Schedule RI-B—Charge-offs and Changes in Allowance for Lo... Leases | RI-4, 5 |
| Schedule RI-C—Applicable Inco... Taxes by ... | |
| Schedule RI-E—Explanations ... | RI-5, 6 |

| **Report of Condition** | |
|---|---|
| Schedule RC—Balance Sheet | RC-1, 2 |
| Schedule RC-B—Securities | RC-3, 4 |
| Schedule RC-C—Loans and Lease Financing Receivables: | |
| Part I. Loans and Leases | RC-5, 6 |
| Part II. Loans to Small Businesses and Small Farms (included in the forms for June 30 only) | RC-6a, 6b |
| Schedule RC-E—Deposit Liabilities | RC-7, 8 |
| Schedule RC-F—Other Assets | RC-9 |
| Schedule RC-G—Other Liabilities | RC-9 |
| Schedule RC-K—Quarterly Averages | RC-10 |
| Schedule RC-L—Off-Balance Sheet Items | RC-11, 12 |
| Schedule RC-M—Memoranda | RC-13, 14 |
| Schedule RC-N—Past Due and Nonaccrual Loans, Leases, and Other Assets | RC-15 |
| Schedule RC-O—Other Data for Deposit Insurance Assessments | RC-16, 17 |
| Schedule RC-R—Regulatory Capital | RC-18, 19 |
| Optional Narrative Statement Concerning the Amounts Reported in the Reports of Condition and Income | RC-20 |
| Special Report (to be completed by all banks) | |
| Schedule RC-J—Repricing Opportunities (sent only to and to be completed only by savings banks) | |

Consolidated Report of ... 2 of ...
for the period January 1, 1996–December 31, 1996

Schedule RI—Income Stat...ment

## Schedule RI--Continued

## Schedule RI-A--Changes in Equity Capital

## Schedule RI-E--Continued

## Schedule RI-B--Charge-o  s and Recoveries and Changes in Allowance for Loan    d Lease Losses

### Part I. Charge-offs and   ecoveries on Loans and Lease Losses(1)

## Schedule RI-B--Continue

### Part II. Changes in All  nce for Loan and Lease Losses

## Schedule RI-C--Applicab : Income Taxes by Taxing Authority

## Schedule RI-E--Explanat :

Legal Title of Bank: SECURITY BANK SA
Address:       1000 SOUTH STATE 1
City, State, Zip:   NORTH LAUDERDALE,
FDIC Certificate No.: 11111111111

Call Date: 12/31/95   ST-BK: 12-0000   FFIEC 034
Page RC-j

Consolidated Report of Condition for Insured Commercial
and State-Chartered Savings Banks for December 31, 1995

All schedules are to be reported in thousands of dollars. Unless otherwise indicated,
report the amount outstanding as of the last business day of the quarter.

Schedule RC--Balance Sheet

| | Dollar Amounts in Thousands | RCON | Bil | Mil | Thou |
|---|---|---|---|---|---|
| ASSETS | | | | | |
| 1. Cash and balances due from depository | institutions: | | | | |
| a. Noninterest-bearing balances and currency and coin (1) | | 0081 | | 9,161 | 1.a. |
| b. Interest-bearing balances (2) | | 0071 | | 6,789 | 1.b. |
| 2. Securities: | | | | | |
| a. Held-to-maturity securities (from Schedule RC-B, column A) | | 1754 | | 0 | 2.a. |
| b. Available-for-sale securities (from Schedule RC-B, column D) | | 1773 | | 9,164 | 2.b. |
| 3. Federal funds sold and securities purchased under agreements to resell | | 1350 | | 5,467 | 3. |
| a. Federal funds sold | | 0276 | | | 3.a. |
| b. Securities purchased under agreements to resell | | 0277 | | 0 | 3.b. |
| 4. Loans and lease financing receivables: | | | | | |
| a. Loans and leases, net of unearned income (from Schedule RC-C) | RCON 2122 | 63,272 | | | 4.a. |
| b. LESS: Allowance for loan and lease losses | RCON 3123 | 379 | | | 4.b. |
| c. LESS: Allocated transfer risk reserve | RCON 3128 | 0 | | | 4.c. |
| d. Loans and leases, net of unearned income, allowance, and reserve (item 4.a minus 4.b and 4.c) | | 2125 | | 62,893 | 4.d. |
| 5. Trading assets | | 3545 | | 0 | 5. |
| 6. Premises and fixed assets (including capitalized leases) | | 2145 | | 1,441 | 6. |
| 7. Other real estate owned (from Schedule RC-M) | | 2150 | | 839 | 7. |
| 8. Investments in unconsolidated subsidiaries and associated companies (from Schedule RC-M) | | 2130 | | 0 | 8. |
| 9. Customers' liability to this bank on acceptances outstanding | | 2155 | | 0 | 9. |
| 10. Intangible assets (from Schedule RC-M) | | 2143 | | 0 | 10. |
| 11. Other assets (from Schedule RC-F) | | 2160 | | 3,403 | 11. |
| 12. Total assets (sum of items 1 through 11) | | 2170 | | 89,155 | 12. |

(1) Includes cash items in process of collection and unposted debits.
(2) The amount reported in this item is to be equal to the sum of Schedule RC-N, items 1.b and 2.b.
(3) Applicable to banks with offices outside the U.S. Report "cash and balances due" in domestic offices of the bank.
(4) Report "cash and Federal funds sold" in Schedule RC-C, part I.
(5) Report acquisition/expenses evaluate under part 1 on the receipt of immediately available funds and others except where indicated. For those days or will over a certain: "continuing contract in Schedule RC, item 3 a. "Federal funds sold."

---

Legal Title of Bank: SECURITY BANK SA
Address:       1000 SOUTH STATE 1
City, State, Zip:   NORTH LAUDERDALE,
FDIC Certificate No.: 11111111111

Call Date: 12/31/95   ST-BK: 12-0000   FFIEC 034
Page RC-4

Schedule RI-E--Continued

| | Dollar Amounts in Thousands | RIAD | Bil | Mil | Thou |
|---|---|---|---|---|---|
| 5. Extraordinary items and other adjustments and applicable income tax effect (from Schedule RI, item 11) (itemize and describe all extraordinary items and other adjustments): | | | | | |
| a. (1) | | | | | 5.a.(1) |
| (2) Applicable income tax effect | RIAD | | | | 5.a.(2) |
| b. (1) | | | | | 5.b.(1) |
| (2) Applicable income tax effect | RIAD | | | | 5.b.(2) |
| c. (1) | | | | | 5.c.(1) |
| (2) Applicable income tax effect | RIAD | | | | 5.c.(2) |
| 6. Equity capital adjustments from amended reports (reject and describe all adjustments): | | | | | |
| a. (1) | | | | | 6.a. |
| b. (1) | | | | | 6.b. |
| 7. Cumulative effect of changes in accounting principles (from Schedule RI-A, item 9) (itemize and describe all changes in accounting principles): | | | | | 7. |
| a. (1) | | | | | 7.a. |
| b. (1) | | | | | 7.b. |
| 8. Corrections of material accounting errors from prior years (from Schedule RI-A, item 10) (itemize and describe all corrections): | | | | | 8. |
| a. (1) | | | | | 8.a. |
| b. (1) | | | | | 8.b. |
| 9. Other transactions with parent holding company (from Schedule RI-A, item 11) (itemize and describe all such transactions): | | | | | 9. |
| a. (1) | | | | | 9.a. |
| b. (1) | | | | | 9.b. |
| 10. Adjustments to allowance for loan and lease losses (from Schedule RI-B, part II, item 6) (itemize and describe all adjustments): | | | | | 10. |
| a. (1) | | | | | 10.a. |
| b. (1) | | | | | 10.b. |
| 11. Other explanations (the space below to briefly describe, as not appeal): | | | | | 11. |
| Yes: | RIAD | | | | |
| No comment (0=no explanation provided here or if 1=...): | RIAD | | | | |
| Other explanations (please type or report clearly): | | | | | |
| (TEXT 4769) | | | | | |

Case 1:99-cv-01202-DMM   Document 1   Entered on FLSD Docket 04/26/1999   Page 63 of 100

Schedule RC-B—Continued

Schedule RC-B—Securities

Schedule RC-C—Loans and Leases

Part I. Loans and Leases

Do not deduct the allowance for loan and lease losses from amounts reported in this schedule.
Report total loans and leases, net of unearned income, include leases held for trading.

Schedule RC-B—Continued

Legal Title of Bank: SECURITY BANK NA
Address: 1155 SOUTH STATE
City, State, Zip: BOCA RATON FL
FDIC Certificate No. ////////

Call Date: 12/31/98   ST-BK 10-0000   FFIEC 031
Page RC-7

## Schedule RC-C—Continued

### Part I. Continued

*(table content illegible due to scan quality)*

Legal Title of Bank: SECURITY BANK NA
Address: 1155 SOUTH STATE
City, State, Zip: BOCA RATON FL
FDIC Certificate No. ////////

Call Date: 12/31/98   ST-BK 10-0000   FFIEC 031
Page RC-7

## Schedule RC-E—Deposit Liabilities

*(table content illegible due to scan quality)*

## Schedule RC-E--Continued

## Schedule RC-F--Other Assets

## Schedule RC-G--Other Liabilities

Legal Title of Bank: SECURITY BANK NA
Address: 1450 SOUTH STATE R 7 [illegible]
City, State Zip: NORTH LAUDERDALE, 33068
FDIC Certificate No.: [illegible]

Call Date 12/31/96 ST-BK. 12-0000 FFIEC 034
Page RC-12

# Schedule RC-L--Continued

| | Dollar Amounts in Thousands | RCON | Mil Thou | |
|---|---|---|---|---|
| 13. All other off-balance sheet assets (exclude off-balance sheet derivatives) (itemize and describe each component of this item over 25% of Schedule RC, item 28 a. "Total equity capital") | | 5591 | 0 | 13 |
| a. TEXT 5592 | RCON 5592 | | | 13.a. |
| b. TEXT 5593 | RCON 5593 | | | 13.b. |
| c. TEXT 5594 | RCON 5594 | | | 13.c. |
| d. TEXT 5595 | RCON 5595 | | | 13.d. |

C161 <-

| Dollar Amounts in Thousands — Off-balance Sheet Derivative Position Indicators | (Column A) Interest Rate Contracts RCON Mil Thou | (Column B) Foreign Exchange Contracts RCON Mil Thou | (Column C) Equity Derivative Contracts RCON Mil Thou | (Column D) Commodity and Other Contracts RCON Mil Thou | |
|---|---|---|---|---|---|
| 14. Gross amounts (e.g., notional amounts) (for each column, sum of items 14.a through 14.e must equal sum of items 15, 16.a, and 16.b): | | | | | |
| a. Futures contracts | 8693 0 | 8694 0 | 8695 0 | 8696 0 | 14.a. |
| b. Forward contracts | 8697 0 | 8698 0 | 8699 0 | 8700 0 | 14.b. |
| c. Exchange-traded option contracts: | | | | | |
| (1) Written options | 8701 0 | 8702 0 | 8703 0 | 8704 0 | 14.c.(1) |
| (2) Purchased options | 8705 0 | 8706 0 | 8707 0 | 8708 0 | 14.c.(2) |
| d. Over-the-counter option contracts: | | | | | |
| (1) Written options | 8709 0 | 8710 0 | 8711 0 | 8712 0 | 14.d.(1) |
| (2) Purchased options | 8713 0 | 8714 0 | 8715 0 | 8716 0 | 14.d.(2) |
| e. Swaps | 3450 0 | 3826 0 | 8719 0 | 8720 0 | 14.e. |
| 15. Total gross notional amount of derivative contracts held for trading | A126 0 | A127 0 | 8723 0 | 8724 0 | 15. |
| 16. Total gross notional amount of derivative contracts held for purposes other than trading: | | | | | |
| a. Contracts marked to market | 8725 0 | 8726 0 | 8727 0 | 8728 0 | 16.a. |
| b. Contracts not marked to market | 8729 0 | 8730 0 | 8731 0 | 8732 0 | 16.b. |

Memoranda

| | Dollar Amounts in Thousands | RCON | Mil Thou | |
|---|---|---|---|---|
| 1.-2. Not applicable | | | | |
| 3. Unused commitments with an original maturity exceeding one year that are reported in Schedule RC-L, items 1.a through 1.e above (report only the unused portions of commitments that are fee paid or otherwise legally binding) | | 3833 | 13 | M.3. |

20

Legal Title of Bank: SECURITY BANK NA
Address: 1450 SOUTH STATE R 7 [illegible]
City, State Zip: NORTH LAUDERDALE, 33068
FDIC Certificate No.: [illegible]

Call Date: 12/31/96 ST-BK. 12-0000 FFIEC 034
Page RC-13

# Schedule RC-M--Memoranda

C165 <-

| Dollar Amounts in Thousands | RCON | Mil Thou | |
|---|---|---|---|
| 1. Extensions of credit by the reporting bank to its executive officers, directors, principal shareholders, and their related interests as of the report date: | | | |
| a. Aggregate amount of all extensions of credit to all executive officers, directors, principal shareholders, and their related interests | 6164 | 119 | 1.a. |
| b. Number of executive officers, directors, and principal shareholders to whom the amount of all extensions of credit by the reporting bank (including extensions of credit to related interests) equals or exceeds the lesser of $500,000 or 5 percent of total capital as defined for this purpose in agency regulations ..... Number RCON 6165 0 | | | 1.b. |
| 2. Not applicable | | | |
| 3. a. Noninterest-bearing balances due from commercial banks in the U.S. (included in Schedule RC, item 1.a) (exclude balances due from Federal Reserve Banks and cash items in process of collection) | 0050 | 303 | 3.a. |
| b. Currency and coin (included in Schedule RC, item 1.a) | 0080 | 766 | 3.b. |
| 4. Outstanding principal balance of 1-4 family residential mortgage loans serviced for others (include both retained servicing and purchased servicing): | | | |
| a. Mortgages serviced under a GNMA contract | 5500 | 0 | 4.a. |
| b. Mortgages serviced under a FHLMC contract: | | | |
| (1) Serviced with recourse to servicer | 5501 | 0 | 4.b.(1) |
| (2) Serviced without recourse to servicer | 5502 | 0 | 4.b.(2) |
| c. Mortgages serviced under a FNMA contract: | | | |
| (1) Serviced under a regular option contract | 5503 | 0 | 4.c.(1) |
| (2) Serviced under a special option contract | 5504 | 0 | 4.c.(2) |
| d. Mortgages serviced under other servicing contracts | 5505 | 3,360 | 4.d. |
| 5. Not applicable | | | |
| 6. Intangible assets: | | | |
| a. Mortgage servicing rights | 3164 | 0 | 6.a. |
| b. Other identifiable intangible assets: | | | |
| (1) Purchased credit card relationships | 5506 | 0 | 6.b.(1) |
| (2) All other identifiable intangible assets | 5507 | 0 | 6.b.(2) |
| c. Goodwill | 3163 | 0 | 6.c. |
| d. Total (sum of items 6.a through 6.c) (must equal Schedule RC, item 10) | 2143 | 0 | 6.d. |
| e. Amount of intangible assets (included in item 6.b.(2) above) that have been grandfathered or are otherwise qualifying for regulatory capital purposes | 6442 | 0 | 6.e. |
| 7. Mandatory convertible debt, net of common or perpetual preferred stock dedicated to redeem the debt | 3295 | 0 | 7. |
| 8. a. Other real estate owned: | | | |
| (1) Direct and indirect investments in real estate ventures | 5372 | 0 | 8.a.(1) |
| (2) All other real estate owned: | | | |
| (a) Construction and land development | 5508 | 589 | 8.a.(2)(a) |
| (b) Farmland | 5509 | 0 | 8.a.(2)(b) |
| (c) 1-4 family residential properties | 5510 | 31 | 8.a.(2)(c) |
| (d) Multifamily (5 or more) residential properties | 5511 | 0 | 8.a.(2)(d) |
| (e) Nonfarm nonresidential properties | 5512 | 0 | 8.a.(2)(e) |
| (3) Total (sum of items 8.a.(1) and 8.a.(2)) (must equal Schedule RC, item 7) | 2150 | 620 | 8.a.(3) |
| b. Investments in unconsolidated subsidiaries and associated companies: | | | |
| (1) Direct and indirect investments in real estate ventures | 5374 | 0 | 8.b.(1) |
| (2) All other investments in unconsolidated subsidiaries and associated companies | 5375 | 0 | 8.b.(2) |
| (3) Total (sum of items 8.b.(1) and 8.b.(2)) (must equal Schedule RC, item 8) | 2130 | 0 | 8.b.(3) |
| c. Total assets of unconsolidated subsidiaries and associated companies | 5376 | 0 | 8.c. |

21

## Schedule RC-N—Continued

## Schedule RC-N—Past Due

### Schedule RC-N — Part One: Noncurual Loans(1), Leases, and Other Assets

## Schedule RC-O—Other Data for Deposit Insurance Assessments

## Schedule RC-O—Continued

## Schedule RC-R--Regulatory Capital

This schedule must be completed by all banks as follows: Banks that reported total assets of $1 billion or more in Schedule RC, item 12, for June 30, 1995, must complete items 2 through 9 and Memoranda items 1 and 2. Banks with assets of less than $1 billion must complete items 1 through 3 below or Schedule RC-R in its entirety, depending on their response to item 1 below.

1. Test for determining the extent to which Schedule RC-R must be completed. To be completed only by banks with total assets of less than $1 billion. Indicate in the appropriate box at the right whether the bank has total capital greater than or equal to eight percent of adjusted total assets ........ | RCON 6056 | X | ///// | 1.

| | C180 |
|---|---|
| YES | NO |
| X | ///// |

For purposes of this test, adjusted total assets equals total assets less cash, U.S. Treasuries, U.S. Government agency obligations, and 80 percent of U.S. Government-sponsored agency obligations plus the allowance for loan and lease losses and selected off-balance sheet items as reported on Schedule RC-L (see instructions).

If the box marked YES has been checked, then the bank only has to complete items 2 and 3 below. If the box marked NO has been checked, the bank must complete the remainder of this schedule.

A NO response to item 1 does not necessarily mean that the bank's actual risk-based capital ratio is less than eight percent or that the bank is not in compliance with the risk-based capital guidelines.

NOTE: All banks are required to complete items 2 and 3 below. See optional worksheet for items 3.a through 3.f.

| Dollar Amounts in Thousands | (Column A) Subordinated Debt(1) and Intermediate Term Preferred Stock RCON Mil Thou | | (Column B) Other Limited-Life Capital Instruments RCON Mil Thou | | |
|---|---|---|---|---|---|
| 2. Subordinated debt(1) and other limited-life capital instruments (original weighted average maturity of at least five years) with a remaining maturity of: | | | | | |
| a. One year or less | 3780 | 0 | 3786 | 0 | 2.a. |
| b. Over one year through two years | 3781 | 0 | 3787 | 0 | 2.b. |
| c. Over two years through three years | 3782 | 0 | 3788 | 0 | 2.c. |
| d. Over three years through four years | 3783 | 0 | 3789 | 0 | 2.d. |
| e. Over four years through five years | 3784 | 0 | 3790 | 0 | 2.e. |
| f. Over five years | 3785 | 0 | 3791 | 0 | 2.f. |

| 3. Amounts used in calculating regulatory capital ratios (report amounts determined by the bank for its own internal regulatory capital analyses consistent with applicable capital standards): | RCON | Mil Thou | |
|---|---|---|---|
| a. Tier 1 capital | 8274 | 7,263 | 3.a. |
| b. Tier 2 capital | 8275 | 351 | 3.b. |
| c. Total risk-based capital | 3792 | 7,613 | 3.c. |
| d. Excess allowance for loan and lease losses | A222 | 0 | 3.d. |
| e. Risk-weighted assets (net of all deductions, including excess allowance) | A223 | 41,338 | 3.e. |
| f. "Average total assets" (net of all assets deducted from Tier 1 capital)(2) | A224 | 51,788 | 3.f. |

Items 4-9 and Memoranda items 1 and 2 are to be completed by banks that answered NO to item 1 above and by banks with total assets of $1 billion or more.

| | (Column A) Assets Recorded on the Balance Sheet RCON Mil Thou | | (Column B) Credit Equivalent Amount of Off-Balance Sheet Items(3) RCON Mil Thou | | |
|---|---|---|---|---|---|
| 4. Assets and credit equivalent amounts of off-balance sheet items assigned to the zero percent risk category: | ////////////// | | ////////////// | | |
| a. Assets recorded on the balance sheet: | ////////////// | | ////////////// | | |
| (1) Securities issued by, other claims on, and claims unconditionally guaranteed by, the U.S. Government and its agencies and other OECD central governments | 3794 | N/A | ////////////// | | 4.a.(1) |
| (2) All other | 3795 | N/A | ////////////// | | 4.a.(2) |
| b. Credit equivalent amount of off-balance sheet items | ////////////// | | 3796 | N/A | 4.b. |

(1) Include mandatory convertible debt reported in Schedule RC-M, item 7.
(2) Do not deduct excess allowance for loan and lease losses.
(3) Do not report in column B the risk-weighted amount of assets reported in column A.

## Schedule RC-R--Continued

| Dollar Amounts in Thousands | (Column A) Assets Recorded on the Balance Sheet RCON Mil Thou | | (Column B) Credit Equivalent Amount of Off-Balance Sheet Items(1) RCON Mil Thou | | |
|---|---|---|---|---|---|
| 5. Assets and credit equivalent amounts of off-balance sheet items assigned to the 20 percent risk category: | ////////////// | | ////////////// | | |
| a. Assets recorded on the balance sheet: | ////////////// | | ////////////// | | |
| (1) Claims conditionally guaranteed by the U.S. Government and its agencies and other OECD central governments | 3798 | N/A | ////////////// | | 5.a.(1) |
| (2) Claims collateralized by securities issued by the U.S. Government and its agencies and other OECD central governments, by securities issued by U.S. Government-sponsored agencies, and by cash on deposit | 3799 | N/A | ////////////// | | 5.a.(2) |
| (3) All other | 3800 | N/A | ////////////// | | 5.a.(3) |
| b. Credit equivalent amount of off-balance sheet items | ////////////// | | 3801 | N/A | 5.b. |
| 6. Assets and credit equivalent amounts of off-balance sheet items assigned to the 50 percent risk category: | ////////////// | | ////////////// | | |
| a. Assets recorded on the balance sheet | 3802 | N/A | ////////////// | | 6.a. |
| b. Credit equivalent amount of off-balance sheet items | ////////////// | | 3803 | N/A | 6.b. |
| 7. Assets and credit equivalent amounts of off-balance sheet items assigned to the 100 percent risk category: | ////////////// | | ////////////// | | |
| a. Assets recorded on the balance sheet | 3804 | N/A | ////////////// | | 7.a. |
| b. Credit equivalent amount of off-balance sheet items | ////////////// | | 3805 | N/A | 7.b. |
| 8. On-balance sheet asset values excluded from the calculation of the risk-based capital ratio(2) | 3806 | N/A | ////////////// | | 8. |
| 9. Total assets recorded on the balance sheet (sum of items 4.a, 5.a, 6.a, 7.a, and 8, column A) (must equal Schedule RC, item 12 plus items 4.b and 4.c) | 3807 | N/A | ////////////// | | 9. |

Memoranda

| Dollar Amounts in Thousands | RCON | Mil Thou | |
|---|---|---|---|
| 1. Current credit exposure across all off-balance sheet derivative contracts covered by the risk-based capital standards | 8764 | N/A | M.1. |

| | With a remaining maturity of | | | | | | |
|---|---|---|---|---|---|---|---|
| | (Column A) One year or less | | (Column B) Over one year through five years | | (Column C) Over five years | | |
| 2. Notional principal amounts of off-balance sheet derivative contracts:(3) | RCON | Mil Thou | RCON | Mil Thou | RCON | Mil Thou | |
| a. Interest rate contracts | 3809 | N/A | 8766 | N/A | 8767 | N/A | M.2.a. |
| b. Foreign exchange contracts | 3812 | N/A | 8769 | N/A | 8770 | N/A | M.2.b. |
| c. Gold contracts | 8771 | N/A | 8772 | N/A | 8773 | N/A | M.2.c. |
| d. Other precious metals contracts | 8774 | N/A | 8775 | N/A | 8776 | N/A | M.2.d. |
| e. Other commodity contracts | 8777 | N/A | 8778 | N/A | 8779 | N/A | M.2.e. |
| f. Equity derivative contracts | A000 | N/A | A001 | N/A | A002 | N/A | M.2.f. |

(1) Do not report in column B the risk-weighted amount of assets reported in column A.
(2) Include the difference between the fair value and the amortized cost of available-for-sale securities in item 8 and report the amortized cost of these securities in items 4 through 7 above. Item 8 also includes on-balance sheet asset values (or portions thereof) of off-balance sheet interest rate, foreign exchange rate, and commodity contracts and those contracts (e.g., futures contracts) not subject to risk-based capital. Exclude from item 8 margin accounts and accrued receivables not included in the calculation of credit equivalent amounts of off-balance sheet derivatives as well as any portion of the allowance for loan and lease losses in excess of the amount that may be included in Tier 2 capital.
(3) Exclude foreign exchange contracts with an original maturity of 14 days or less and all futures contracts.

Case 1:99-cv-01202-DMM   Document 1   Entered on FLSD Docket 04/26/1999   Page 73 of 100

Federal Financial Institutions Examination Council

Board of Governors of the Federal Reserve System
OMB Number: 7100-0036
Federal Deposit Insurance Corporation
OMB Number: 3064-0052
Office of the Comptroller of the Currency
OMB Number: 1557-0081
Expires March 31, 1998

[1]

## Consolidated Reports of Condition and Income for A Bank With Domestic Offices Only and Total Assets of Less Than $100 Million—FFIEC 034

Report at the close of business December 31, 1995

(RCRI 9999)

This report is required by law: 12 U.S.C. §324 (State member banks); 12 U.S.C. §1817 (State nonmember banks); and 12 U.S.C. §161 (National banks).

This report form is to be filed by banks with domestic offices only. Banks with branches and consolidated subsidiaries in U.S. territories and possessions, Edge or Agreement subsidiaries, foreign branches, consolidated foreign subsidiaries, or International Banking Facilities must file FFIEC 031.

NOTE: The Reports of Condition and Income must be signed by an authorized officer and the Report of Condition must be attested to by not less than three directors for State nonmember banks and three directors for State member banks and National banks.

I, J. Rails Domenech

Name and Title of Officer Authorized to Sign Report

of the named bank do hereby declare that these Reports of Condition and Income (including the supporting schedules) have been prepared in conformance with the instructions issued by the appropriate Federal regulatory authority and are true to the best of my knowledge and belief.

Signature of Officer Authorized to Sign Report

January 17, 1996

Date of Signature

The Reports of Condition and Income are to be prepared in accordance with Federal regulatory authority instructions. NOTE: These instructions may in some cases differ from generally accepted accounting principles.

We, the undersigned directors (trustees), attest to the correctness of this Report of Condition (including the supporting schedules) and declare that it has been examined by us and to the best of our knowledge and belief has been prepared in conformance with the instructions issued by the appropriate Federal regulatory authority and is true and correct.

Director (Trustee)

Director (Trustee)

Director (Trustee)

For Banks Submitting Hard Copy Report Forms:

State Member Banks: Return the original and one copy to the appropriate Federal Reserve District Bank.

State Nonmember Banks: Return the original only in the special return address envelope provided. If express mail is used in lieu of the special return address envelope, return the original only to the FDIC, c/o Quality Data Systems, 2127 Espey Court, Suite 204, Crofton, MD 21114.

National Banks: Return the original only in the special return address envelope provided. If express mail is used in lieu of the special return address envelope, return the original only to the FDIC, c/o Quality Data Systems, 2127 Espey Court, Suite 204, Crofton, MD 21114.

FDIC Certificate Number  [2][3][4][5][6]

Banks should mail the address label in this space.

Security Bank N.A.
1550 South State Road 7
N. Lauderdale, Fl. 33068

---

# REPORT OF CONDITION

Consolidating domestic subsidiaries of the

SECURITY BANK NA                    Name of Bank

of NORTH LAUDERDALE     City

in the State of Florida            , at the close of business on December 31, 1995.

## ASSETS

| | Thousands of dollars |
|---|---|
| Cash and balances due from depository institutions: | |
| Noninterest-bearing balances and currency and coin | 2,000 |
| Interest-bearing balances | 1,074 |
| Held-to-maturity securities | |
| Available-for-sale securities | 3,568 |
| Federal funds sold | 3,282 |
| Securities purchased under agreements to resell | 0 |
| Loans and lease financing receivables: | |
| Loans and leases, net of unearned income | 34,906 |
| LESS: Allowance for loan and lease losses | 388 |
| LESS: Allocated transfer risk reserve | 3 |
| Loans and leases, net of unearned income, allowance, and reserve | 34,392 |
| Trading assets | 0 |
| Premises and fixed assets (including capitalized leases) | 742 |
| Other real estate owned | 796 |
| Investments in unconsolidated subsidiaries and associated companies | 328 |
| Customers' liability to this bank on acceptances outstanding | 0 |
| Intangible assets | 819 |
| Other assets | 51,243 |
| Total assets | 51,243 |
| Total assets and losses deferred pursuant to 12 U.S.C. 1823(j) | 51,243 |

CONTINUED ON NEXT PAGE

Legal Title of Bank: SECURITY BANK NA
Address: 1450 SOUTH STATE ROAD SEVEN
City, State, Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |||||||||||

Call Date: 12/31/95   ST-BK: 12-0000   FFIEC 034
Page RI-1

Consolidated Report of Income
for the period January 1, 1995–December 31, 1995

All Report of Income schedules are to be reported on a calendar year-to-date basis in thousands of dollars.

Schedule RI—Income Statement

| | Dollar Amounts in Thousands | RIAD | BIL MIL THOU | |
|---|---|---|---|---|
| 1. Interest income: | | | ///////// | |
| a. Interest and fee income on loans: (1)(2) | | | ///////// | |
| (1) Total loans, (to be completed only by those banks with less than $25 million in | | 4010 | N/A | 1.a.(1) |
| total assets) | | | ///////// | |
| (2) Total loans, (to be completed only by those banks with $25 million or more | | | ///////// | |
| in total assets):(2) | | | ///////// | |
| The following four items are to be completed only by those banks with $25 million or more | | | ///////// | |
| (a) Real estate loans | | 4246 | 3,591 | 1.a.(2) |
| (b) Installment loans | | 4247 | 4 | 1.a.(2) |
| (c) Credit cards and related plans | | 4248 | 0 | 1.a.(2) |
| (d) Commercial (time and demand) and all other loans | | 4249 | 461 | 1.a.(2) |
| b. Income from lease financing receivables | | 4065 | 0 | 1.b. |
| c. Interest income on balances due from depository institutions(3) | | 4115 | 44 | 1.c. |
| d. Interest and dividend income on securities: | | | ///////// | |
| (1) Securities issued by states and political subdivisions in the U.S.: | | | ///////// | |
| (a) Taxable securities | | 4506 | 0 | 1.d.(1)(a) |
| (b) Tax-exempt securities | | 4507 | 0 | 1.d.(1)(b) |
| (2) U.S. Government securities and other debt securities | | 3660 | 239 | 1.d.(2) |
| (3) Equity securities (including investments in mutual funds) | | 3659 | 22 | 1.d.(3) |
| e. Interest income from trading assets | | 4069 | 0 | 1.e. |
| f. Interest income on federal funds sold and securities purchased under agreements to resell | | 4020 | 158 | 1.f. |
| g. Total interest income (sum of items 1.a through 1.f) | | 4107 | 3,714 | 1.g. |

(1) See instructions for loan classifications used in this schedule.
(2) The $25 million asset size test is generally based on the total assets reported on the June 30, 1994 Report of Condition.
(3) Includes interest income on time certificates of deposit not held for trading.
(4) Report interest income on "term federal funds sold" in Schedule RI, item 1.e, "interest and fee income on loans."

LIABILITIES

Deposits:
In domestic offices ................................. 41,791

Noninterest-bearing ................... 4,704
Interest-bearing ..................... 37,083

Federal funds purchased ............................. 0
Securities sold under agreements to repurchase ....... 0
Demand notes issued to the U.S. Treasury ............. 0
Trading liabilities ................................. 0
Other borrowed money: //////////
With original maturity of one year or less ........... 0
With original maturity of more than one year ......... 328
Mortgage indebtedness and obligations under capitalized leases ... 0
Bank's liability on acceptances executed and outstanding ... 0
Subordinated notes and debentures ................... 0
Other liabilities ................................. 377
Total liabilities ................................. 44,496
Limited-life preferred stock and related surplus ...... 0

EQUITY CAPITAL

Perpetual preferred stock and related surplus ........ 0
Common stock ...................................... 3,900
Surplus .......................................... 815
Undivided profits and capital reserves ............. (35)
Net unrealized holding gains (losses) on available-for-sale securities ... 69
Total equity capital ................................. 4,749
Losses deferred pursuant to 12 U.S.C. 1823(j) ....... 0
Total equity capital and losses deferred pursuant to 12 U.S.C. 1823(j) ... 4,749
Total liability capital and losses deferred pursuant to
12 U.S.C. 1823(j) preferred stock, minority interest and losses deferred
pursuant to 12 U.S.C. 1823(j) ...................... 49,245

Schedule RI—Continued

Schedule RI-A—Changes in Equity Capital

Legal Title of Bank: SECURITY BANK NA
Address: 1620 SOUTH STATE ROAD SEVEN
City, State  Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: [illegible]

Call Date: 12/31/95   ST-BK: 12-0000   FFIEC 034
Page RI-5

## Schedule RI-B--Continued

### Part II. Changes in Allowance for Loan and Lease Losses

Part II is to be reported with the December Report of Income.

|  | Dollar Amounts in Thousands | RCFD | Bil Thou |
|---|---|---|---|
| 1. Balance originally reported in the December 31, 1994, Reports of Condition and Income ... | | 3124 | |
| 2. Recoveries (must equal part I, item 4, column B above) ... | | 4605 | |
| 3. LESS: Charge-offs (must equal part I, item A, column A above) ... | | 4635 | |
| 4. Provision for loan and lease losses (must equal Schedule RI, item 4.a) ... | | 4230 | |
| 5. Adjustments* (see instructions for this schedule) ... | | 4815 | |
| 6. Balance end of current period (from of item 1 through 5) (must equal Schedule RI, item 4.b) ... | | 3123 | |

*Describe on Schedule RI-E--Explanatory.

### Schedule RI-C--Applicable Income Taxes by Taxing Authority

Schedule RI-C is to be reported with the December Report of Income.

|  | Dollar Amounts in Thousands | RCFD | Bil Thou |
|---|---|---|---|
| 1. Federal ... | | 4780 | |
| 2. State and local ... | | 4790 | |
| 3. Total (sum of items 1 and 2) (must equal sum of Schedule RI, item 9 and 11.b) ... | | 4770 | |
| 4. Deferred portion of item 3 ... | | 4772 | |

### Schedule RI-E--Explanations

Schedule RI-E is to be completed each quarter on a calendar year-to-date basis.

Report all adjustments in Schedule RI-A and RI-B, all extraordinary items and other adjustments in Schedule RI, and all significant items of other noninterest income and other noninterest expense in Schedule RI. (See instructions for details.)

|  | Dollar Amounts in Thousands | RCFD | Bil Thou |
|---|---|---|---|
| 1. All other noninterest income (from Schedule RI, item 5.b.(7)) ... | | 5415 | |
|   Report amounts that exceed 10% of Schedule RI, item 5.b.(7): | | | |
|   a. Net gains on other real estate owned ... | | 5416 | |
|   b. Net gains on sales of loans ... | | 5417 | |
|   c. Net gains on sales of premises and fixed assets ... | | 5418 | |
|   d. [text] ... | | 5419 | |
|     TEXT 4461 | | 4461 | |
|   e. [text] ... | | 5420 | |
|     TEXT 4462 | | 4462 | |
| 2. Other noninterest expense (from Schedule RI, item 7.d) ... | | 4461 | |
|   a. Amortization expense of intangible assets ... | | 4531 | |
|   b. Net losses on other real estate owned ... | | 5416 | |
|   c. Net losses on sales of loans ... | | 5419 | |
|   d. Net losses on sales of premises and fixed assets ... | | 5420 | |
|   [Itemize and describe the three largest other amounts that exceed 10% of Schedule RI, item 7.d:] | | | |
|     TEXT 4464 | | 4464 | |
|   e. [text] ... | | 4467 | |
|     TEXT 4468 | | 4468 | |

---

Legal Title of Bank: SECURITY BANK NA
Address: 1620 SOUTH STATE ROAD SEVEN
City, State  Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: [illegible]

Call Date: 12/31/95   ST-BK: 12-0000   FFIEC 034
Page RI-4

## Schedule RI-B--Charge-offs and Recoveries and changes in Allowance for Loan and Lease Losses

### Part I. Charge-offs and Recoveries on Loans and Leases(1)

|  |  | (Column A) Charge-offs Calendar year-to-date | | (Column B) Recoveries Calendar year-to-date | |
|---|---|---|---|---|---|
| Dollar Amounts in Thousands | | RCFD  Bil Thou | | RCFD  Bil Thou | |
| 1. Real estate loans ... | | 4254 | | 4257 | 1. |
| 2. Installment loans ... | | 4258 | | 4259 | 2. |
| 3. Credit cards and related plans ... | | 4262 | | 4263 | 3. |
| 4. Commercial (time and demand) and all other loans ... | | 4264 | | 4265 | 4. |
| 5. Lease financing receivables ... | | 4266 | | 4267 | 5. |
| 6. Total (sum of items 1 through 5) ... | | 4635 | | 4605 | 6. |

#### Memoranda

| Dollar Amounts in Thousands | | RCFD  Bil Thou | | RCFD  Bil Thou | |
|---|---|---|---|---|---|
| 1. To be completed by banks with loans to finance agricultural production and other loans to farmers (Schedule RC-C, part I, item 3) exceeding five percent of total loans: | | | | | M.1. |
|   Agricultural loans included in part I, items 1 through 4, above ... | | 4386 | | 4389 | |
| 2. Not applicable | | | | | |
| 3. Loans to finance commercial real estate, construction, and land development activities (not secured by real estate) included in Schedule RI-B, part I, items 2 through 4, above ... | | 5411 | | 5412 | M.3. |
| 4. Real estate loans (sum of Memorandum items 5.a through 5.e must equal Schedule RI-B, part I, item 1, above): | | | | | M.4. |
|   a. Construction and land development ... | | 5415 | | 5416 | M.5.a. |
|   b. Secured by farmland ... | | 5447 | | 5448 | M.5.b. |
|   c. Secured by 1-4 family residential properties: | | | | | |
|     (1) Revolving, open-end loans secured by 1-4 family residential properties and extended under lines of credit ... | | 5449 | | 5450 | M.5.c.(1) |
|     (2) All other loans secured by 1-4 family residential properties ... | | 5451 | | 5452 | M.5.c.(2) |
|   d. Secured by multifamily (5 or more) residential properties ... | | 5453 | | 5454 | M.5.d. |
|   e. Secured by nonfarm nonresidential properties ... | | 5455 | | 5456 | M.5.e. |

(1) See instructions for loan classifications used in this schedule.

Legal Title of Bank: SECURITY BANK NA
Address: 1550 SOUTH STATE ROAD SEVEN
City, State Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: [llllllllll]

Call Date: 12/31/95   ST-BK: 12-0000   FFIEC 034
Page RC-1

## Consolidated Report of Condition for Insured Commercial and State-Chartered Savings Banks for December 31, 1995

All schedules are to be reported in thousands of dollars. Unless otherwise indicated, report the amount outstanding as of the last business day of the quarter.

### Schedule RC—Balance Sheet

| | | Dollar Amounts in Thousands | RCON | BIL MIL THOU | |
|---|---|---|---|---|---|
| **ASSETS** | | | | | |
| 1. Cash and balances due from depository institutions: | | | | | |
| a. Noninterest-bearing balances and currency and coin(1,2) | | | 0081 | 2,069 | 1.a. |
| b. Interest-bearing balances(3) | | | 0071 | 1,896 | 1.b. |
| 2. Securities: | | | | | |
| a. Held-to-maturity securities (from Schedule RC-B, column A) | | | 1754 | 0 | 2.a. |
| b. Available-for-sale securities (from Schedule RC-B, column D) | | | 1773 | 3,343 | 2.b. |
| 3. Federal funds sold and securities purchased under agreements to resell: | | | | | |
| a. Federal funds sold | | | 0276 | 5,000 | 3.a. |
| b. Securities purchased under agreements to resell(1) | | | 0277 | 0 | 3.b. |
| 4. Loans and lease financing receivables: | | | | | |
| a. Loans and leases, net of unearned income (from Schedule RC-C) | RCON 2122 | 36,990 | | | 4.a. |
| b. LESS: Allowance for loan and lease losses | RCON 3123 | 384 | | | 4.b. |
| c. LESS: Allocated transfer risk reserve | RCON 3128 | 0 | | | 4.c. |
| d. Loans and leases, net of unearned income, allowance, and reserve (item 4.a minus 4.b and 4.c) | | | 2125 | 36,598 | 4.d. |
| 5. Trading assets | | | 3545 | 0 | 5. |
| 6. Premises and fixed assets (including capitalized leases) | | | 2145 | 792 | 6. |
| 7. Other real estate owned (from Schedule RC-M) | | | 2150 | 746 | 7. |
| 8. Investments in unconsolidated subsidiaries and associated companies (from Schedule RC-M) | | | 2130 | 0 | 8. |
| 9. Customers' liability to this bank on acceptances outstanding | | | 2155 | 326 | 9. |
| 10. Intangible assets (from Schedule RC-M) | | | 2143 | 0 | 10. |
| 11. Other assets (from Schedule RC-F) | | | 2160 | 849 | 11. |
| 12. a. Total assets (sum of items 1 through 11) | | | 2170 | 51,865 | 12.a. |
| b. Losses deferred pursuant to 12 U.S.C. 1823(j) | | | 0306 | 0 | 12.b. |
| c. Total assets and losses deferred pursuant to 12 U.S.C. 1823(j) (sum of items 12.a and 12.b) | | | 0307 | 51,865 | 12.c. |

1) Includes cash items in process of collection and unposted debits.
2) Includes currency and coin.
3) Includes balances due from depository institutions in the U.S.
4) Includes all securities resale agreements in domestic offices.

1) Includes cash items in process of collection and unposted debits.
3) Includes time certificates of deposit not held for trading.
5) Report "term federal funds sold" and/or in Schedule RC, item 3.a, "loans and leases, net of unearned income," and in Schedule RC-C,

Part I, item 3.a. "Report securities purchased under agreements to resell the involve the receipt of immediately available funds and mature in one business day or roll over under a continuing contract in Schedule RC, item 3.a. "Federal funds sold."

---

Legal Title of Bank: SECURITY BANK NA
Address: 1550 SOUTH STATE ROAD SEVEN
City, State Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: [llllllllll]

Call Date: 12/31/95   ST-BK: 12-0000   FFIEC 034
Page RI-6

### Schedule RI-E—Continued

| | | Dollar Amounts in Thousands | RIAD | BIL MIL THOU | |
|---|---|---|---|---|---|
| 3. Extraordinary items and other adjustments (from Schedule RI, item 11.a) and applicable income taxes (from Schedule RI, item 11.b) (itemize and describe all extraordinary items and other adjustments): | | | | | |
| a. (1) [TEXT 4469] | | | 4469 | | 3.a.(1) |
| (2) Applicable income tax effect | RIAD 4486 | | | | 3.a.(2) |
| b. (1) [TEXT 4487] | | | 4487 | | 3.b.(1) |
| (2) Applicable income tax effect | RIAD 4488 | | | | 3.b.(2) |
| 4. Equity capital adjustments from amended Reports of Income (from Schedule RI-A, item 2) (itemize and describe all adjustments): | | | | | |
| a. [TEXT 4491] | | | 4491 | | 4.a. |
| b. [TEXT 4492] | | | 4492 | | 4.b. |
| 5. Cumulative effect of changes in accounting principles from prior years (from Schedule RI-A, item 14, item 9) (itemize and describe all changes in accounting principles): | | | | | |
| a. [TEXT 4493] | | | 4493 | | 5.a. |
| b. [TEXT 4494] | | | 4494 | | 5.b. |
| 6. Corrections of material accounting errors from prior years (from Schedule RI-A, item 10) (itemize and describe all corrections): | | | | | |
| a. [TEXT 4495] | | | 4495 | | 6.a. |
| b. [TEXT 4496] | | | 4496 | | 6.b. |
| 7. Other transactions with parent holding company (from Schedule RI-A, item 12) (itemize and describe all such transactions): | | | | | |
| a. [TEXT 4498] | | | 4498 | | 7.a. |
| b. [TEXT 4499] | | | 4499 | | 7.b. |
| 8. Adjustments to allowance for loan and lease losses (from Schedule RI-B, part II, item 5) (itemize and describe all adjustments): | | | | | |
| a. [TEXT 4521] | | | 4521 | | 8.a. |
| b. [TEXT 4522] | | | 4522 | | 8.b. |
| 9. Other explanations (the space below is provided for the bank to briefly describe, at its option, any other significant items affecting the Report of Income): | | | | | |
| Comments? | | | 4769 | | 9. |
| Other explanations (please type or print clearly) (TEXT 4769) | | | | | |

Schedule RC-B—Securities

Include assets held for trading.

Schedule RC—Continued

## Schedule RC-C—Loans and Lease Financing Receivables

Legal Title of Bank: SECURITY BANK NA
Address: 1690 SOUTH STATE ROAD 7
City, State: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |||||||||

Call Date: 12/31/99   ST-BK: 12-0000   FFIEC 034   Page RC-5

### Part I. Loans and Leases

Do not deduct the allowance for loan and lease losses from amounts reported in this schedule. Report total loans and leases, net of unearned income. Exclude assets held for trading.

| | Dollar Amounts in Thousands | RCON | Bil Mil Thou | |
|---|---|---|---|---|
| 1. Loans secured by real estate: | | ||||||||| | | |
| a. Construction and land development | | 1415 | 1,090 | 1.a. |
| b. Secured by farmland (including farm residential and other improvements) | | 1420 | 335 | 1.b. |
| c. Secured by 1–4 family residential properties: | | ||||||||| | | |
| (1) Revolving, open-end loans secured by 1–4 family residential properties and extended under lines of credit | | 1797 | 0 | 1.c.(1) |
| (2) All other loans secured by 1–4 family residential properties: | | ||||||||| | | |
| (a) Secured by first liens | | 5367 | 15,565 | 1.c.(2)(a) |
| (b) Secured by junior liens | | 5368 | 3,134 | 1.c.(2)(b) |
| d. Secured by multifamily (5 or more) residential properties | | 1460 | 960 | 1.d. |
| e. Secured by nonfarm nonresidential properties | | 1480 | 7,216 | 1.e. |
| 2. Loans to depository institutions | | 1288 | 0 | 2. |
| 3. Loans to finance agricultural production and other loans to farmers | | 1590 | 0 | 3. |
| 4. Commercial and industrial loans | | 1766 | 9,726 | 4. |
| 5. Acceptances of other banks | | 1755 | 0 | 5. |
| 6. Loans to individuals for household, family, and other personal expenditures (i.e., consumer loans) (includes purchased paper): | | ||||||||| | | |
| a. Credit cards and related plans (includes check credit and other revolving credit plans) | | 2008 | 0 | 6.a. |
| b. Other (includes single payment, installment, and all student loans) | | 2011 | 377 | 6.b. |
| 7. Obligations (other than securities and leases) of states and political subdivisions in the U.S. (includes nonrated industrial development obligations) | | 2107 | 0 | 7. |
| 8. All other loans (exclude consumer loans) | | 2080 | 941 | 8. |
| 9. Lease financing receivables (net of unearned income) | | 2165 | 0 | 9. |
| 10. LESS: Any unearned income on loans reflected in items 1–8 above | | 2123 | 0 | 10. |
| 11. Total loans and leases, net of unearned income (sum of items 1 through 9 minus item 10) (must equal Schedule RC, item 4.a) | | 2122 | 38,344 | 11. |

---

## Schedule RC-B—Continued

Legal Title of Bank: SECURITY BANK NA
Address: 1690 SOUTH STATE ROAD 7
City, State: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |||||||||

Call Date: 12/31/99   ST-BK: 12-0000   FFIEC 034   Page RC-4

| | Dollar Amounts in Thousands | RCON | Bil Mil Thou | |
|---|---|---|---|---|
| | | 0416 | 1,942 | M.1. |

Case 1:99-cv-01202-DMM   Document 1   Entered on FLSD Docket 04/30/1999   Page 80 of 100

Legal Title of Bank: SECURITY BANK NA
Address: 1150 SOUTH STATE ROAD SEVEN
City, State, Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: //////////

Schedule RC-N—Deposit Liabilities

Call Date: 12/31/95   ST-BK: 12-0000   FFIEC 034
Page RC-7

Schedule RC-C—Continued

Part I. Continued

Legal Title of Bank:  SECURITY BANK SA
Address:  1450 AZURE STATE ROAD SEVEN
City, State  Zip:  NORTH LAUDERDALE, FL  33068
FDIC Certificate No.:  [illegible]

Call Date:  12/31/97   ST-BK: 12-0000   FFIEC 034
Page RC-8

## Schedule RC-E—Continued

Memoranda (continued)

| | RCON | Bil Thou | |
|---|---|---|---|

1. The deposits of less than $100,000 and open-account time deposits of $100,000 or more (included in Memorandum items 2.b and 2.c above) with a remaining maturity or repricing frequency of:(1)

a. Three months or less

b. Over three months through 12 months (that not over 12 months)

c. Maturity and repricing data for time certificates of deposit of $100,000 or more(1)

2. Fixed rate time certificates of deposit of $100,000 or more with a remaining maturity of:

(1) Three months or less
(2) Over three months through 12 months
(3) Over one year through five years
(4) Over five years

3. Total fixed rate time certificates of deposit of $100,000 or more (sum of Memorandum items 6.b.(1) through 6.b.(5))

b. Floating rate time certificates of deposit of $100,000 or more with a repricing frequency of:

(1) Quarterly or more frequently
(2) Annually or more frequently, but less than quarterly
(3) Every five years or more frequently, but less frequently than annually
(4) Less frequently than every five years

4. Total floating rate time certificates of deposit of $100,000 or more (sum of Memorandum items 6.b.(1) through 6.b.(5))

c. Total time certificates of deposit of $100,000 or more (sum of Memorandum items 6.a.(5) and 6.b.(5)) (must equal Memorandum item 2.c above)

(1) Memorandum items 5 and 6 are not applicable to savings banks that must complete supplemental Schedule RC-J.

---

## Schedule RC-F—Other Assets

| | RCON | Bil Thou | |
|---|---|---|---|

1. Income earned, not collected on loans(1)

2. Net deferred tax assets(2)

3. Excess residential mortgage servicing fees receivable

4. Other (itemize and describe amounts greater than $25,000 that exceed 25% of this item)

   a.
   b.
   c.

5. Total (sum of items 1 through 4) (must equal Schedule RC, item 11)

Memoranda

1. Deferred tax assets disallowed for regulatory capital purposes

---

## Schedule RC-G—Other Liabilities

| | RCON | Bil Thou | |
|---|---|---|---|

1. a. Interest accrued and unpaid on deposits(3)

   b. Other expenses accrued and unpaid (includes accrued income taxes payable)

2. Net deferred tax liabilities(2)

3. Minority interest in consolidated subsidiaries

4. Other (itemize and describe amounts greater than $25,000 that exceed 25% of this item)

   a.
   b.
   c.

5. Total (sum of items 1 through 4) (must equal Schedule RC, item 20)

(1) Report income earned, not collected on securities (and on other assets) in item 6 of Schedule RC-F.
(2) See discussion of deferred income taxes in Glossary entry on "income taxes."
(3) For savings banks, includes "dividends" accrued and unpaid on deposits.

Legal Title of Bank: SECURITY BANK NA
Address: 1156 SOUTH STATE ROAD SEVEN
City, State Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: [illegible]

Call Date: 12/31/95 ST-BK: 12-0000 FFIEC 034
Page RC-K

## Schedule RC-K—Quarterly Averages

## Schedule RC-L—Off-Balance Sheet Items

Legal Title of Bank: SECURITY BANK NA
Address: 1450 SOUTH STATE ROAD SEVEN
City, State Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |2|3|1|5|6|

Call Date: 12/31/95 ST-BK: 12-0000 FFIEC 034
Page RC-12

## Schedule RC-L--Continued

C161 <-

| Dollar Amounts in Thousands — Off-balance Sheet Derivatives Position Indicators | (Column A) Interest Rate Contracts RCON | Mil Thou | (Column B) Foreign Exchange Contracts RCON | Mil Thou | (Column C) Equity Derivative Contracts RCON | Mil Thou | (Column D) Commodity and Other Contracts RCON | Mil Thou | |
|---|---|---|---|---|---|---|---|---|---|
| 14. Gross amounts (e.g., notional amounts) (for each column, sum of items 14.a through 14.e must equal sum of items 15, 16.a, and 16.b): | ////////////// | | ////////////// | | ////////////// | | ////////////// | | |
| a. Futures contracts | 8693 | 0 | 8694 | 0 | 8695 | 0 | 8696 | 0 | 14.a. |
| b. Forward contracts | 8697 | 0 | 8698 | 0 | 8699 | 0 | 8700 | 0 | 14.b. |
| c. Exchange-traded option contracts: | ////////////// | | ////////////// | | ////////////// | | ////////////// | | |
| (1) Written options | 8701 | 0 | 8702 | 0 | 8703 | 0 | 8704 | 0 | 14.c.(1) |
| (2) Purchased options | 8705 | 0 | 8706 | 0 | 8707 | 0 | 8708 | 0 | 14.c.(2) |
| d. Over-the-counter option contracts: | ////////////// | | ////////////// | | ////////////// | | ////////////// | | |
| (1) Written options | 8709 | 0 | 8710 | 0 | 8711 | 0 | 8712 | 0 | 14.d.(1) |
| (2) Purchased options | 8713 | 0 | 8714 | 0 | 8715 | 0 | 8716 | 0 | 14.d.(2) |
| e. Swaps | 3450 | 0 | 3826 | 0 | 8719 | 0 | 8720 | 0 | 14.e. |
| 15. Total gross notional amount of derivative contracts held for trading | A126 | 0 | A127 | 0 | 8723 | 0 | 8724 | 0 | 15. |
| 16. Total gross notional amount of derivative contracts held for purposes other than trading: | ////////////// | | ////////////// | | ////////////// | | ////////////// | | |
| a. Contracts marked to market | 8725 | 0 | 8726 | 0 | 8727 | 0 | 8728 | 0 | 16.a. |
| b. Contracts not marked to market | 8729 | 0 | 8730 | 0 | 8731 | 0 | 8732 | 0 | 16.b. |

Memoranda

| Dollar Amounts in Thousands | RCON | Mil Thou | |
|---|---|---|---|
| 1.-2. Not applicable | ////////////// | | |
| 3. Unused commitments with an original maturity exceeding one year that are reported in Schedule RC-L, items 1.a through 1.e, above (report only the unused portions of commitments that are fee paid or otherwise legally binding) | 3833 | 104 | M.3. |

## Schedule RC-M--Memoranda

C165 <-

| Dollar Amounts in Thousands | RCON | Mil Thou | |
|---|---|---|---|
| 1. Extensions of credit by the reporting bank to its executive officers, directors, principal shareholders, and their related interests as of the report date: | ////////////// | | |
| a. Aggregate amount of all extensions of credit to all executive officers, directors, principal shareholders, and their related interests | 6164 | 97 | 1.a. |
| b. Number of executive officers, directors, and principal shareholders to whom the amount of all extensions of credit by the reporting bank (including extensions of credit to related interests) equals or exceeds the lesser of $500,000 or 5 percent of total capital as defined for this purpose in agency regulations ..... Number: RCON 6165 0 | ////////////// | | 1.b. |
| 2. Not applicable | ////////////// | | |
| 3. a. Noninterest-bearing balances due from commercial banks in the U.S. (included in Schedule RC, item 1.a) (exclude balances due from Federal Reserve Banks and cash items in process of collection) | 0050 | 1,337 | 3.a. |
| b. Currency and coin (included in Schedule RC, item 1.a) | 0080 | 520 | 3.b. |

Legal Title of Bank: SECURITY BANK NA
Address: 1450 SOUTH STATE ROAD SEVEN
City, State Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |2|3|1|5|6|

Call Date: 12/31/95 ST-BK: 12-0000 FFIEC 034
Page RC-13

## Schedule RC-M--Continued

| Dollar Amounts in Thousands | RCON | Mil Thou | |
|---|---|---|---|
| 4. Outstanding principal balance of 1-4 family residential mortgage loans serviced for others (include both retained servicing and purchased servicing): | ////////////// | | |
| a. Mortgages serviced under a GNMA contract | 5500 | 0 | 4.a. |
| b. Mortgages serviced under a FHLMC contract: | ////////////// | | |
| (1) Serviced with recourse to servicer | 5501 | 0 | 4.b.(1) |
| (2) Serviced without recourse to servicer | 5502 | 0 | 4.b.(2) |
| c. Mortgages serviced under a FNMA contract: | ////////////// | | |
| (1) Serviced under a regular option contract | 5503 | 0 | 4.c.(1) |
| (2) Serviced under a special option contract | 5504 | 0 | 4.c.(2) |
| d. Mortgages serviced under other servicing contracts | 5505 | 0 | 4.d. |
| 5. Not applicable | ////////////// | | |
| 6. Intangible assets: | ////////////// | | |
| a. Mortgage servicing rights | 3164 | 0 | 6.a. |
| b. Other identifiable intangible assets: | ////////////// | | |
| (1) Purchased credit card relationships | 5506 | 0 | 6.b.(1) |
| (2) All other identifiable intangible assets | 5507 | 0 | 6.b.(2) |
| c. Goodwill | 3163 | 0 | 6.c. |
| d. Total (sum of items 6.a through 6.c) (must equal Schedule RC, item 10) | 2143 | 0 | 6.d. |
| e. Amount of intangible assets (included in item 6.b.(2) above) that have been grandfathered or are otherwise qualifying for regulatory capital purposes | 6442 | 0 | 6.e. |
| 7. Mandatory convertible debt, net of common or perpetual preferred stock dedicated to redeem the debt | 3295 | 0 | 7. |
| 8. a. Other real estate owned: | ////////////// | | |
| (1) Direct and indirect investments in real estate ventures | 5372 | 0 | 8.a.(1) |
| (2) All other real estate owned: | ////////////// | | |
| (a) Construction and land development | 5508 | 521 | 8.a.(2)(a) |
| (b) Farmland | 5509 | 0 | 8.a.(2)(b) |
| (c) 1-4 family residential properties | 5510 | 27 | 8.a.(2)(c) |
| (d) Multifamily (5 or more) residential properties | 5511 | 0 | 8.a.(2)(d) |
| (e) Nonfarm nonresidential properties | 5512 | 246 | 8.a.(2)(e) |
| (3) Total (sum of items 8.a.(1) and 8.a.(2)) (must equal Schedule RC, item 7) | 2150 | 794 | 8.a.(3) |
| b. Investments in unconsolidated subsidiaries and associated companies: | ////////////// | | |
| (1) Direct and indirect investments in real estate ventures | 5374 | 0 | 8.b.(1) |
| (2) All other investments in unconsolidated subsidiaries and associated companies | 5375 | 0 | 8.b.(2) |
| (3) Total (sum of items 8.b.(1) and 8.b.(2)) (must equal Schedule RC, item 8) | 2130 | 0 | 8.b.(3) |
| c. Total assets of unconsolidated subsidiaries and associated companies | 5376 | 0 | 8.c. |

Legal Title of Bank:  SECURITY BANK NA
Address:  1450 SOUTH STATE ROAD SEVEN
City, State  Zip:  NORTH LAUDERDALE, FL 33068
FDIC Certificate No.:  [illegible]

Call Date: 12/31/95  ST-PR: 12-0000  FFIEC 034
Page RC-15

## Schedule RC-N--Past Due and Nonaccrual Loans(1), Leases, and Other Assets

The FFIEC regards the information reported in all of Schedule item 1, in items 1 through 9, column F, column A, of in Memorandum items 1 through 4, column A, 1 confidential.

| | (Column A) Past due 30 through 89 days and still accruing | | (Column B) Past due 90 days or more and still accruing | | (Column C) Nonaccrual | |
|---|---|---|---|---|---|---|
| Dollar Amounts in Thousands | RCON | Bil Thou | RCON | Bil Thou | RCON | Bil Thou | |
| Real estate loans | 1210 | | 1211 | 0 | 1212 | 0 | 1. |
| Installment loans | 1214 | 1 | 1215 | 0 | 1216 | 0 | 2. |
| Credit cards and related plans | 1210 | 0 | 1219 | 0 | 1220 | 0 | 3. |
| Commercial (time and demand) and all other loans | 1222 | 85 | 1223 | 0 | 1225 | 0 | 4. |
| Lease financing receivables | 1226 | | 1237 | | 1238 | 0 | 5. |
| Debt securities and other assets (exclude other real estate owned and other repossessed assets) | 3505 | 0 | 3506 | | 3507 | 0 | 6. |

Amounts reported in items 1 through 5 above include guaranteed and unguaranteed portions of past due and nonaccrual loans and leases. Report in item 7 below certain guaranteed loans and leases that have already been included in the amounts reported in items 1 through 5.

| | RCON | Bil Thou | RCON | Bil Thou | RCON | Bil Thou | |
|---|---|---|---|---|---|---|---|
| Loans and leases reported in items 1 through 5 above which are wholly or partially guaranteed by the U.S. Government | 3410 | 59 | 3411 | 0 | 3412 | 0 | 7. |
| a. Guaranteed portion of loans and leases included in item 7 above | 3413 | 59 | 3414 | 0 | 3415 | 0 | 7.a. |

### Memoranda

| | Dollar Amounts in Thousands | RCON | Bil Thou | RCON | Bil Thou | RCON | Bil Thou | |
|---|---|---|---|---|---|---|---|---|
| 1. Restructured loans and leases included in Schedule RC-N, items 1 through 5, above (and not reported in Schedule RC-C, Part I, Memorandum item 1) | 1658 | | 1659 | | 1661 | | M.1. |
| 2. Loans to finance commercial real estate, construction, and land development activities (not secured by real estate) included in Schedule RC-N, items 1 through 5, above | 1658 | | 1659 | | 1661 | | M.2. |
| 3. Loans secured by real estate in domestic offices (included in Schedule RC-N, items 1 through 5, above) | 1648 | | 1649 | | 1651 | | M.3. |
| a. Construction and land development | 3495 | 131 | 3496 | | 3497 | | M.3.a. |
| b. Secured by farmland | 3498 | | 3499 | | 3500 | | M.3.b. |
| c. Secured by 1-4 family residential properties | 3501 | 307 | 3502 | | 3503 | | M.3.c. |
| (1) Revolving, open-end loans secured by 1-4 family residential properties and extended under lines of credit | 5398 | | 5399 | | 5400 | | M.3.c.(1) |
| (2) All other loans secured by 1-4 family residential properties | 5403 | 307 | 5404 | | 5405 | | M.3.c.(2) |
| d. Secured by multifamily (5 or more) residential properties | 3433 | | 3434 | | 3435 | | M.3.d. |
| e. Secured by nonfarm nonresidential properties | 3436 | | 3437 | | 3438 | | M.3.e. |

(1) See instructions for loan classifications used in this schedule.

23

---

Legal Title of Bank:  SECURITY BANK NA
Address:  1450 SOUTH STATE ROAD SEVEN
City, State  Zip:  NORTH LAUDERDALE, FL 33068
FDIC Certificate No.:  [illegible]

Call Date: 12/31/95  ST-PR: 12-0000  FFIEC 034
Page RC-14

## Schedule RC-M--Continued

| | Dollar Amounts in Thousands | RCON | Bil Thou | |
|---|---|---|---|---|
| 7. Cumulative perpetual preferred stock and related surplus included in Schedule RC, item 23, "perpetual preferred stock and related surplus" | 3778 | 0 | 7. |
| 8. Mutual fund and annuity sales during the quarter (include proprietary, private label, and third party products) | | | 10.a. |
| a. Money market funds | 6441 | 0 | 10.a. |
| b. Equity securities funds | 6442 | 0 | 10.b. |
| c. Debt securities funds | 6443 | 0 | 10.c. |
| d. Other mutual funds | 6409 | 0 | 10.d. |
| e. Annuities | 6410 | 0 | 10.e. |
| f. Sales of proprietary mutual funds and annuities (included in items 10.a through 10.e above) | 6734 | 0 | 10.f. |

### Memoranda

| | Dollar Amounts in Thousands | RCON | Bil Thou | |
|---|---|---|---|---|
| a. Noninterest holdings of capital instruments (to be completed for the December report only) | | | |
| a. Interbank holdings of capital instruments | 3836 | 0 | M.1.a. |
| b. Reciprocal holdings of banking organizations' capital instruments | 3837 | | M.1.b. |

22

Legal Title of Bank: SECURITY BANK NA
Address: 1450 SOUTH STATE ROAD #436
City, State, Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: ||||||||||||

Call Date: 12/31/98   ST-BK: 12-0000   FFIEC 034
                                        Page RC-17

## Schedule RC-O—Continued

**Schedule RC-O—Other Data for Deposit Insurance Assessments**

(The detailed line items of Schedules RC-O are illegible in this scan.)

LARRY SCHREINER, CASHIER
Name and Title (TEXT 8902)

(305) 971-9090
Area Code/Phone Number/Extension (TEXT 8903)

Items to whom questions about the Reports of Condition and Income should be directed

24

Case 1:99-cv-01202-DMM   Document 1   Entered on FLSD Docket 04/20/1999   Page 86 of 100

Legal Title of Bank: SECURITY BANK NA
Address:       1650 SOUTH STATE ROAD SEVEN
City, State Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: 33333333

Call Date: 12/31/95   ST-BK: 12-0000   FFIEC 034
                                       Page RC-18

## Schedule RC-R—Risk-Based Capital

This schedule must be completed by all banks as follows: Banks that reported total assets of $1 billion or more in Schedule RC, item 12, for June 30, 1995, must complete items 2 through 9 and Memoranda items 1 and 2. Banks with assets of less than $1 billion must complete items 1 and 2 below or Schedule RC-R in its entirety, depending on their response to item 1 below.

1. Test for determining the extent to which Schedule RC-R must be completed. To be completed only by banks with total assets of less than $1 billion. Indicate in the appropriate box at the right whether the bank has total capital greater than or equal to eight percent of adjusted total assets ...........

   For purposes of this test, adjusted total assets equals total assets less cash, U.S. Treasuries, U.S. Government agency obligations, and 80 percent of U.S. Government-sponsored agency obligations plus the allowance for loan and lease losses and selected off-balance sheet items as reported on Schedule RC-L (see instructions). If the box marked YES has been checked, then the bank only has to complete items 2 and 3 below. If the box marked NO has been selected, the bank must complete the remainder of this schedule.

   A NO response to item 1 does not necessarily mean that the bank's actual risk-based capital ratio is less than eight percent or that the bank is not in compliance with the risk-based capital guidelines.

Item 2 is to be completed by all banks.

| | (Column A) Subordinated Debt(1) and Intermediate Term Preferred Stock | (Column B) Other Limited-Life Capital Instruments |
|---|---|---|
| | Dollar Amounts in Thousands | |
| | RCON BIL THOU | RCON BIL THOU |
| 2. Subordinated debt(1) and other (limited-life) capital instruments (original weighted average maturity of at least five years) with a remaining maturity of: | ///////// | ///////// |
| a. One year or less .......... | 3194 | 3196 | 2.a. |
| b. Over one year through two years .......... | 3195 0 | 3197 0 | 2.b. |
| c. Over two years through three years .......... | 3782 0 | 3198 0 | 2.c. |
| d. Over three years through four years .......... | 3783 0 | 3199 0 | 2.d. |
| e. Over four years through five years .......... | 3784 0 | 3200 0 | 2.e. |
| f. Not applicable .......... | 3295 N/A | 3791 N/A | 2.f. |

Items 3-9 and Memoranda items 1 and 2 are to be completed only by banks that answered NO to item 1 above and by banks with total assets of $1 billion or more.

| | (Column A) Assets Recorded on the Balance Sheet | (Column B) Credit Equivalent Amount of Off-Balance Sheet Items |
|---|---|---|
| 3. Assets and credit equivalent amounts of off-balance sheet items assigned to the Zero percent risk category: | RCON BIL THOU | RCON BIL THOU |
| a. Assets recorded on the balance sheet | ///////// | |
| (1) Securities issued by, other claims on, and claims unconditionally guaranteed by, the U.S. Government and other OECD central governments .......... | ///////// | |
| (2) All other .......... | ///////// | 4.a.(1) |
| b. Credit equivalent amount of off-balance sheet items .......... | 3795 N/A | 4.a.(2) |

---

Legal Title of Bank: SECURITY BANK NA
Address:       1650 SOUTH STATE ROAD SEVEN
City, State Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: 33333333

Call Date: 12/31/95   ST-BK: 12-0000   FFIEC 034
                                       Page RC-19

## Schedule RC-R—Continued

| | (Column A) Assets Recorded on the Balance Sheet | (Column B) Credit Equivalent Amount of Off-Balance Sheet Items |
|---|---|---|
| | RCON BIL THOU | RCON BIL THOU |
| 5. Assets and credit equivalent amounts of off-balance sheet items assigned to the 20 percent risk category: | ///////// | ///////// |
| a. Assets recorded on the balance sheet | ///////// | ///////// |
| (1) Claims conditionally guaranteed by the U.S. Government and its agencies and other OECD central governments .......... | ///////// | ///////// | 5.a.(1) |
| (2) Claims collateralized by securities issued by, or guaranteed by, U.S. Government and other OECD central governments(1) by securities issued by U.S. Government-sponsored agencies; and by cash on deposit .......... | 3796 N/A | ///////// | 5.a.(2) |
| (3) All other .......... | 3797 N/A | ///////// | 5.a.(3) |
| b. Credit equivalent amount of off-balance sheet items .......... | ///////// | 3801 N/A | 5.b. |
| 6. Assets and credit equivalent amounts of off-balance sheet items assigned to the 50 percent risk category: | ///////// | ///////// |
| a. Assets recorded on the balance sheet .......... | ///////// | ///////// | 6.a. |
| b. Credit equivalent amount of off-balance sheet items .......... | ///////// | 3802 N/A | 6.b. |
| 7. Assets and credit equivalent amounts of off-balance sheet items assigned to the 100 percent risk category: | ///////// | ///////// |
| a. Assets recorded on the balance sheet .......... | ///////// | ///////// | 7.a. |
| b. Credit equivalent amount of off-balance sheet items .......... | ///////// | 3803 N/A | 7.b. |
| 8. On-balance sheet asset values excluded from the calculation of the risk-based capital ratio(1) .......... | ///////// | ///////// | 8. |
| 9. Total assets recorded on the balance sheet (sum of items 3.a, 5.a, 6.a, 7.a, and 8, column A) must equal Schedule RC, item 12 plus items 4.b and 4.d) .......... | 3806 N/A | ///////// | 9. |

### Memoranda

|  | Dollar Amounts in Thousands |  |
|---|---|---|
| 1. Current credit exposure across all off-balance sheet derivative contracts covered by the risk-based capital standards .......... | 8764 N/A | M.1. |

| | With a remaining maturity of: | | |
|---|---|---|---|
| | (Column A) One year or less | (Column B) Over one year through five years | (Column C) Over five years |
| | RCON BIL THOU | RCON BIL THOU | RCON BIL THOU |
| 2. Notional principal amounts of off-balance sheet derivative contracts: | | | |
| a. Interest rate contracts .......... | 3809 N/A | 8766 N/A | 8767 N/A | M.2.a. |
| b. Foreign exchange contracts .......... | 3812 N/A | 8769 N/A | 8770 N/A | M.2.b. |
| c. Gold contracts .......... | 8771 N/A | 8772 N/A | 8773 N/A | M.2.c. |
| d. Other precious metals contracts .......... | 8774 N/A | 8775 N/A | 8776 N/A | M.2.d. |
| e. Other commodity contracts .......... | 8777 N/A | 8778 N/A | 8779 N/A | M.2.e. |
| f. Equity derivative contracts .......... | 8780 N/A | 8781 N/A | 8782 N/A | M.2.f. |

(1) Do not report in column A the risk-weighted amount of assets reported in column 9.

27

Case 1:99-cv-01202-DMM   Document 1   Entered on FLSD Docket 04/26/1999   Page 87 of 100

Legal Title of Bank: SECURITY BANK NA
Address: 1450 SOUTH STATE ROAD SEVEN
City, State   Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |3|4|5|6|4|

Call Date: 12/31/95   ST-BK: 12-5000   FFIEC 034
Page RC-20

## Optional Narrative Statement Concerning the Amounts
## Reported in the Reports of Condition and Income
at close of business on December 31, 1995

SECURITY BANK NA
Legal Title of Bank

NORTH LAUDERDALE
City

Florida
State

The management of the reporting bank may, if it wishes, submit a brief narrative statement on the amounts reported in the Reports of Condition and Income. This optional statement will be made available to the public, along with the publicly available data in the Reports of Condition and Income, in response to any request for individual bank report data. However, the information reported in column A and in all of the question item 1 of Schedule RC-N is to be regarded as confidential and will not be released to the public. BANKS CHOOSING TO SUBMIT THE NARRATIVE STATEMENT SHOULD ENSURE THAT THE STATEMENT DOES NOT CONTAIN THE NAMES OR OTHER IDENTIFICATIONS OF INDIVIDUAL BANK CUSTOMERS, REFERENCES TO THE AMOUNTS REPORTED IN THE CONFIDENTIAL ITEMS IN SCHEDULE RC-N, OR ANY OTHER INFORMATION THAT THEY ARE NOT WILLING TO HAVE MADE PUBLIC OR THAT WOULD COMPROMISE THE PRIVACY OF THEIR CUSTOMERS. Banks choosing not to make a statement may check the "No comment" box below and should make no entries of any kind in the space provided below---that is, DO NOT enter in this space such phrases as "No statement," "Not applicable," "N/A," "No comment," and "None."

The optional statement must be entered on this sheet. The statement should not exceed 100 words. Further, regardless of the number of words, the statement will not exceed 750 characters, including punctuation, indentation, and standard spacing between words and sentences. If any submission should exceed 750 characters, as defined, it will be truncated at 750 characters with no notice to the submitting bank and the truncated statement will appear as the bank's statement.

☒ No comment [X] (RIGHT JUSTIFY)

No management statement (please type or print clearly):
(TEXT 8000)

[SU]1   [CU]2 [  ]

both an agency computerized records and in computer-file
release to the public.

All information furnished by the bank in the narrative statement must be accurate and not misleading. Appropriate efforts should be taken by the submitting bank to ensure the statement's accuracy. The statement must be signed, in the space provided below, by a senior officer of the bank who thereby attests to its accuracy.

If, subsequent to the original submission, material changes are submitted for the data reported in the Reports of Condition and Income, a willing narrative statement will be deleted from the files, and from disclosure; the bank, at its option, may replace it with a statement, under signature, appropriate to the amended data.

The optional narrative statement will appear in agency records and in release to the public exactly as submitted (or amended as described in the preceding paragraph) by the management of the bank (except for the truncation of statements exceeding the 750-character limit described above). THE STATEMENT WILL NOT BE EDITED OR SCREENED IN ANY WAY BY THE SUPERVISORY AGENCIES FOR ACCURACY OR RELEVANCE. DISCLOSURE OF THE STATEMENT SHALL NOT SIGNIFY THAT ANY FEDERAL SUPERVISORY AGENCY HAS VERIFIED OR CONFIRMED THE ACCURACY OF THE INFORMATION CONTAINED THEREIN. A STATEMENT TO THIS EFFECT WILL APPEAR ON ANY PUBLIC RELEASE OF THE OPTIONAL STATEMENT SUBMITTED BY THE MANAGEMENT OF THE REPORTING BANK.

[signature] J. David Schmeal
Signature of Executive Officer of Bank

1-17-96
Date of Signature

---

Legal Title of Bank: SECURITY BANK NA
Address: 1450 SOUTH STATE ROAD SEVEN
City, State   Zip: NORTH LAUDERDALE, FL 33068
FDIC Certificate No.: |3|4|5|6|4|

Call Date: 12/31/95   ST-BK: 12-5000

OMB No. for OCC: 1557-0081
OMB No. for FDIC: 3064-0052
OMB No. for Federal Reserve: 7100-0036
Expiration Date: 3/31/96

SPECIAL REPORT
(Dollar Amounts in Thousands)

NAME AND ADDRESS OF BANK

PLACE LABEL HERE

| | CLOSE OF BUSINESS DATE | FDIC Certificate Number |
|---|---|---|
| | 12/31/95 | |3|4|5|6|4| |  |
| | | C-700 |

## THIS PAGE IS TO BE COMPLETED BY ALL BANKS

LOANS TO EXECUTIVE OFFICERS (Complete as of each Call Report date)

The following information is required by Public Laws 90-44 and 102-242, but does not constitute a part of the Report of Condition. In each Report of Condition, these items results all banks to furnish a report of all loans or other extensions of credit to its executive officers made since the date of the previous Report of Condition. This reporting individual loans or other extensions of credit are not required. (In such loans or other extensions of credit were made during the period, insert "none" opposite addition (a). (Exclude the first $15,000 of indebtedness of each executive officer under bank credit card plan.) See sections 215.2 and 215.3 of Title 12 of the Code of Federal Regulations (Federal Reserve Board Regulation O) for the definitions of "executive officer" and "extension of credit," respectively. Exclude loans and other extensions of credit to directors and principal shareholders who are not executive officers.

|  |  | RCFD 3561 | 0 | a. |
| Number of loans made to executive officers since the previous Call Report date ......... | | | | |
|  |  | RCFD 3561 | 0 | b. |
| Total dollar amount of above loans (in thousands of dollars) ......... | | | | |
| Range of interest charged on above loans | | RCFD 7701 | 8.00 | % | to RCFD 7702 | 8.00 | % | c. |
(example: 9 3/4% = 9.75)

CAUTION AND TITLE OF OFFICER AUTHORIZED TO SIGN REPORT

[signature] J. David Schmeal   Cashier

NAME AND TITLE OF OFFICER AUTHORIZED TO SIGN REPORT (TEXT 8903)

ME TITLE(S) EXECUTIVE OFFICER/AUTHORITY OR OR DIRECTOR (TEXT 8903)

BE ENTERED [ ]

DATE (Month, Day, Year)
1-17-96

AREA CODE/PHONE NUMBER/EXTENSION (TEXT 8904)
(305) 971-9090

DEC-18-98 05:03 PM  DELGADO BEFELER STARKMAN 3  535                P.03

# THIRD ADDENDUM TO STOCK PURCHASE AND SALE AGREEMENT

**THIRD ADDENDUM** (the "Third Addendum") made and entered into this ___ day of December, 1998, by and among SECURITY BANK, N.A., a national banking association (the "Bank"), FINANCIAL BANCOR, INC., a Florida corporation ("FBI"), and ALBERTO CEVALLOS, an individual residing in Ecuador ("Cevallos") (FBI and Cevallos shall hereinafter be collectively referred to as, the "Purchaser" or "Purchasers"). The Bank and the Purchasers are hereinafter collectively referred to as the "Parties". Unless herein specified, the terms ascribed in this Addendum shall have the same meaning as the terms in the Agreement. The term "Shareholders" shall mean the shareholders of the Bank, excluding the Purchasers. The Agreement as previously amended and as amended hereby shall be sometimes be referred to collectively herein as the "Agreement," as applicable.

## WITNESSETH:

**WHEREAS,** the Bank and the Purchasers entered into a Stock Purchase and Sale Agreement on November 28, 1997, which was amended by subsequent addenda, including that certain Second Addendum to Stock Purchase and Sale Agreement dated September 30, 1998, by and among the Bank and the Purchasers (the "Second Addendum"); and

**WHEREAS,** the Bank and the Purchasers have agreed to further amend the Agreement pursuant to the terms and conditions expressly set forth herein.

**NOW, THEREFORE,** in consideration of the promises and the mutual representations, warranties, covenants and agreements hereinafter contained, the Parties agree as follows:

1.    **Recitals.**    The above recitals are true and correct in all respects and are incorporated by reference as if fully set forth herein.

2.    **Certain Amendments.**

2.1  Section 5 of the Second Addendum is hereby deleted in its entirety and the following inserted in lieu thereof:

The Purchasers agree to pay the Tendering Shareholders interest at a rate of 8.5% per annum on the total Purchase Price of the Tendered Shares through December 31, 1998, and thereafter at an interest rate *[on the balance]* of 7.75% per annum through the Extended Closing Date or the earlier termination of this Agreement. The Bank hereby acknowledges the receipt of interest payments from the Purchasers in the aggregate amount of $181,017.48 for interest accrued on the Purchase Price of the Tendered Shares through December 31, 1998, which the Purchasers hereby expressly and unconditionally authorize the Bank

1

to release to the Tendering Shareholders in accordance with their respective ownership interests. The Purchasers further agree to remit payment to the Escrow Agent, for the benefit of the Tendering Shareholders, of all accrued and unpaid interest payable hereunder through March 31, 1999, on such date. Thereafter, interest accruing thereafter through the Extended Closing Date shall be paid on the Extended Closing Date or immediately following the earlier termination of this Agreement. Payment of such interest shall be made by the Purchasers to the Escrow Agent. The Escrow Agent shall distribute and pay all such interest to the Tendering Shareholders. The interest payable by the Purchasers under this paragraph shall not be applied towards or credited to the Purchase Price or any other monies owed by the Purchasers to the Bank or the Tendering Shareholders.

2.2  Section 6 of the Second Addendum is hereby amended by deleting the date "December 30, 1998" from the third line thereof, and inserting the date "April 15, 1999" in lieu thereof.

2.3  Section 7 of the Second Addendum is hereby amended by deleting the phrase "Sixty (60) days from the Addendum Effective Date" from the sixth line thereof and inserting the date "March 15, 1999."

3.   <u>Release of Deposit to Shareholders</u>. The Purchasers hereby acknowledge and agree that the Purchasers have only remitted payment to the Escrow Agent of $400,000 of the $500,000 Deposit required under Section 7 of the Second Addendum (the "$400,000 Deposit"). The Bank hereby waives such non-compliance by the Purchasers subject to the terms in the Third Addendum; provided that the Purchasers faithfully comply with the provisions herein. The Purchasers hereby expressly and unconditionally authorize and direct the Escrow Agent to release the $400,000 Deposit to the Tendering Shareholders on December 30, 1998, in accordance with the terms and conditions of the Second Addendum. Moreover, the Bank and the Escrow Agent shall release the balance of $100,000 of the Deposit as soon as its practicable after receipt thereof from the Purchasers.

All of the terms and conditions of the Agreement shall remain in full force and effect except to the extent that they are inconsistent herewith, in which instance, such provisions shall be deemed superseded hereby. Any provision of the Agreement that is not specifically amended by this Addendum shall continue to apply unaffected by this Addendum.

4.   <u>Facsimile Signatures</u>. A signed facsimile of the Third Addendum shall be deemed an original hereof. The Agreement, as modified herein, may only be modified by a writing signed by the Parties.

2

DEC-10-98 05:05     ) DELGADO DEFELER STARKMAN     85535                    P.05

**IN WITNESS WHEREOF,** the parties hereto set their hands hereto on the day and year written above.

BANK:

SECURITY BANK, N.A., a national banking corporation

BY:_____
    Manuel Fernandez, President

PURCHASERS:

FINANCIAL BANCOR, INC., a Florida corporation

BY:_____
    Alberto Cevallos, President

_____
ALBERTO CEVALLOS, individually

LOAN NO. 1492183-1

RENEWAL AND MODIFICATION
OF **PROMISSORY NOTE &**
**SECURITY AGREEMENT**
DATED MAY 21, 1998


**City National Bank**
OF FLORIDA

DATE __November 19, 1998__
Effective

FOR VALUE RECEIVED, the undersigned (jointly and severally, if more than one) ("Maker") promises to pay to the order of CITY NATIONAL BANK OF FLORIDA at its office at 25 West Flagler Street, Miami, Florida, which together with any holder hereof is called "Bank", the principal sum of $ __THREE MILLION AND NO/100_____ DOLLARS

($ __3,000,000.00_____ ) together with interest on the terms below:

The proceeds of this loan are to be used primarily for: ☐ personal, family, or household purposes; ☒ business use; or ☐ farming operations.

**INTEREST CALCULATION**

The Interest Rate is:
(X) A VARIABLE INTEREST RATE OF _____0.5_____ PERCENT PER ANNUM IN EXCESS OF:
   (X) The City National Bank Base Rate (the base rate of interest announced from time to time at Bank's discretion)
   ( ) Other Index _____
   THE VARIABLE INTEREST RATE WILL BE ADJUSTED:
   (X) When the City National Bank Base Rate Changes
   ( ) When the index as stated above changes
   ( ) Other _____
( ) A FIXED INTEREST RATE OF _____ PERCENT PER ANNUM
(X) INTEREST SHALL BE CALCULATED ON THE BASIS OF A THREE HUNDRED SIXTY (360) DAY YEAR, BUT INTEREST SHALL ACCRUE AND BE PAYABLE FOR THE ACTUAL NUMBER OF DAYS IN EACH MONTH.

THE MAXIMUM INTEREST RATE WILL NOT EXCEED _____*_____ %. Highest legal rate allowed by Florida law

AFTER MATURITY, OR WHILE IN DEFAULT, THIS NOTE SHALL BEAR INTEREST AT THE HIGHEST LEGAL RATE PER ANNUM ALLOWABLE BY FLORIDA LAW.

**REPAYMENT SCHEDULE**

( ) Principal and interest are due and payable in a single payment on _____
( ) Principal payable in a single payment due on _____ 19 ____ , and interest due and payable _____ commencing on _____ , 19 ____ .
( ) Principal payable on the earlier of demand or _____ ,19 ____ at the sole discretion of Bank and accrued interest payble _____ commencing on _____ ,19 ____ .
( ) Payable in _____ installments of $ _____ plus accrued interest, due and payable _____ commencing on _____ ,19 ____ . together with a final/balloon payment in the amount of $ _____ , plus accrued interest, due and payable on _____ ,19 ____ . The terms, if any, for refinancing the balloon payment, are _____
( ) Payments of principal and interest payable in _____ installments of $ _____ each, due and payable _____ commencing on _____ ,19 ____ , together with a final/balloon payment in the amount of $ _____ due and payable on _____ , 19 ____ . The terms, if any, for refinancing the balloon payment, are _____
(XX) Principal payments are due and payable as follows: $500,000.00 on January 11, 1999, and $500,000.00 on February 11, 1999 and $2,000,000.00 on March 11, 1999 _____ .
(XX) Interest payments are due and payable as follows: Monthly commencing January 11, 1999 _____

**COLLATERAL**

(X) If checked here, this Note is secured by and Maker pledges to Bank and grants a security interest in the following:
__200,000 shares of the Class B Non-voting, non cummulative Preferred Shares of__
__Security Bank, N.A. Capital Stock, North Lauderdale, FL and Certificates of Deposit__
__Nos. 038-10-98, 045-11-98 and 048-11-98 issued by Lincoln Bank and Trust Corp.__

Maker and any endorser, surety, guarantor or other party signing this Note or otherwise guaranteeing or ensuring the performance or payment by Maker (the "Obligor") pledges to Bank and grants a security interest in all other property of Maker and of each other Obligor now or hereafter in the possession, custody or control of Bank, whether held expressly as collateral, security or otherwise including, but not limited to, any balance or share of any deposit, trust or agency or special account in which any Obligor has an interest. All of such property, together with any specific property listed above as pledged to Bank by Maker(s), shall be referred to as the "Collateral".

The Collateral is also pledged as security for all other liabilities or obligations of each Maker to Bank (primary, secondary, direct, contingent, sole, joint or several), due or to become due or which may be hereafter contracted or acquired. Bank may, at its option, transfer at any time to itself or to its nominee any Collateral and receive the income thereon and hold the same as security herefor, or apply it on the principal or interest due hereon or due on any liability or obligation secured hereby. Notwithstanding the surrender of this Note upon payment or otherwise, Bank may nevertheless retain the Collateral for any other liabilities.

Additions to, releases, reductions or exchanges of, or substitutions for the Collateral, payment on account of this loan or increases of the same, or other loans made partially or wholly upon the Collateral, may from time to time made without affecting the provisions of this Note or the liabilities of any party hereto. Bank shall not be bound to take any steps necessary to preserve any rights in the Collateral against prior parties and each Obligor shall take necessary steps for such purposes. Bank or its nominees need not collect interest or principal of any Collateral or give any notice with respect thereto. Maker shall at all times keep the Collateral insured in such forms, and in such amounts, as shall be acceptable to Bank, and shall keep the Collateral in good maintenance, repair and condition, if appropriate to the nature of the Collateral.

If the Collateral shall any time become unsatisfactory to Bank or if Bank shall at any time deem itself insecure, Maker shall, within five days after demand, deposit with Bank as additional Collateral, property which is satisfactory to Bank in its sole discretion.

The undersigned agrees to pay a late charge equal to 5% of each payment of principal and/or interest which is not paid within 10 days on which it is due.

**THE TERMS ON THE REVERSE SIDE OF THIS DOCUMENT AND OF ANY SEPARATE SECURITY AGREEMENT OR MORTGAGE GRANTING A SECURITY INTEREST ARE MADE A PART OF THIS PROMISSORY NOTE AND SECURITY AGREEMENT.**

__C/O Whisenand and Turner, P.A.__
Mailing Address

__501 Brickell Key Drive, Suite 602__
City __Miami__     State __FL 33131__     Zip Code

ALBERTO CEVALLOS
EL NOTARIO

FORM LN-001w REV. 8/92

# MODIFICATION OF STOCK PLEDGE AND SECURITY AGREEMENT

**THIS AGREEMENT** made and entered into as of the *19th* day of *November,* 199*8,* by and between ALBERTO CEVALLOS, a/k/a ALBERTO CEVALLOS GOMEZ PINAN, hereinafter referred to as "Borrower", and CITY NATIONAL BANK OF FLORIDA, a national banking association, hereinafter referred to as "Lender", which terms shall include and mean their successors and assigns wherever the context so requires or admits;

## WITNESSETH:

**WHEREAS,** Pledgor, in order to secure repayment of Promissory Note dated May 19, 1998 in the principal sum of $3,000,000.00 in favor of Bank (the "Note") executed a Stock Pledge and Security Agreement dated May 21, 1998 (the "Security Agreement") in which the collateral described therein was pledged to Bank to secure repayment of the Note; and

**WHEREAS,** Pledgor has requested Bank to extend the Maturity Date of the Note and as a condition thereto, Bank has required Pledgor to pledge all of his right title and interest in the following described Certificates of Deposit issued by Lincoln Bank & Trust, Plymouth, Monserrat, West Indies (the "Additional Collateral") to secure repayment of the Note:

| Number | Date | Amount | Due Date |
|--------|------|--------|----------|
| 038-10-98 | October 10, 1998 | $ 500,000.00 | January 18, 1999 |
| 045-11-98 | November 5, 1998 | 500,000.00 | February 18, 1999 |
| 048-11-98 | November 8, 1998 | 2,000,000.00 | March 18, 1999 |

**NOW, THEREFORE,** in consideration of the premises and the agreements herein contained and other good and valuable considerations, receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      The foregoing recitations are true and correct.

2.      Paragraph S1 of the Agreement is hereby amended so that Pledgor pledges to Bank and grants to Bank a security interest in the Additional Collateral including the Certificates, and all interest, cash and proceeds derived from the Certificates and all reference in the Security Agreement to Collateral shall include the



Additional Collateral just as if the Additional Collateral was included in the Security Agreement at the time of execution thereof.

3.    Except for the modifications recited in this instrument, the parties hereto do hereby ratify and affirm all of the terms, covenants and conditions of said original Security Agreement as modified herein, shall remain in full force and effect and without change, modification, alteration or amendment.  The parties hereto further agree that any conflict between the terms of this Agreement and the Security Agreement, the terms of this Agreement shall control.

4.    The Borrower, by execution of this Agreement, acknowledges that he has no offsets, defenses or counterclaims to the enforcement of the Note, the Security Agreement as modified herein, and any of the documents described as loan documents in the Security Agreement, and that all said documents are valid and enforceable according to their terms.

5.    In the event of any conflict between the terms of this Modification Agreement and the terms of the Pledge Agreement, the terms of this Modification Agreement shall control.

**IN WITNESS WHEREOF**, the parties hereto have set their hands and seals the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____

Name: _____

_____

Name: _____

ALBERTO CEVALLOS                        ~
a/k/a ALBERTO CEVALLOS GOMEZ PINAN


CITY NATIONAL BANK OF FLORIDA,
a national banking corporation


_____        By:_____

Name: _____

_____

Name: _____

2

RA—

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

The foregoing instrument was acknowledged before me this ___ day of _____, 199__ by ALBERTO CEVALLOS. He is personally known to me or has produced _____ as identification and did (did not) take an oath.

_____
Name:
Notary Public

My commission expires:

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

The foregoing instrument was acknowledged before me this ___ day of _____, 199_, by _____ as _____ of CITY NATIONAL BANK OF FLORIDA, a national banking corporation, on behalf of the corporation. He(She) is personally known to me or has produced _____ as identification and did (did not) take an oath.

_____
Name:
Notary Public

My commission expires:

C:modif/pledgeagree/cevallos

3

# ROBERT P. FRANKEL & ASSOCIATES, P.A.

CITY NATIONAL BANK BUILDING · SUITE 900
25 WEST FLAGLER STREET
MIAMI, FLORIDA 33130
POST OFFICE BOX 01-9610
MIAMI, FLORIDA 33101-9610
TELEPHONE (305) 358-5690
FACSIMILE (305) 358-2306

ROBERT P. FRANKEL
PHILIPPE LIEBERMAN

RICHARD L. LAPIDUS
OF COUNSEL

## NOTICE OF PUBLIC SALE

### March 22, 1999

| | | |
|---|---|---|
| Alberto Cevallos | Whisenand & Turner | Security Bank, N.A. |
| Calle Flavio Reyes S.N. | 501 Brickell Key | Main Office |
| Barrio Umina Manta | Suite 602 | 1450 State Rd 7 |
| Provincia de Manabi | Miami, Fla.  33131 | N. Lauderdale, Fla. |
| Ecuador, S.A. | | 33068 |

Please note that on April 26, 1999 at 1:00 p.m. in Suite 900,
25 West Flagler Street, Miami, Florida 33130 (Robert P. Frankel &
Associates, P.A.) City National Bank will sell at public sale
200,000 shares of Class B non-voting, non-cumulative preferred
shares ($4.00 PAR value each) of Security Bank, N.A.  The shares
are subject to that certain letter of the comptroller of the
currency to James D. Whisenand, Esquire date October 30, 1997, all
state and federal banking and securities laws and regulations
including but not limited to 17 C.F.R. 16.5.

The sale is being held to satisfy a debt to City National Bank
in the principal amount at $3,000,000 plus accrued interest,
attorney's fees and costs.

The stock may also be subject to the terms of that certain
STOCK PURCHASE AND SALE AGREEMENT dated November 28, 1997 between
SECURITY NATIONAL BANK N.A., FINANCIAL BANCO INC. and ALBERTO
CEVALLOS.

By _____

RICHARD L. LAPIDUS
Attorney for City National Bank

# DELGADO,
# BEFELER,
# STARKMAN &
# MAGOLNICK, P.A.

NationsBankTower
100 Southeast 2nd Street, 37th Floor
Miami, Florida 33131

Telephone (305) 379-8300
Facsimile (305) 379-4404

GEORGE BEFELER

**VIA TELECOPIER**

March 23, 19992

Richard L. Lapidus, Esq.
Robert P. Frankel & Associates, P.A.
City National Bank Building, Suite 900
25 West Flagler Street
Miami, Florida 33130

RE:   **SECURITY BANK, N.A.**

Dear Mr. Lapidus:

This firm represents Security Bank, N.A. (the "Bank"). Be advised that the Notice of Public Sale dated March 22, 1999 (the "Notice") which you sent to the Bank has been referred to this office for response.

Be advised that your client, City National Bank ("CNB"), is required to comply with the provisions of that certain Stock Purchase and Sale Agreement dated November 28, 1997 between Security Bank, N.A., Financial Bancor Inc. and Alberto Cevallos (the "Agreement") prior to the intended sale of the 200,000 shares of Class B non-voting, non-cumulative preferred shares ($4.00 par value each) of the Bank which CNB is holding as collateral for a $3,000,000 loan (the "Shares")(the "Loan"). Specifically, paragraph 33 of the Agreement, in its pertinent part, states as follows:

> The Purchaser shall only be entitled to encumber the Ortellado Shares if: (i) the underlying indebtedness for which the Ortellado Shares are being pledged does not exceed at any time or from time to time, including principal, interest, late fees, attorneys' fees, costs, etc., $4,900,000; (ii) the Bank and/or its assignees shall have at all times subsequent to a default of the underlying indebtedness by the Purchaser and for a period of two months subsequent to such default, the unilateral option and right to purchase the indebtedness (including the promissory note, pledge agreement and all other loan documents delivered by the Purchaser to the third party lender) and/or the Ortellado Shares for the amount of the indebtedness, but not to exceed a total of $4,900,000 from the third party lender; (iii) the Ortellado Shares shall not be reconvertible into voting common stock (or any other class of voting stock) at any time that the Ortellado Shares are owned by a person other than Cevallos (in which event, the Ortellado Shares shall only be reconvertible in accordance with the

Richard L. Lapidus, Esq.
Robert P. Frankel & Associates, P.A.
March 23, 1999
Page 2

provisions of this Agreement); and (iv) the third party lender agrees in advance in writing to abide by the terms and conditions set forth in this Agreement, and agrees to notify the Bank of a default within 10 days from the date of default.

As you may be aware, the front of stock certificate 04 which represents the Shares clearly states that there exist a restrictive legend in the back of the stock certificate. The back of the certificate clearly states that the Shares are subject to the Agreement. Therefore, the statement in the Notice that the "stock may also be subject to the terms of [Agreement]..." is inaccurate, erroneous and misleading. Simply stated, the Shares are definitely subject to the Agreement and may not be sold by CNB without faithfully complying with the terms of the Agreement...

Therefore, formal demand is hereby made that the Shares not be sold by CNB without first complying with the terms of the Agreement. Failure to act accordingly will result in the invalidation of the proposed sales transaction and the institution of legal proceedings against CNB for failure to faithfully abide by the relevant provisions of the Agreement which CNB adopted when it agreed to make the Loan.

Please direct any and all correspondence regarding this matter to the undersigned.

Very truly yours,

MOSCOWITZ, BEFELER, STARKMAN & MAGOLNICK, P.A.

GEORGE BEFELER, ESQ.

GB:kl

cc:    Security Bank, N.A.
       Whisenand & Turner, P.A.
       Mr. Alberto Cevallos c/o Whisenand & Turner, P.A.

g:\soc2\lapidus.ltr

# MOSCOWITZ, BEFELER, STARKMAN & MAGOLNICK, P.A.
## NATIONSBANK TOWER, 37TH FLOOR
## 100 SOUTHEAST 2ND STREET
## MIAMI, FLORIDA 33131
### TELEPHONE: (305) 379-8300
### FACSIMILE (305) 379-4404

DATE            :       March 23, 1999

FAX #           :       (305) 374-2919

TO              :       Jim Whisenand, Esq.
                        Whisenand & Turner, P.A.

FROM            :       George Befeler, Esq.
                        Moscowitz, Befeler, Starkman & Magolnick, P.A.

THIS FACSIMILE TRANSMISSION CONSISTS OF 3 PAGES INCLUDING THIS COVER SHEET. IF THERE IS ANY PROBLEM RECEIVING ALL OR PART OF THIS MESSAGE, PLEASE CALL KELLY LORENZO AT (305) 379-8300.

The information contained in this transmission is attorney privileged and confidential. It is intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. The above restrictions shall not apply to the extent the recipient of this communication is a governmental entity and is required to make the content of this communication available to the public in order for said communication to be deemed property filed and effective. If you have received this communication in error, please notify us immediately by telephone (call collect if long distance) and return the original message to us at the above address via the United States Postal Service. We will reimburse you for postage. Thank you.

# CIVIL COVER SHEET

## 99-1202

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**CIV-MIDDLEBROOKS**

### I (a) PLAINTIFFS

ALBERTO CEVALLOS,

*MAGISTRATE BANDSTRA*

**DEFENDANTS**

CITY NATIONAL BANK and SECURITY NATIONAL BANK, N.A.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

A: Dade 99CV 1202/DMM/TEB

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

GREENBERG TRAURIG, P.A.
1221 Brickell Avenue
Miami, Florida  33131

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:

(DADE), MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

### II. BASIS OF JURISDICTION (PLACE AN × IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN × IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.

IVa. _____ days estimated (for both sides) to try entire case.

### V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

| A CONTRACT | A TORTS — PERSONAL INJURY | PERSONAL INJURY | B FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury — Med Malpractice | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☒ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 330 Federal Employers Liability | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | B ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 690 Other | **A SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **A LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | | | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | B ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **B PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | **A FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | *A or B |
| | | *A or B | | | |

### VI. ORIGIN (PLACE AN × IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Refiled
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**

Check YES only if demanded in complaint:
**JURY DEMAND:** ☐ YES ☐ NO

### VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE  4/23/99

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT
S/F  I-2
REV. 6/90

FOR OFFICE USE ONLY: Receipt No. 801329    Amount: 150.00

Date Paid: 4/23/99    MISC.